UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSEPH T. CARMACK,<br>Plaintiff | )<br>)<br>)<br>) |  |
| v. | )<br>) |  |
| MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY<br>and MASSACHUSETTS BAY<br>COMMUTER RAILROAD COMPANY,<br>Defendants | )<br>)<br>)<br>)<br>)<br>) | C.A. No. 05-11430-PBS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MASSACHUSETTS BAY TRANSPORATION AUTHORITY'S MOTION TO DISMISS COUNTS II THROUGH XV OF THE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6) AND THE PRIOR PENDING ACTION DOCTRINE**

**OVERVIEW**

The Massachusetts Bay Transportation Authority's ("MBTA's") sole involvement in this matter is with regard to the actions of its police officer in his interaction with the Plaintiff on July 1, 2003, which allegations are set forth in Count I of the Plaintiff's First Amended Complaint. The allegations set forth in Counts II through XV of said Complaint pertain to events that occurred on or before May 13, 2002 while the Plaintiff was employed by the National Railroad Passenger Corporation ("Amtrak") and, as such, they involve Amtrak, not the MBTA. Additionally, any allegations that the Plaintiff sets forth against the MBTA in Counts II through XV are virtually identical to the allegations that he set forth against Amtrak in the matter of Carmack v. The National Railroad Passenger Corporation, Civil Action No. 03-12488-PBS, which is currently pending in this Court. Counts II through XV of the Plaintiff's First Amended Complaint must, therefore, be dismissed as against the MBTA pursuant to Fed.R.Civ.P. 12(b)(6), as said Counts fail to state claims against the MBTA upon which relief can be granted, or, in the alternative, pursuant to the prior pending action doctrine.

**STATEMENT OF THE CASE**

The Plaintiff was employed by Amtrak as a locomotive engineer on the commuter rail in December 1996. (Pl. First Amend. Compl., ¶13). Prior to July 1, 2003, the MBTA was under contract with Amtrak for the latter to provide, as opposed to operate,

commuter rail services for the former. (Pl. First Amend. Compl., ¶10; MBTA's Ans. to Count I of Pl. First Amend. Compl., ¶10). Amtrak discharged the Plaintiff from its employment on or about May 13, 2002. (Pl. First Amend. Compl., ¶121). Amtrak provided commuter rail services for the MBTA through June 30, 2003. On July 1, 2003, the Massachusetts Bay Commuter Railroad Company ("MBCR"), pursuant to contract, began providing, as opposed to operating, commuter rail services for the MBTA. (Pl. First Amend. Compl., ¶9; MBTA's Ans. to Count I of Pl. First Amend. Compl., ¶9).

The Plaintiff was at North Station in Boston, Massachusetts on July 1, 2003, during which the time he possessed written materials. (Pl. First Amend. Compl., ¶20-21). While the Plaintiff was present at North Station on July 1, 2003, Jacqueline Boumel, a MBCR employee, contacted the MBTA police to report the presence of a disorderly male, later identified as the Plaintiff, who was attempting to disrupt passenger service. (Pl. First Amend. Compl., ¶22; MBTA's Ans. to Count I of Pl. First Amend. Compl., ¶22). Thereafter, in response to Ms. Boumel's call, a MBTA police officer approached the Plaintiff at North Station, directed him to leave and issued him a verbal "Trespass Order", warning that if he were discovered on MBTA property over the next twenty-four (24) hours he would be arrested for trespassing. (Pl. First Amend. Compl., ¶23-25; MBTA's Ans. to Count I of Pl. First Amend. Compl., ¶23-25).

## COUNTS II THROUGH XV OF THE
## PLAINTIFF'S FIRST AMENDED COMPLAINT

In Count II (p.5-7), the Plaintiff alleges that between April 11, 2001 and February 2002, specifically named employees of Amtrak falsely portrayed him as a violent, dangerous and mentally unstable person (Pl. First Amend. Compl., ¶29-31) and that specifically named employees of Amtrak and "agents and employees of Defendants" conspired to portray him as mentally unstable. (Pl. First Amend. Compl., ¶32-37). All of the specifically named individuals to whom he refers in Count II, Gerrard L. DeModena, Michael O'Malley, William Rae and Christa Phillips were employees of Amtrak. In Count II, Paragraph 28, the Plaintiff alleges, in part, that Mr. DeModena "was an employee for Amtrak" and in Paragraph 35, the Plaintiff alleges in part, that Ms. Phillips "was a Labor Relations officer for Amtrak." In the Plaintiff's Second Amended Complaint in the matter of Carmack v. The National Railroad Passenger Corporation, Civil Action No. 03-12488-PBS[1], which is currently pending in this Court, the Plaintiff, in Paragraph 19, identified Mr. O'Malley as "Michael J. O'Malley, the Manager of Operations for Amtrak Commuter Services" and he, in Paragraph 82, identified Mr. Rae as an "Amtrak Trainmaster." None of the specifically named individuals were agents or employees of the MBTA. Neither the MBTA, nor any of its agents or employees is specifically identified in Count II. Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents or employees of Defendants.

---

[1] "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Grynberg v. Koch Gateway Pipeline Company, 390 F.3d. 1276, 1279, n.1 (10th Cir.2004), quoting Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir.2000).

2

In Count III (p.7-8), the Plaintiff alleges that Amtrak intervened in his medical treatment and intentionally induced him to reveal confidential matters relative to his diagnosis and treatment. (Pl. First Amend. Compl., ¶44, 46).  Neither the MBTA, nor any of its agents or employees is specifically identified in Count III.  Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents or employees of Defendants.

In Count IV (p.9), the Plaintiff alleges that between April 11 and 13, 2001, Amtrak's Threat Assessment Response Team ("TART") considered Mr. DeModena's complaint that the Plaintiff had threatened Mr. DeModena and decided that it justified the Plaintiff's being psychologically examined. (Pl. First Amend. Compl., ¶52-54).  Neither the MBTA, nor any of its agents or employees is specifically identified in Count IV.  Accordingly, any reference to the MBTA would be by virtue of the generalized reference to "agents for the Defendants".

In Count V (p.9-10), the Plaintiff alleges that on or about April 13, 2001, Amtrak's TART concluded that Amtrak's Workplace Violence Policy required it to have employees [of Amtrak] who were accused of threatening behavior medically examined. (Pl. First Amend. Compl., ¶58).  Neither the MBTA, nor any of its agents or employees is specifically identified in Count V.  Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents of the Defendants.

In Count VI (p.10-13), the Plaintiff alleges that on or about May 3, 2001, Dr. Tim Pinsky, who the Plaintiff identifies as "Amtrak's Medical Director" (Pl. First Amend. Compl., ¶61), prepared medical reports stating that the Plaintiff suffered from bi-polar and/or personality disorder (Pl. First Amend. Compl., ¶62); that on or about May 3, 2001, Marianne Letterio, who the Plaintiff identifies as "Amtrak's Manager of Health Services" informed Messrs. O'Malley and DeModena "and other agents of Amtrak and Defendants" that Dr. Pinsky deemed the Plaintiff medically disqualified (Pl. First Amend. Compl., ¶63); that on or about May 4, 2001, Mr. O'Malley medically disqualified the Plaintiff from service because Mr. O'Malley regarded the Plaintiff as having an impairment due to mental illness (Pl. First Amend. Compl., ¶66, 69-73).  Neither the MBTA, nor any of its agents or employees is specifically identified in Count VI.  Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or employees or agents of Defendants.

In Count VII (p.13-15), the Plaintiff alleges that between May 4 and September 10, 2001, Mr. O'Malley and Dr. Pinsky directed that the Plaintiff undergo psychiatric evaluations to be conducted by Dr. Russell Vasile (Pl. First Amend. Compl., ¶76); that the Plaintiff asked Dr. Pinsky for his medical file, which request was unanswered (Pl. First Amend. Compl., ¶79, 83); and that the Plaintiff's access to information was obstructed, along with numerous other allegations.  (Pl. First Amend. Compl., ¶85).  The Plaintiff, in his use of the words "Defendant" or "Defendant's" in Paragraphs 78-81 and 83-84, is referring to Amtrak.  Neither the MBTA, nor any of its agents or employees is specifically identified in Count VII.  Accordingly, any reference to the MBTA would be by virtue of the generalized references to Defendants in Paragraph 85.

In Count VIII (p.15-17), the Plaintiff alleges that on or about June 27, 2001, he requested from Dr. Vasile a reasonable accommodation in evaluating his medical condition, which request was denied by Mr. O'Malley on or about July 24, 2001 (Pl. First Amend. Compl., ¶89, 94).  All of the allegations set forth in Count VIII specifically involve Amtrak.  Count VIII does not contain even a generalized reference to the MBTA or its agents or employees.

In Count IX (p.17-21), the Plaintiff alleges that from 1983 through May 17, 2001, he advised the Defendant [referring to Amtrak] that he was monitoring his mental health (Pl. First Amend. Compl., ¶99); that between July 27 and September 10, 2001, he requested reasonable accommodations from the Defendant [referring to Amtrak], Dr. Vasile and Dr. Pinsky (Pl. First Amend. Compl., ¶101-104, 106-107); that on June 14, 2003 [which date contains a typographical error in that said date should properly read June 14, 2001 as the Plaintiff was discharged by Amtrak on May 13, 2002 (Pl. First Amend. Compl., ¶121)] he asked Mr. O'Malley for a reasonable accommodation (Pl. First Amend. Compl., ¶112); that Mr. O'Malley threatened him with dismissal for requesting a reasonable accommodation (Pl. First Amend. Compl., ¶114); that on September 10, 2001, Mr. O'Malley began formal proceedings to charge him with insubordination (Pl. First Amend. Compl., ¶116); that on or about May 13, 2002, "Francis J. O'Connor, Assistant General Manager in service to Amtrak, dismissed Plaintiff " (Pl. First Amend. Compl., ¶121); and that "Amtrak retaliated against Plaintiff" for requesting a reasonable accommodation (Pl. First Amend. Compl., ¶122).  All of the allegations set forth in Paragraphs 99-121 of Count IX involve Amtrak.  Neither the MBTA, nor any of its agents or employees is specifically identified in Count IX.  Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents of the Defendants.

In Count X (p.21-22), the Plaintiff alleges that on April 11, 2001, Mr. DeModena and "agents of Amtrak and Defendants" prepared workplace violence reports which distorted his ideas and writings (Pl. First Amend. Compl., ¶126); that "Mr. Lou DePhillips, Labor Relations officer for Amtrak" orchestrated his termination (Pl. First Amend. Compl., ¶127); and that on July 1, 2003, "Defendants" denied the Plaintiff his right to a position of locomotive engineer. (Pl. First Amend. Compl., ¶128).  Neither the MBTA, nor any of its agents or employees is specifically identified in Count X.  Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents, employees or servants of Defendants.

In Counts XI (p.22-25) and XII (p.25-27), the Plaintiff alleges that throughout his employment with Amtrak, he participated in union activities (Pl. First Amend. Compl., ¶131-133) and that Messrs. DePhillips, DeModena, O'Malley and "agents of Amtrak and Defendants"  inhibited his union activity beginning April 25, 2000 and accused him of workplace violence beginning April 11, 2001 (Pl. First Amend. Compl., ¶135-136, 139, 150).  Neither the MBTA, nor any of its agents or employees is specifically identified in Counts XI and XII.  Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents or employees of Defendants.

In Count XIII (p.27-29), the Plaintiff alleges that Messrs. DeModena, Dr. Phillips and O'Malley and agents, servants and employees of Amtrak and Defendants discriminated him against on the basis of his religion between April 4, 2001 and May 13, 2002. Neither the MBTA, nor any of its agents or employees is specifically identified in Count XIII. Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents or employees of Defendants.

In Count XIV (p.29-32), the Plaintiff alleges that he was employed by Amtrak on April 11, 2001 (Pl. First Amend. Compl., ¶186); that on April 11, 2001, Messrs. DeModena and Dr. Phillips filed a workplace violence complaint against him (Pl. First Amend. Compl., ¶187); that "Amtrak and Defendants maintain and execute policies" that stigmatize disfavored employees (Pl. First Amend. Compl., ¶188); and that "Amtrak and Defendants" have stigmatized him as mentally ill (Pl. First Amend. Compl., ¶192-195). Neither the MBTA, nor any of its agents or employees is specifically identified in Count XIV. Accordingly, any references to the MBTA would be by virtue of generalized references to Defendants or agents or employees of Defendants.

In Count XV (p.32-33), the Plaintiff alleges that the "Defendant Corporation" [referring to Amtrak] wrongfully discharged him. Neither the MBTA, nor any of its agents or employees is specifically identified in Count XV. Accordingly, any references to the MBTA would be by virtue of generalized references to agents, employees or servants of Defendants.

## ARGUMENT

**A.   Counts II through XV of the Plaintiff's First Amended Complaint Fail to State a Claim as Against the MBTA**

"In considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), a court must take well-pled factual allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff." Seachange International, Inc., 2004 WL 240317 (D.Mass.) at 3, citing Watterson v. Page, 987 F.2d 1, 3 ($1^{st}$Cir.1993). "The court, however, need not credit 'bald assertions, unsupportable conclusions, and 'opprobrious epithets.''" Id., quoting Chongris v. Bd. of Appeals, 811 F.2d 36, 37 ($1^{st}$Cir.1987). "Dismissal under Rule 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Id., citing Cooperman v. Individual, Inc., 171 F.3d 43, 46 ($1^{st}$Cir.1999). "If the pleading fails to make out a legal claim upon which relief can be granted or fails to allege any facts that would support a legal claim, the pleading is insufficient and should be dismissed." Arruda v. Sears, Roebuck & Company, 273 B.R. 332 (D.RI) at 340, citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52-53 ($1^{st}$Cir.1990). See also Colonial Mortgage Bankers Corp., 324 F.3d 12 ($1^{st}$Cir.2003), in which the court, in affirming the allowance of a motion to dismiss, stated, "the plaintiff's factual averments hold out no hope of recovery on any theory adumbrated in its complaint." Id. at 15.

Counts II through XV of the Plaintiff's First Amended Complaint state no cause of action upon which relief can be granted as against the MBTA. Said Counts are wholly unrelated to the MBTA in that they neither pertain to, nor involve the MBTA. Counts II through XV focus solely on the actions of Amtrak and its employees. In fact, the allegations set forth in Counts II through XV are virtually identical to the allegations that the Plaintiff set forth against Amtrak in the matter of <u>Carmack v. The National Railroad Passenger Corporation</u>, Civil Action No. 03-12488-PBS, which is currently pending in this Court.

The MBTA's sole involvement in this matter is with regard to the actions of its police officer at North Station on July 1, 2003, which allegations are set forth in Count I of the Plaintiff's First Amended Complaint. On that day, a MBTA police officer, in response to a call regarding a disorderly male later identified as the Plaintiff, approached the Plaintiff, directed him to leave North Station and issued him a verbal "Trepass Order".

Conversely, the focus of Counts II through XV is on the period of time during which the Plaintiff was employed by Amtrak. He was employed by Amtrak as a locomotive engineer from December 1996 (Pl. First Amend. Compl., ¶13) until his discharge on May 13, 2002 (Pl. First Amend. Compl., ¶121). The Plaintiff is not, and he never was, an employee of the MBTA. With the exception of Paragraphs 112, 140, 151, 163, 166 and 202-204, which contain erroneous dates[2], and Paragraph 128, in which the Plaintiff alleges that "[o]n or about July 1, 2003, Defendants denied Plaintiff's right to a position as Locomotive Engineer" (which requires no further discussion as the Plaintiff had no right of employment with the MBTA), Counts II through XV relate to events which occurred on or before May 13, 2002.

Specifically, the factual allegations set forth in Counts II through XV, in the simplest terms, are that on or about April 4, 2001, the Plaintiff wrote a letter to BLE Local Chairman O'Bryan (Pl. First Amend. Compl., ¶160); that on or about April 11, 2001, the Plaintiff was accused of workplace violence as a result of writing said letter (Pl. First Amend. Compl., ¶165); that he was medically disqualified on or about May 4, 200[1] (Pl. First Amend. Compl., ¶166); that between May 4 and September 10, 2001, he was directed to undergo psychiatric evaluations (Pl. First Amend. Compl., ¶76); that on or about September 10, 2001, he was charged with insubordination for not presenting for

---

[2] Erroneous dates are set forth in the following Paragraphs: 112, in which it is alleged that on June 14, 2003, the Plaintiff asked Mr. O'Malley for a reasonable accommodation – said date contains a typographical error in that it should properly read June 14, 2001 as the Plaintiff was discharged by Amtrak on May 13, 2002 (Pl. First Amend. Compl., ¶121); 140, 151 and 166, in which it is alleged that on May 4, 2004, agents of Amtrak and "Defendants" medically disqualified the Plaintiff from employment – said date contains a typographical error in that it should properly read May 4, 2001 as the Plaintiff was discharged on May 13, 2002 and, additionally, in Paragraph 170 of the Plaintiff's Second Amended Complaint in the matter of <u>Carmack v. The National Railroad Passenger Corporation</u>, the Plaintiff alleges that Mr. O'Malley medically disqualified him on or about May 4, 2001; and 163 and 202-204, in which the Plaintiff alleges that several events occurred in April 2004, which, for the reasons set forth above, should properly read 2001.

6

a psychiatric evaluation (Pl. First Amend. Compl., ¶115-116); and that his employment with Amtrak was terminated on or about May 13, 2002 (Pl. First Amend. Compl., ¶121).

A review of the factual allegations set forth in Counts II through XV indicates that said Counts focus on the actions of Amtrak and its employees on or before May 13, 2002, well before the MBTA's involvement with the Plaintiff, through its police officer, on July 1, 2003. Neither the MBTA, nor any of its agents or employees is specifically identified in Counts II through XV. Accordingly, any references to the MBTA in said Counts are, necessarily, by virtue of generalized references to Defendants or agents, employees or servants of Defendants. The actors specifically named in Counts II through XV are (or were) employees of Amtrak; they are not, and they were not, either employees or agents of the MBTA. The fact that Amtrak was under contract with the MBTA to provide commuter rail services is of no consequence in this matter, as no MBTA employee or agent was involved in any of the events referred to in Counts II through XV.

The Plaintiff, in Paragraph 122, alleges, in part, that "Amtrak retaliated against Plaintiff employee by charging Plaintiff with insubordination, terminating Plaintiff from employment as Locomotive Engineer, denying seniority rights and rights to employment on with Defendants." By specifically limiting his allegation to Amtrak, he acknowledges that Amtrak, not the MBTA, was the actor with regard to the events which occurred prior to his employment being terminated on May 13, 2002, which is the sole focus of Counts II through XV. To the extent that the Plaintiff suggests that had his employment with Amtrak not been terminated, he would have had seniority rights and rights to employment with the "Defendants", presumably referring to the MBCR and the MBTA, he is mistaken, as he had no right of employment with the MBTA.

The allegations set forth in Counts II through XV of the Plaintiff's First Amended Complaint are wholly unrelated to the MBTA in that they neither pertain to, nor involve the MBTA. Said Counts must, therefore, be dismissed as against the MBTA pursuant to Fed.R.Civ.P. 12(b)(6) as they fail to state claims against the MBTA upon which relief can be granted.

### B. Counts II through XV are Barred by the Prior Pending Action Doctrine.

Counts II through XV of the Plaintiff's First Amended Complaint must be dismissed pursuant to the prior pending action doctrine. Under that doctrine, a subsequent action can be dismissed provided that: (1) an identity of issues exists with the prior pending action, and (2) the controlling issues in the subsequent action will be determined in the prior pending action. 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1360, p. 89 (3$^{rd}$ed.2004). In accordance with said doctrine, "[t]he Court has the inherent power to dismiss or stay [an] action in favor of the [prior] litigation presenting the same claims and issues." Lesavoy v. Lane, 304 F.Supp.2d 520, 535 (S.D.N.Y.2004), quoting Continental Time Corp. v. Swiss Credit Bank, 543 F.Supp. 408, 410 (S.D.N.Y.1982).

"The purpose of this rule is 'to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments.…'" Taylor v. Rell, Slip Copy, 2005 WL 2807223 (D.Conn.) at 2, quoting Colortyme Financial Servs., Inc. v. Kivalina Corp., 940 F.Supp. 269, 272 (D.Haw.1996). "The general rule is that the first suit to be filed should have priority 'absent the showing of balance of convenience in favor of the second action.'" Id., quoting Adam v. Jacobs, 950 F.2d 89, 93-94 (2$^{nd}$Cir.1991). "[N]either the addition of defendants nor the expansion of claims is dispositive [to the court's decision to dismiss a suit due to a prior pending action]. Courts have repeatedly ruled that 'parties and issues need not be identical in order for one action to be stayed or dismissed in deference to an earlier action.'" Lesavoy at 536, quoting Dragon Capital Partners L.P. v. Merrill Lynch Capital Servs., Inc., 949 F.Supp. 1123, 1127 (S.D.N.Y.1997).

"In determining whether a claim is barred by the prior pending action doctrine, the court may rely on a comparison of the pleadings filed in the two actions." Taylor at 2. A comparison of Counts II through XV of this action with the complaints filed in Carmack v. The National Railroad Passenger Corporation ("the Amtrak action") reveals that the allegations that the Plaintiff set forth in Counts II through XV of this action are, although somewhat less detailed, virtually identical to the allegations that he set forth in the Amtrak action.

Here, "the balance of convenience" weighs in favor of the first-filed action (the Amtrak action), which was filed in December 2003, for the following reasons: the Plaintiff is the same in both actions; the claims and issues presented in Counts II through XV of the present action are virtually identical to those presented in the Amtrak action and they involve Amtrak, not the MBTA; the claims and issues presented in Counts II through XV of the present action will be determined in the Amtrak action; the interest of judicial efficiency favors the Amtrak action as Amtrak has appeared and is defending said action, which has been pending for approximately two (2) years and is, therefore, at a more advanced stage of the litigation process than the present action; and adequate relief is available for the Plaintiff in the Amtrak action.

"Faced with repetitive complaints in the same district, the district court should invoke the prior pending action doctrine to give priority to the first suit." Smith v. United Federation of Teachers, 162 F.3d. 1148, 1998 WL 639756 (C.A.2(N.Y.)) at 2, citing First City Nat'l Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2$^{nd}$Cir.1989).

For the reasons set forth above, Counts II through XV of the Plaintiff's First Amended Complaint must be dismissed as against the MBTA pursuant to the prior pending action doctrine.

## CONCLUSION

For the reasons set forth above, the MBTA respectfully requests that this Honorable Court dismiss Counts II through XV of the Plaintiff's First Amended Complaint as against the MBTA pursuant to Fed.R.Civ.P. 12(b)(6), as said Counts fail to state claims against the MBTA upon which relief can be granted or, in the alternative, pursuant to the prior pending action doctrine.

Respectfully submitted
For the MBTA
By its attorney,

**CERTIFICATE OF SERVICE**

I, Todd M. Valicenti, hereby certify that I have caused a copy of the foregoing document to be served by first class mail, postage prepaid, upon *pro se* Plaintiff, Joseph T. Carmack, 398 Columbus Avenue, PMB 130, Boston, MA 02116, on this 9th day of December 2005.

/s/Todd M. Valicenti
Todd M. Valicenti

/s/ Todd M. Valicenti
Todd M. Valicenti
BBO# 632800
Assistant General Counsel
MBTA Legal Dept.
Ten Park Plaza, Suite 7760
Boston, MA 02116
Tel: (617) 222-4579
E-mail: tvalicenti@mbta.com

Dated: December 9, 2005

**CERTIFICATE OF COMPLIANCE WITH LR 7.1(A)(2)**

I, Todd M. Valicenti, hereby certify that I conferred with the *pro se* Plaintiff, Joseph T. Carmack, on this 17th day of November 2005, in a good faith attempt to resolve or narrow the foregoing issues.

/s/Todd M. Valicenti
Todd M. Valicenti