UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph T. Carmack )<br>)<br>Plaintiff, Pro Se )<br>) Civil Action No. 05-11430 PBS<br>v. )<br>)<br>Massachusetts Bay Transportation )<br>)<br>Authority )<br>)<br>and )<br>)<br>Massachusetts Bay Commuter Railroad )<br>)<br>Company )<br>)<br>Defendants )<br>_____ ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF JOSEPH T. CARMACK'S OPPOSITION AND COUNTERMOTION FOR SUMMARY JUDGMENT TO DEFENDANTS MASSACHUSETTS BARY TRANSPORTATION AUTHORITY'S AND MASSACHUSETTS BAY COMMUTER RAILROAD COMPANY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(B)(6)**

Plaintiff Joseph T. Carmack hereby opposes Defendant Massachusetts Bay Transportation Authority's ("MBTA") motion to dismiss and Massachusetts Bay Commuter Railroad Company's ("MBCR") motion to dismiss Plaintiff's Complaint 1st Amended Complaint Pursuant to Fed.R.Civ.P. 12(B)(6). As grounds therefore, Plaintiff hereby submits that evidence sets forth "specific facts showing that there is a genuine issue for trial", *Fed.R.Civ.P. 56(E)*. Defendants MBTA and MBCR are not entitled to summary judgment.



## I. CIRCUMSTANCES OF MOTION

Defendant MBCR has submitted their motion to dismiss Count I of Plaintiff's original complaint, including sub-counts set forth by Defendant MBCR in their memorandum. *Memorandum In Support Of Massachusetts Bay Commuter Railroad Company's Motion To Dismiss Plaintiff's Complaint Pursuant To Fed.R.Civ.P. 12 (B)(6)* (hereinafter referred to in conjunction with MBCR's motion to dismiss as "*Motion to Dismiss*"). Plaintiff hereby submits this opposition solely to address matters as pleaded in Plaintiff's original Complaint (hereafter "*Original Complaint*").

However, prior to the filing of MBCR's motion to dismiss, Plaintiff filed a "First Amended Complaint". Defendant MBCR is subsequently filed another motion to dismiss allegations of Plaintiff's First Amended Complaint. Accordingly, Plaintiff reserves right to submit supplemental oppositions to any future motions to dismiss Plaintiff's Original Complaint or any motions to dismiss Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure and Local Rules.

## II. OVERVIEW OF ISSUES IN DISPUTE

A. Civil Rights; Defendant MBCR acting "under color of state law". *42 U.S.C. s. 1983.*

Defendant MBCR supports their *Motion to Dismiss* by asserting that "MBCR is not a governmental agency nor is it acting under color of state law". Plaintiff hereby counters MBCR's assertion by stating that MBCR's status as a public or private entity is irrelevant. MBCR has acted and continues to act under color of *Massachusetts General Laws c. 160, 161A* and *M.G.L. c. 266 s.. 120*. These state laws qualify MBCR as a state actor with authority delegated to MBCR by law and the Commonwealth of Massachusetts through co-Defendant Massachusetts Bay Transportation Authority. In all the charges alleged in the *Original Complaint*, MBCR is acting with authority of the state as agent for the state. This Honorable Court has jurisdiction over federal causes of action pursuant to *42 U.S.C. s.. 1983* where MBCR is an agent of the Commonwealth of Massachusetts acting "under color of state law".

2

B. Supplemental Jurisdiction

Likewise, as stated in Plaintiff's *Original Complaint*, this Honorable Court has supplemental jurisdiction over the ancillary state law claims articulated herein because the state laws are bound to claims to the action over which this Honorable Court has original jurisdiction. All allegations, including allegations pursuant to *Massachusetts General Laws* giving rise to cause for this action as articulated herein and in Plaintiff's *Original Complaint* stem from the same nucleus of operable fact.

C. *The Railway Labor Act. 42 U.S.C. ss. 151 et. seq.*

This Honorable Court also has jurisdiction over federal causes of action pursuant to *The Railway Labor Act, 45 U.S.C. ss. 151 et. seq.* ("RLA or *the Act*"). Plaintiff's *Original Complaint* does not present issues governed by the *Collective Bargaining Agreement* ("CBA") governing employees of MBCR. Employee status of Plaintiff is irrelevant to allegations as presented in Plaintiff's *Original Complaint*. Whether or not this Honorable Court views the Plaintiff as an '*employee*' as defined by *The Railway Labor Act* ("*the Act*") and, therefore, subject to privileges and guarantees provided by *the Act* as an '*employee*', *45 U.S.C. s. 151 Fifth*. Plaintiff's Original Complaint, nonetheless, asserts that *the Act* bestows rights and privileges on Plaintiff's '*representative*' organization as defined by *the Act* and, therefore rights and privileges apply to members conjointly and individually when engaged in activities protected by *the Act*. The provisions of *the Act* apply to the Plaintiff as a member of the organization. *45 U.S.C. s. 151 Sixth*. Plaintiffs *Original Complaint* asserts that Defendant MBCR acted under color of state law to interfere with the rights and privileges guaranteed by the *Railway Labor Act* itself, including, but not limited to, the right of freedom of association. This court has jurisdiction over *the Railway Labor Act* claims pleaded in and of themselves and as rights asserted under *42 U.S.C. s. 1983*.

### III. STANDARD OF REVIEW

Defendant MBCR has moved this Honorable Court for dismissal of this matter pursuant to *F.R.Civ.P. 12(b)(6)* for "failure to state a claim upon which relief can be granted". A motion to dismiss subjects the nonmovant to the same test as a motion for summary judgment, *F.R.Civ.P. 56*. When the Court rules on a 12 (b)(6) motion

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. *F.R.Civ.P. 12(b)(6)*.

Summary judgment must be granted when movant can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law", (*F.R. Civ. P. 56[c]*). When a party submits a motion to dismiss for "failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court" (*id.*). To survive a summary judgment, the nonmovant must present "genuine disputes over material facts" that "can only sprout out of competent and reasonably definite evidence in the summary judgment record", *Roche v. John Hancock Mutual Life Insurance Co., 81 F.3d 249, 253*. When considering the motion, the Court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the Plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory", *Martin v. Applied Cellular Tech, Inc. 284 f.3d 1, 6. (1st.Cir, 2002)*. Quoted from *Meuse v. Pane,* supra.). The Court should not rely on "bald assertions, insupportable conclusions, and 'opprobrious epithets.'" *Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)* (citing *Snowden v. Hughes, 31 U.S. 1, 10 (1944)*.

### IV. ARGUMENT

A. THE DOCUMENTED FACTS SUPPORT THE ALLEGATIONS IN THE PLEADINGS

    **1. All Plaintiff's Constitutional And Federal Civil Rights Claims Must Go**

**Forward Because (a) MBCR Is An Agent Of A Governmental Agency And Is Acting Under Color Of State Law, and (b) MBCR Is Acting Under Color Of State Law To Restrict Plaintiff's Right to Movement and Public Access, Bar Plaintiff's Speech, and To Deprive Plaintiff of Security in Person and Effects Through Unreasonable Search and Seizure and Without Probable Cause.**

a. <u>MBCR Is An Agent Of A Governmental Agency And Is Acting Under Color Of State Law</u>

42 U.S.C. s. 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

In their *Motion to Dismiss*, quoting the *Original Complaint at Paragraph 4*, Defendant MBCR claims that in acknowledging that MBCR is a "for profit corporation", Plaintiff "does not and cannot make any assertion that MBCR is acting 'under the color of state law.' Consequently, Plaintiff's Counts I, II and III must be dismissed". Plaintiff counters that whether MBCR is a "for Profit Corporation" or not, MBCR is, nonetheless, acting under color of state law as an agent of the Commonwealth of Massachusetts.

In their answer to the *Original Complaint*, the Massachusetts Bay Transportation Authority ("MBTA" or "Defendant MBTA"), has stated that "the status of the MBTA is defined in M.G.L. c. 161A, s. 2. and that the MBTA "provides public transportation services". *Answer And Jury Demand Of Defendant Massachusetts Bay Transportation Authority ("MBTA Ans.") para. 3*. Defendant MBTA also stated that MBCR "is under contract with the MBTA to provide, . . . commuter rail services for the MBTA" and, elsewhere, that "on or about February 19, 2003 the MBTA entered into a contract for the latter to provide . . . commuter rail services for the former, which services commenced on July 1, 2003". *Ibid, paragraph 10*.

*M.G.L.. c. 161A ("161A") s. 2* states in pertinent part:

> The area constituting the authority and the inhabitants thereof are hereby made a body politic and corporate, and a political subdivision of the commonwealth, under the name of Massachusetts Bay Transportation Authority.

In addition, *161A at section 3* elaborates in pertinent parts:

> In addition to all powers otherwise granted to the authority by law, the authority shall have the following powers...
>
> (c) To hold, *operate and manage the mass transportation facilities* and equipment acquired by the authority.
>
> (d) To appoint and employ officers... agents, and employees to serve at the pleasure of the directors...
>
> (f) *To enter into agreements with other parties, including,* without limiting the generality of the foregoing...*railroads*, and other concerns, *providing (i) for* construction, *operation and use of any mass transportation facility* and equipment held or later acquired by the authority...; (ii) *for joint or cooperative operation of any mass transportation facility and equipment with another party*; (iii) for *operation and use of any mass transportation facility and equipment for the account of the authority, for the account of another party or for their joint account;*
>
> (g) To establish transit facilities and related infrastructure, including terminals, stations, access roads and parking, *pedestrian access facilities* and bicycle parking and *access facilities* as may be deemed necessary and desirable.
>
> (i) To provide mass transportation service, whether directly, *jointly or under contract*, on an exclusive basis, *in the area constituting the authority*
>
> (Emphasis added).

Also, 161A includes the following pertinent definitions in section 1:

> "Authority", the Massachusetts Bay Transportation Authority established by section 2.
>
> "Area constituting the authority", the service area of the authority consisting of the 14 cities and towns, the 51 cities and towns, and other served communities.
>
> "Fourteen cities and towns", the cities and towns of... Boston...

6

> "Mass transportation facilities", all real property, including land. . .stations. . . *shops* and structures appurtenant thereto. . . *permits and franchises*, used in connection with the mass movement of persons. (Emphasis added).

*M.G.L. 161A*, obviously a "state law" and set forth in *M.G.L. PART 1. ADMINISTRATION OF THE GOVERNMENT* and *TITLE XXII. CORPORATIONS*, establishes a solid and undeniable nexus of shared authority between the two Defendants. MBTA did bind itself by contract. to MBCR. *MBTA ans. paragraphs 3 and 10*; On July 1, 2003, the MBTA was, and still is, "under contract with the MBCR" . *MBTA ans., para. 4,* to "provide, as opposed to operate, commuter rail services", *id.*; and the Defendants MBTA and MBCR ("the Defendants") did "enter into agreements. . . for joint or cooperative operation. . . for operation and use of [a]. . . mass transportation facility", *161A, sect. 3(f)*. . . including stations,. . . pedestrian access facilities,. . . other access facilities", *ibid, para. (5)*, as well as "shops" and "franchises" at North and South stations in "Boston", *ibid, sect. 1*.

*161A* clearly bestows a state law authority upon both the MBTA **and** MBCR. The *Original Complaint* charges that as a direct and "proximate result of the actions" of employee agents of both MBTA and MBCR: "plaintiffs (sic) rights, privileges and immunities as a citizen has (sic) been abridged; Plaintiff is denied freedom of speech and association; plaintiff is denied the right to organize in his union; and Plaintiff is denied union rights generally". *Original Complaint para. 26*. The alleged actions occurred at North Station and the evidence substantiates that they were committed by agents of both MBCR (Ms. Boumel) and MBTA (Officer Pavia) acting conjointly. *SDMF at 27 and 28, Exhibits F, G and P*. Boumel and Pavia were both acting, conjointly in their capacities as agents of MBCR and MBTA. Boumel and Pavia were acting per agreement between MBTA and MBCR "for joint operation or copperative operation of [a] mass transporation facility" (i.e. North Station)(*M.G.L. 161A section 3 [f][ii]*) to "provide mass transportation service" and "operate mass transportation facilities and equipment. . . in

7

areas constituting the authority" as a "political subdivision of the commonwealth, under the name of Massachusetts Bay Transportation Authority." *id.* Amtrak Trial Counsel, Jonathan Feltner, stated that MBTA authorizes MBCR with control over North and South Stations by contract with the MBCR. *SDMF at 37, Exhibit P at 39*. The Defendants were acting pursuant to state law *M.G.L. c. 161A sections 2 and 3* when they evicted and barred the Plaintiff from MBTA stations.

The *Original Complaint* alleges that Defendant MBCR violated federal civil rights laws when Boumel and Pavia acted conjointly to evict and bar Plaintiff from all MBTA stations with a Trespass Order. MBCR does not deny that they barred the Plaintiff from the North Station and issued a "trespass order". *Motion to Dismiss Pages 3-4* and "*Exhibit F*". Defendant MBCR argues that they are immune to *42 U.S.C. s. 1983* civil rights action. Plaintiff herein argues that *161A* qualifies MBCR as an MBTA agent of the Commonwealth whose actions are vulnerable to a colorable *section 1983* claim.

b. <u>Defendants use of state law to justify their actions makes their actions vulnerable to causes for action pursuant to *the Civil Rights Act of 1871, U.S.C. s. 1983.*</u>

Defendant MBCR claims right to Bar Plaintiff from MBTA stations. *Motion to Dismiss, IV.A.1.b., page 6*. As an agent of the Commonwealth of Massachusetts vested (along with Defendant MBTA) with joint control over MBTA stations in accordance with *161A*, there can be no doubt that MBCR acted "under color" of *M.G.L. s. 161A* when Ms. Boumel and Officer Pavia acted conjointly to evict and bar Plaintiff from MBTA public property. Beyond this, however, MBCR also claims that Boumel and Pavia acted with legal right to "Bar The Plaintiff From MBCR Property" pursuant to *M.G.L. c. 266 s. 120*. As argued above, North Station is not MBCR Property. It is Commonwealth property controlled by a state agency, the MBTA, which shares control jointly with MBCR under *M.G.L. c. 161A, section 3 (f)(iii)*. However, MBCR, does have a right, in accordance with state law, to bar the Plaintiff (or anyone else) from North Station. That is precisely the

8

Plaintiff's point at issue in asserting a *section 1983* claim. "Section 1983 is a remedial statute which does not create substantive rights". *Chapman v. Houston Welfare Rights Organization, 441 U/S. 600, 616-18.* "It provides a remedy for the violation of rights created elsewhere." *Day v. Wayne County Bd. of Auditors, CA 6, 749 F.2d 1189 (1984).* The issue at law, pursuant to Plaintiff's *Original Complaint*, is whether MBCR violated federal civil rights law other than *the Civil Rights Act of 1871*, when it acted conjointly with the MBTA on a state law right. MBCR claims they didn't; the Plaintiff asserts that MBCR did.

Whether or not the written materials that the Plaintiff carried to North Station on July 1, 2003, contained information relative the *CBA* is irrelevant. For purposes of this opposition, this Honorable Court only need decide that the Defendant was acting under color of state law when they barred Plaintiff from the MBTA stations. The Court does not need to decide the federal element of counts I, II, and III. Defendant has not moved for dismissal on the federal questions relative to Counts I, II and III in and of themselves. Defendant MBCR has only argued for dismissal of Counts I, II, and III based on MBCR's assertion that Plaintiff's federal claims, as enumerated in Counts I, II, and III, are not colorable *U.S.C. s. 1983* claims. MBCR does not argue the federal questions on their own merit as pleaded in the *Original Complaint*. Once this Honorable Court establishes that Defendant MBCR acted under color of state law when it evicted and barred the Plaintiff from MBTA stations, the Court must then decide, based on the pleadings, motions and supporting documents, whether or not a trier of fact could reasonably conclude that Defendants actions "subject[ed] or cause[d] [the Plaintiff] to be subjected . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws" of the United States. *42 U.S.C. s. 1983.*

### 2. To The Extent that opposition to Motion to Dismiss and Cross Motion for Summary Judgment Require It, the Documented Facts Support the Allegations that MBCR Acted to (a) Restrict Plaintiff's Freedom of

**Movement and Deny Plaintiff Public Access to Property and Services; (b) Bar Plaintiff's Speech; (c) and Deprive Plaintiff of Security in his Person, Papers and Effects through Unreasonable Search and Seizure Without Probable Cause.**

   a. <u>MBCR has Acted to Restrict Plaintiff's Freedom of Movement and Deny Plaintiff Public Access to Property and Services</u>

On July 1, 2003, Plaintiff went to North Station. Plaintiff was carrying several copies of an "Open Letter to Division 57" referring to his BLE local organization. *SDMF at 34 and 35, Exhibit E at* ___ , *Exhibit P at* ___. The open letter includes the following statements: "I own a job. I'm not asking for one. . . . I am returning from a Medical Leave of Absence as per the 2001 Amtrak/BLE roster. . . . I have a job and I'm going to take it. . . . This division has a responsibility to me and I expect to be paid. I can only be paid, if this Division mandates through division action that my time claims be processed in accordance with the MBCR/BLE agreement. . . I'm reporting on July 1, 2003 to displace the job I own." On the reverse side, the "leaflet" side, the letter states:

> 7. MBCR failed to award position to Engineer Carmack as an 'eligible employee' in accordance with Seniority Rights established as per rules(sic) 5 of AMTRAK/BLE agreement.
> 8. Effective July 1, 2003 Engineer Carmack must exercise his seniority or lose all rights in accordance with MBCR/BLE agreement.
> 9. J. Carmack will make displacement on Run 820 on July 1, 2003 at 4:40 PM.
> . . .
> 11. BLE Division 57 assistance in this matter will be greatly appreciated."

It is clear that Plaintiff felt a need to contact fellow union members at North and South stations. Plaintiff's "open letter" states that: "This division has a responsibility to me and I expect to be paid. I can only be paid, if this Division mandates through division action that my time claims be processed in accordance with the MBCR/BLE agreement". The reverse or "leaflet" side says: BLE Division 57 assistance in this matter will be greatly appreciated".

BLE Division 57 ("BLE-57") is the local organization of the BLE representing commuter rail engineers with over 160 members (*SDMF at 6*, MBCR 'conditional offer of

employment', *Exhibit C₁*, and *MBCR/BLE CBA, Exhibit Q.*),  As an employee on Amtrak (*45 U.S.C. s. 151 Fifth*), Plaintiff was continue to grieve Plaintiff's termination with BLE as his 'representative'. *45 U.S.C. s. 151 Sixth*. Whether or not the carrier, Amtrak or MBCR, considered the Plaintiff to be an 'employee' as defined by *the RLA*, Plaintiff was pursuing rights and privileges as a member of BLE-57 pusuant to the *BLE constitution. SDMF* at *8 through 11*.

Only four of BLE-57's approximately160 members, including the Plaintiff, attended the June monthly meeting, *SDMF at 34, Exhibit P*. Plaintiff had no car nor phone list and no means of contacting fellow union members other than meeting near their report locations while going on or off duty or on break.  Having been barred from "employee areas" at North and South stations (*Exhibit A*) Plaintiff was precluded from resolving grievances and time claims with the carrier pursuant to usual remedial scheme for "minor disputes" as defined and designed by *the Railway Labor Act*. "It shall be the duty of all carriers . . . to settle all disputes, whether arising out of the application of . . . agreements *or otherwise*". *45 s. 152 First Duty of carriers and employees to settle disputes*. It was likely that Plaintiff would be arrested and charged with trespassing if he attempted to approach a railroad official and settle his grievances directly.  That option was foreclosed.  The alternative was to organize enough votes for a division action that would allow Plaintiff's representative organization to act on Plaintiff's behalf.  Plaintiff's only means of contacting other engineers and canvas enough votes to contitute an action was to contact fellow organization members at MBTA stations. *SDMF at* 35 and 36.

It is impractical to canvas for BLE votes outside the stations.  Engineers, on and off duty, congregate inside the stations and only occasionally exit the outer environs of the stations.  If Engineers leave one of the stations, they usually take a train to the yards without leaving the station or they go to the basement in South Station. *Ibid at 36 and 37*.

A railroad station is a place of public access designed for persons to meet one another.  Both North and South Stations have large waiting areas, lounge areas and

11

market areas with various shops and other commercial establishments and offices. North and South Stations are major hubs of Massachusetts and United States infrastructure in Boston. North and South Stations are owned and operated by or under the authority of the MBTA in contract with other entities in accordance with *M.G.L. c. 161A section 3*. The stations are designed to accommodate very large masses of people boarding and exiting trains and engaging in multiple and varied types of commercial and personal activities. Private entities who operate the facilities, shops and franchises at North and South stations do so under contract with the MBTA by ***public*** authority from the Commonwealth of Massachusetts to provide ***public*** services pursuant to *M.G.L. c. 161A*. Like a market square or public park, North and South Stations are places of public access.

*The United States Constitution, Amendment 14* reads as follows:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Likewise, *The United States Constitution, Preamble* states that the constitution is established to "insure domestic Tranquillity, . . . promote the general Welfare, and secure the Blessings of Liberty."

Defendant MBCR does not dispute that the Plaintiff was barred from all stations. The *Motion to Dismiss* does not indicate that Plaintiff was engaged in any dangerous or illegal activity. The Motion states that Plaintiff "Claimed he was going to be the engineer on a specific train" but they provide no material basis for the assertion. *Motion to Dismiss, II* third para. at page 3. The motion merely states that the Plaintiff went to North Station and had "written materials" addressed to the attention of "All Loyal Union Employees of Any Union!"; that "The written materials summarized the Plaintiff's

version of events regarding his termination from Amtrak and his failure to qualify for employment with MBCR" ; and that "the Plaintiff was subsequently escorted off the property, barred from the premises, and informed that if he tried to access the property again he would be arrested and charged with trespassing". *Ibid, pp. 3, 4*. There is no dispute that Plaintiff was at the station on July 1, 2003 nor that the Plaintiff was barred from MBTA stations. Although the *Motion to Dismiss* is unclear about the nature of Plaintiff's activities at North Station, the Defendant MBCR's primary purpose for stating that Plaintiff was at North Station on July 1, 2003 seems to be to state that they had a right to remove the Plaintiff from MBTA stations and that they had a right to prevent him from entering stations. *Motion to Dismiss, IV. A. 1. b.* at page 6.

In their Motion to Dismiss, MBCR claims that Plaintiff "claimed he was going to be the engineer on a specific train." *Ibid.* supra, page 3. This statement contains a subtle mischaracterization of the facts. This mischaracterization of the facts is apparently designed to imply that the Plaintiff had intentions of disrupting the MBTA transportation services. Plaintiff stated that the MBCR "failed to award position" to him and he needed to go to the station to turn in a "displacement notice". He also needed to seek assistance from fellow members to submit the notice. *SDMF* at *35 through 58. Exhibit E, Page 2* at *11. Exhibit G* at *20 to 22 and Exhibit P* at ___. Per letter from a former supervisor at Amtrak who, on July 1, 2003, was an MBCR superior, Plaintiff had been banned from "employee areas". *Exhibit A*. Plaintiff was not intending on disrupting service. Plaintiff was "seeking assistance". *SDMF* and *Exhibits* supra.

MBCR understood this distinction. The supervisory personnel were former Amtrak supervisory personnel. They were accustomed to the Plaintiff submitting claims. Officer Pavia asked Plaintiff about the letter and "leaflet" and Officer Pavia specifically discussed the meaning of statements involving union issues. Plaintiff explained the distinctions between "displacement" as a "claim" or grievance as opposed to any intention

13

to disrupt service that Officer Pavia may have perceived to be expressed in the "open letter" and "leaflet". *SDMF at 35 and 38.*

The Plaintiff has stated a reasonable claim that Defendants actions subjected the Plaintiff "to the deprivation of . . . rights privileges, or immunities secured by the Constitution and laws" of the United States. *42 U.S.C. s. 1983.* The Defendant has asserted that "MBCR Has A Right Under Massachusetts Law to Bar The Plaintiff From MBCR Property" and that MBCR asserted those rights under *M.G.L. c. 266 s.. 120. Motion to Dismiss IV. A.1.b.* at *Page 6.* Alternatively, Plaintiff hereby states that the Defendants' application of this law violates Plaintiff's Civil Right to "liberty [and] property, without due process of law" and "Abridges the privileges or immunities" of the Plaintiff. MBCR has equated the possession of "written materials" at North Station with an attempt to "disrupt service" and barred the Plaintiff from all MBTA stations in order to protect the public from Plaintiff's opinions (*Ibid., page 3* and *Exhibit F*).

Even if the Defendant can claim ownership rights, being that the stations are designed for public access, Defendant's control over them is limited. The position of the Defendants is closely situated to a similar case, *Marsh v. State of Alabama., 326 U.S. 501 (1946).* Like the area of the town in that case North and South Stations are claimed as property by the Defendant's. As with the town in *Marsh*, North and South stations, with their access to transportation, shops and restaurants, "are accessible to and freely used by the public in general and there is nothing to distiguish them from any other town and shopping center except the fact that the title to the property belongs to a private corporation. *Ibid at 503.* This Honorable Court must "balance the Constitutional rights of owners of property against those of the people to enjoy freedom of press and religion" and be "mindful of the fact that the latter ocupy a preferred position". *Id. at 509.* The property rights in this case are not sufficient to justify the State's permitting a corporation to govern a community of citiens so as to restrict their fundamental liberties and the enforcement of such restraint by th application of a State statute. *Id.*

14

Plaintiff's *Original Complaint* and the evidence presented here, adequately demonstrate that "there is a genuine issue of Material Fact" regarding Plaintiff's loss of privileges of public access, social interaction, communication and commerce as enjoyed by other U.S. citizens at MBTA stations pursuant to *U.S. Constitution Preamble and Amendments 1, 4 and 14*. The prepodernace of evidence presented here, supports a ruling in favor of the Plaintiff.

On July 1, 2003 Plaintiff was at North Station. Plaintiff was in a place of public access, talking to people whom he knew. Plaintiff was seeking assistance from the people he was talking to and communicating with some of them through written materials on his person. For doing so, Officer Pavia, coerced Plaintiff with a threat to search Plaintiff so that the Plaintiff would hand over Plaintiff's "employee pass" to Officer Pavia. Officer Pavia seized Plaintiff's "employee pass" and evicted Plaintiff from the station. *SDMF at 27 and 28*. MBCR claims they had a right to subject Plaintiff to Officer Pavia's treatment. MBCR claims that M.G.L. c. 266 s. 120 gives them the right to do so. MBCR claims State Law privilege to "deprive [Plaintiff] of liberty [and] property, without due process". Under color of state law, MBCR has further denied Plaintiff the privilege of equal access to MBTA stations that is enjoyed by other U.S. citizens.

    b. <u>MBCR has acted to Bar Plaintiff's Speech</u>

MBCR's *Motion to Dismiss* does not state that Plaintiff was in North Station on July 1, 2003 attempting to disrupt service. As stated above, Plaintiff was at North Station talking to people whom he knew; Plaintiff was seeking assistance from the people he was talking to and communicating with some of them through written materials on his person.

Officer Pavia's Police Report that Officer Pavia responded to a "report of a disorderly male". Officer Pavia reports that upon Officer Pavia's arrival at North Station the Plaintiff "was attempting to disrupt service and passing out literature on Platform #3". *Exhibit F*. No explanation is given by Officer Pavia or the *Motion to Dismiss* which

15

would indicate how Plaintiff was disrupting service. Nor was Plaintiff randomly "passing out literature". Plaintiff states that he only spoke to people who made contact with him and he only handed his "open letter" to some of the people he talked to. *SDMF* at *38*, *Exhibit G* at ___, *Exhibit P* at ___, There is no indication that Plaintiff was disrupting service. Plaintiff was seeking assistance from other union members regarding a union matter. *Id.*

Officer Pavia's Police Report mentions Platform #3. Platform #3 is the Platform nearest to the "Operations" office that employees report to. Employees on and off duty tend to socialize around a garbage cans near Platforms #3 and #5. The garbage cans are inside the station and they are not on the Platform. Plaintiff states that for he was in the station about 30 minutes before Officer Pavia made contact with him. Plaintiff states he avoided the gate near Platform #3 unless he was talking to someone there, but that he was likely to accompany other employees walking over there when he was talking to them. Plaintiff states that he was just as likely to be in the lounge and eating area by the Burger King and telephones or by the garbage can adjacent to Platform #5 between Burger King and Dunkin Donuts. At one time, Plaintiff says he did enter Platform #3 for a few minutes for a distance of about 6 feet while accompanying a carman to stand next to the office wall on Platform #3 so they could talk there when the carman motioned to him to accompany him there. *Exhibit G* at ___, and *Exhibit P* at ___.

Plaintiff's activities can hardly be described as "disrupt[ing] service". Neither Officer Pavia nor MBCR *Motion to Dismiss* offer supporting evidence for this. The only explanation seems to be that MBCR considers the "written materials" were disruptive or that "passing out literature" is disruptive. The Plaintiff had "written materials" that "claimed he was going to be the engineer on a specific train". The "open letter" merely states that he "own[s] a job" and that he must "displace" it to retain his seniority rights. *SDMF* at *26 through 35*, *Exhibit E*. The "leaflet" and the Plaintiff's statement say that Plaintiff is "seeking assistance". There was an attempt to communicate; there was no

16

attempt to disrupt service. On July 1, 2003, MBCR and MBTA seized Plaintiff's Amtrak employee rail pass, evicted Plaintiff from North Station and barred Plaintiff from entering any MBTA station. The only basis that MBCR offers for its actions is that the Plaintiff "had written materials" and that Plaintiff was "passing out literature".

The *1st Amendment to the Constitution of the United States of America* states in pertinent part that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . ." . Plaintiff's *Original Complaint* states a reasonable claim that MBCR acted under color of Massachusetts Law to abridge Plaintiff's right to freedoms of speech, press and assembly: "In answer to Boumel's call, an MBTA police officer approached the plaintiff . . . and confiscated some of the plaintiff's informational materials. . . . After clarifying that plaintiff's written material dealt with union issues and union agreement matters, the MBTA police officer evicted the plaintiff from the public access areas at North Station". *Original Complaint at 23 and 24*. The evidence substantiates the *Original Complaint* and demonstrates that MBCR and MBTA acted under color of *M.G.L. c. 266 s. 120* to: (1) prevent Plaintiff from talking to people whom he knew and (2) prevent Plaintiff from "passing out literature" to people whom he knew. MBCR and MBTA acted "under color of state law" to deprive Plaintiff of Plaintiff's right to "freedom of speech", Plaintiff's right to "freedom of the press", Plaintiff's right to associate and "peaceably assemble" with other members of his union, and other of Plaintiff's "rights and privileges . . . secured by the Constitution and laws". *42 U.S.C. s. 1983*.

    c. <u>MBCR acted to violate Plaintiff's right to be secure in his person, papers and effects, against unreasonable searches and seizures.</u>

While Officer Pavia was questioning Plaintiff on July 1, 2003, Officer Pavia demanded that Plaintiff hand Officer Pavia Plaintiff's Amtrak employee pass. Plaintiff told the officer that Plaintiff wasn't sure the pass was on Plaintiff's person. Officer Pavia asked Plaintiff if Officer Pavia was going to find Plaintiff's Amtrak Employee pass if

17

Officer Pavia searched Plaintiff's pockets. Plaintiff searched his pockets and removed a wallet. Plaintiff told Officer Pavia that Plaintiff had thought Plaintiff had a different wallet. Plaintiff found an Amtrak employee rail pass in the wallet. Officer Pavia demanded the pass from the Plaintiff and the Plaintiff handed the officer Plaintiff's pass. The officer never returned the employee rail pass to the Plaintiff. *DSMF at 27 and 28 and Exhibit P.* Plaintiff acknowledges that he has neither raised the cause for action based on *U. S. Constitution Amendment 4* protections nor presented evidence of such a claim prior to submission of this opposition to motion to dismiss. However, Plaintiff presents evidence warranting remedy for violation of other constitutional rights as well as this one. Plaintiff hereby requests leave of this Honorable Court to submit a motion to amend the complaint to conform to facts in evidence providing cause for action based on *U. S. Constitution Amendment 4.*

### 3. MBCR has acted to interfere with Plaintiff's Union Rights

In their motion to dismiss, Defendant MBCR denies that Plaintiff was an 'employee' as defined by the *Railway Labor Act, 45 U.S.C. s. 151a* or an 'eligible employee' as defined by the *CBA*, Defendant MBCR's *Motion to Dismiss P. 5* omits any reference to time claims. By contrast, Plaintiff, submits that he was on union business as an 'eligible employee' as defined by the *CBA*, and an 'employee' as defined by the *Act*. Defendant MBCR omits reference to any reason for evicting Plaintiff from the station. However, MBCR admits to denying Plaintiff access to the station.

In their motion to Dismiss, MBCR relies to *Imondi v. Bar Harbor Airways* to justify their restraint on the non-employee union member. Although Plaintiff as an "eligible employee" covered by the *CBA* is better situated than the Plaintiff in *Imondi*, Imondi would nonetheless protect the Plaintiff over the Defendant. *1983 U.S. Dist. Lexis 16551; 98 Lab. Cas. (CCH) p10, 395; 18 Av. Cas. (CCH)P17, 186.* Unlike *Imondi*, however, as demonstrated above, the Plaintiff does not have the same access to union members. The court in *Imondi* relied on *NLRB v. Babcock & Wilcox Co., 351 U.S. 105*

18

*(1956).* "the right of access for the non-enployee organizer existed 'if the location of a plant and the living quarters of the employees place the employees beyond the reach of reasonable union efforts to communicate with them. . . *Id., at 113.*

### 4. Count II, et seq. Portability of Civil Action No. 0312488

The Defendantshave moved for motion to dismiss the entire case based on prior pending action. Plaintiff states that prior pending action does not apply because ultimate resolution of the issues involved in 03-12488 ("Related Case") like in the hands of the Defendants in the instatnt case. As has been stated to this Court in the motion to add Defendants in the Related Case, "the considerations set forth by the Supreme Court. . . justifying a successordoctrine to remedy unfair labor practices are applicable equally to remedy unfair empoyment practices in violation of Title VII, E.E.O.C. v. MacMillan Boedel Containers, Inc., et al 503 F. Sd 1086 (1974 at 1090, and the Plaintiff sumits the same standard is applicable in Americans with Disabilities Act cases. Among the criteria, is the Ability of the prdecessor to provide relief. Prior notice and ability to provide relief are substantial as presented here. *Wheeler v. Snyder Buick, Inc. 794 F.2d 1228, 1236 (7th Cir. 186.*

As referenced by the Defendant's in MBTA's motion to dismiss, "The Court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Grynberg v. Koch Gateway Pipeline Company, 390 F.3d 1276, 1279, n. 1 (10th Cir. 2004),* qoting *Van Woudenberg v. Gibson, 211 f.3d 560, 568 (10th Cir.2000).* Wherefore Plaintiff refers the Honorable Court to arguments for motion for Counter Motion for Summary Judgment in Civil Action 03-12488 *Carmack v. the National Railroad Passenger Corporation* for consideration of arguments pertinent to all remaining counts in the instant case. Arguments are served on the Defendants.

Wherefore Plaintiff prays that this Honorable Court deny Defendant MBCR's motion to dismiss and allow Plaintiff's Original Complaint to stand with amendments for due process and grant summary judgment to the Plaintiff.

**Respectfully submitted,**

Date: January 17, 2006

*[signature]*
Joseph T. Carmack, Plaintiff, Pro Se.
398 Columbus Ave, PMB 130
Boston, MA  02116-6008
Work: 617/727-2310 ext. 7045 Home: 617/536-0772 Pager w/voice mail:  617/798-6466

### Certificate of Service

I, Joseph T. Carmack, hereby certify that I have on January 17, 2006 served a true copy of the foregoing document by First Class U.S. Mail to Robert K. Blaisdell, Attorney for the Massachusetts Bay Commuter Railroad Co. at One Beacon Street, Suite 1320 Boston, Massachusetts 02108-3113

I, Joseph T. Carmack, hereby certify that I have on January 17, 2006 served a true copy of the foregoing document by First Class U.S. Mail to Todd Valicenti, Attorney for Massachusetts Bay Transportation Authority at 10 Park Plaza Room 3910, Boston, MA 02116.

DATED:  January 17, 2006   *[signature]*
Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave, PMB 130
Boston, MA  02116-6008

Work: 617/727-2310 ext. 7045 Home: 617/536-0772 Pager w/voice mail: 617/798-6466

I, Joseph T. Carmack, hereby certify that I have on January 17, 2006 served a true copy of the foregoing document by First Class U.S. Mail to Stephen A Hughes, Attorney for the Defendant, National Railroad Passenger Corporations at One Liberty Square - 6th Floor, Boston, MA  02109.

DATED:  January 17, 2006   *[signature]*
Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave, PMB 130
Boston, MA  02116-6008

20