UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH T. CARMACK,<br>    Plaintiff<br><br>v.<br><br>MASSACHUSETTS BAY<br>TRANSPORTATION AUTHORITY<br>and MASSACHUSETTS BAY<br>COMMUTER RAILROAD COMPANY,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)   C.A. No. 05-11430-PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY OF DEFENDANT MBTA
TO PLAINTIFF'S OPPOSITION AND "COUNTER MOTION"
TO THE MOTION OF DEFENDANT MBTA TO DISMISS
COUNTS II THROUGH XV OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

     The Plaintiff, in his Opposition and "Counter Motion" to the Defendants' respective Motions to Dismiss, states, in Section II, Paragraph D, entitled "Prior Pending Action" that, "Defendants are mutually bound to causes for action with Defendant National Railroad Passenger Corporation in case filed in this Honorable Court as 03-12488-PBS.  Therefore justice requires Defendants to answer to relative charges in this complaint in order that Plaintiff may seek full remedy to the same occurrences and omissions."

     To the contrary, justice requires that Counts II through XV of the instant Complaint, which are virtually identical to the allegations that the Plaintiff set forth against the National Railroad Passenger Corporation ("Amtrak") in the matter of <u>Carmack v. The National Railroad Passenger Corporation</u>, Civil Action No. 03-12488-PBS, which is currently pending in this Court, be dismissed as against Defendant Massachusetts Bay Transportation Authority ("MBTA").

     The MBTA contracted with Amtrak for the latter to provide commuter rail services for the former.  The contract, entitled "Operating Agreement Between Massachusetts Bay Transportation Authority And National Railroad Passenger Corporation" ("the contract") became effective September 1, 1995 and was extended through June 30, 2003.

     The contract explicitly provided that Amtrak was an independent contractor for the MBTA and not its agent.  Section 5(a) of the contract, a copy of which is attached hereto as <u>Exhibit A</u>, states that, "[i]n the performance of its obligations under this

Agreement, **Amtrak is an independent contractor for, and not an agent of, the MBTA**." (Emphasis added).  Section 5(a) of the contract also states that, "Amtrak shall be responsible for the management and operation of the Agreement Services…" which term is defined in section 1(2) as "the operation of commuter rail services by Amtrak…" Section 3(f) of the contract states that, "Amtrak shall provide all personnel necessary to operate and manage the Agreement Services…"  Section 5(e)(1) of the contract states that, "Amtrak shall…furnish all…personnel necessary for the performance of this Agreement, none of whom shall be employees of the MBTA.  All operating and other personnel of Amtrak and of Amtrak's subcontractors involved in any aspect of providing the Agreement Services or performing Amtrak's other obligations under this Agreement shall be subject to the direction, supervision, and control of Amtrak, and not the MBTA." Lastly, section 5(e)(2) states that, "[a]ll such personnel will be employees of Amtrak…"

The fact that Amtrak was under contract with the MBTA to provide commuter rail services is of no consequence in this matter.  Amtrak was an independent contractor for the MBTA, not its employee or agent.  The MBTA is, therefore, not responsible for Amtrak's actions with regard to the Plaintiff's employment.  The Plaintiff is not, and never was, an employee of the MBTA; he was an employee of Amtrak.  The allegations set forth in Counts II through XV pertain to events that occurred on or before May 13, 2002 while the Plaintiff was employed by Amtrak.  Said Counts focus solely on the actions of Amtrak and its employees.  Neither the MBTA, nor any of its employees or agents is specifically identified in Counts II through XV.  The actors specifically identified in said Counts are, or were, employees of Amtrak; they are not, and were not, either employees or agents of the MBTA.  No MBTA employee or agent was involved in any of the events referred to in Counts II through XV.

For the reasons set forth above, the MBTA respectfully requests that this Honorable Court dismiss Counts II through XV of the Plaintiff's First Amended Complaint as against the MBTA pursuant to Fed.R.Civ.P. 12(b)(6), as said Counts fail to state claims against the MBTA upon which relief can be granted or, in the alternative, pursuant to the prior pending action doctrine.  In further support of this Reply, the MBTA refers to its Memorandum of Law In Support of its Motion to Dismiss Counts II through XV of the Plaintiff's First Amended Complaint.

|  |  |
|---|---|
| **CERTIFICATE OF SERVICE**<br>I, Todd M. Valicenti, hereby certify that I have caused a copy of the foregoing document to be served by first class mail, postage prepaid, upon *pro se* Plaintiff, Joseph T. Carmack, 398 Columbus Avenue, PMB 130, Boston, MA 02116, on this 27th day of January 2006.<br><br>/s/Todd M. Valicenti<br>Todd M. Valicenti | Respectfully submitted<br>For the MBTA<br>By its attorney,<br><br>/s/Todd M. Valicenti<br>Todd M. Valicenti<br>BBO# 632800<br>Assistant General Counsel<br>MBTA Legal Dept.<br>Ten Park Plaza, Suite 7760<br>Boston, MA 02116<br>Tel: (617) 222-4579<br>E-mail: tvalicenti@mbta.com |

Dated:  January 27, 2006

OPERATING AGREEMENT BETWEEN

MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

AND NATIONAL RAILROAD PASSENGER CORPORATION

SEPTEMBER 1, 1995

revenue vehicles arising out of the operation of such vehicles.

(C) The MBTA-owned non-revenue vehicles shall be replaced on an as-needed basis over the term of this Agreement, pursuant to a schedule to be agreed upon by the parties, by vehicles to be leased or otherwise acquired by Amtrak. The lease or other cost of such replacement vehicles is not included in the Annual Fixed Price set forth in Section 7(a), and shall be separately reimbursed pursuant to Section 7(d) of this Agreement.

(2)(A) Amtrak shall lease or otherwise acquire, on or before the Commencement Date, all other non-revenue vehicles required to carry out the Agreement Services.

(B) Except with respect to Excluded Conduct of the MBTA (as described in Section 15(d)), Amtrak shall be responsible for all physical damage to non-revenue vehicles acquired under this paragraph (2) or to the replacement vehicles described in paragraph (1)(C).

(C) The cost of the lease or acquisition of the non-revenue vehicles described in subparagraph (A) of this paragraph shall be included in the Annual Fixed Price set forth in Section 7(a) of this Agreement.

(D) If any non-revenue vehicle leased or otherwise acquired by Amtrak is damaged, destroyed, or otherwise becomes unavailable for use during the term of this Agreement, Amtrak may replace such vehicle at its sole cost.

(3) Upon termination of this Agreement, the MBTA shall assume the lease or otherwise acquire at fair market value any non-revenue vehicle leased or acquired by Amtrak pursuant to this subsection.

SEC. 5. PROJECT MANAGEMENT.

(a) <u>In General.</u> -- Amtrak shall be responsible for the management and operation of

18

the Agreement Services and for performing its other obligations under this Agreement, subject to the supervision and oversight of the MBTA as provided in this Agreement. In the performance of its obligations under this Agreement, Amtrak is an independent contractor for, and not an agent of, the MBTA.

(b) **Local Management.** -- (1) Amtrak shall, subject to the approval of the MBTA, designate a General Manager, who shall be resident in the Boston metropolitan area. Amtrak agrees that the General Manager will be delegated sufficient authority from Amtrak so as to be able to exercise day-to-day decisionmaking on all operational and business matters relating to the performance of this Agreement. Amtrak further agrees that the General Manager shall be assigned exclusively to the MBTA commuter rail operations and shall not perform functions in connection with any other Amtrak service.

(2) The General Manager shall (A) have the principal responsibility for directing and coordinating Amtrak's performance of its obligations under this Agreement; (B) serve as Amtrak's liaison with the MBTA; (C) attend assessment meetings with the MBTA's Deputy Chief for Railroad Operations or other senior staff, as requested; and (D) be available at such other times as the MBTA may direct to consult with representatives of the MBTA.

(3) Amtrak agrees that it will designate and give notice to the MBTA of an Acting General Manager who shall have full authority to discharge the responsibilities of the General Manager under this Agreement in his or her absence.

(c) **Management Personnel.** -- In order to perform the services required by this Agreement, Amtrak will provide, at a minimum, personnel performing the following functions: (1) general management, (2) management of operations; (3) equipment