UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH T. CARMACK, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | )       CIVIL ACTION |
| MASSACHUSETTS BAY ) NO. 05-11430-PBS |
| TRANSPORTATION AUTHORITY | ) |
| and MASSACHUSETTS BAY | ) |
| COMMUTER RAILROAD COMPANY, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION ON
DEFENDANT MBTA'S MOTION TO DISMISS**

September 1, 2006

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff Joseph T. Carmack ("Mr. Carmack") has brought two actions, pro se, challenging his termination as a locomotive engineer for the National Railroad Passenger Corporation ("Amtrak") and his subsequent treatment during his efforts to be reinstated. The first action, Civil Action No. 03-12488-PBS, was brought against Amtrak only. Discovery has been ongoing in that matter (the "Amtrak case") and Amtrak has filed a motion for summary judgment which is presently pending before the court.

In the instant case, filed in 1995, Mr. Carmack has sued the Massachusetts Bay Transportation Authority ("MBTA") and Massachusetts Bay Commuter Railroad Company ("MBCR"). These defendants have each filed a motion to dismiss the

complaint against them for various reasons.  The instant Report and Recommendation ("R&R") relates to the MBTA's motion.  Therein, the MBTA has moved to dismiss Counts II-XV of the First Amended Complaint ("Compl.") for failure to state a claim.  The MBTA contends that the complaint does not assert any wrongdoing on its part, and that, alternatively, the instant suit should be dismissed in light of the prior pending action against Amtrak.  Since this court finds that the allegations of wrongdoing alleged in Counts II-XV do not relate to the MBTA, this court recommends to the District Judge to whom this case is assigned that the MBTA's motion to dismiss (Docket No. 18) be allowed.  This would leave only Count I of the First Amended Complaint as being propounded to the MBTA.

## II.  STATEMENT OF FACTS

When ruling on a motion to dismiss, the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  Moreover, the record on a motion to dismiss is, as a general statement, limited to the complaint, and documents attached thereto or incorporated therein.[1]  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly

---

[1] Since this motion to dismiss has not been converted to a motion for summary judgment, this court will not consider the voluminous factual record submitted by the plaintiff.

converted into one for summary judgment under Rule 56."). Applying this standard to the instant case, the relevant facts are as follows.

### **Plaintiff's Employment History - An Overview**

Mr. Carmack was employed by Amtrak as a Locomotive Engineer on Massachusetts commuter rail trains. (Compl. ¶¶ 12-13). Such commuter rail trains run from North Station and South Station in Boston to outlying points . (Compl. ¶ 11). Prior to July 1, 2003, the MBTA had contracted with Amtrak for Amtrak to provide the commuter rail services, which it did until July 1, 2003. (Compl. ¶ 10; MBTA's Ans. ¶ 10). As of July 1, 2003, MBCR replaced Amtrak and began providing the commuter rail services under a contract with the MBTA. (Compl. ¶ 9; MBTA Ans. ¶ 9).[2]

Mr. Carmack was hired by Amtrak in 1996. (Compl. ¶ 13). Amtrak terminated his employment on May 13, 2002. (Compl. ¶ 121). Mr. Carmack has challenged this termination in both this litigation and the Amtrak litigation.

According to the Complaint, after he had been terminated by Amtrak, in or about May, 2003, MBCR offered Mr. Carmack a position as a locomotive engineer in accordance with his seniority and the agreement between the union and MBCR. (Compl.

---

[2] The fact that Amtrak, and later MBCR, provided commuter rail services to the MBTA under contract is not in dispute. The MBTA has provided a portion of the contract in connection with its Reply Brief in support of its motion to dismiss. (Docket No. 33). While not necessary to a ruling on the motion to dismiss, this court concludes that the contract could be considered in connection with the motion since courts have made narrow exceptions to the requirement that the record be limited to the complaint "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3.

¶ 15). MBCR, however, wrongfully refused to honor Mr. Carmack's acceptance of such a position. (Compl. ¶¶ 16-18). It is clear from the complaint, and not otherwise disputed, that Mr. Carmack was never employed by the MBTA.

### **Events Leading to Plaintiff's Termination of Employment**

As noted above, Mr. Carmack was hired by Amtrak as a Locomotive Engineer in 1996. On or about May 13, 2002, Amtrak dismissed the plaintiff from his employment. (Compl. ¶ 121). According to Mr. Carmack, his problems began in April, 2001 when Gerrard L. DeModena began an oral and written "campaign portraying Plaintiff as a violent, dangerous and mentally unstable person who has threatened Mr. DeModena." (Compl. ¶ 29). Mr. DeModena is described as the plaintiff's supervisor, and an "employee for Amtrak who became subsumed into the operations of MBCR on or about July 1, 2003." (Compl. ¶ 28). Mr. DeModena allegedly conspired with other named Amtrak employees to falsely and maliciously portray the plaintiff. (Compl. ¶ 32). In addition, other specifically named Amtrak employees allegedly wrongfully disseminated information about the plaintiff's mental condition. (Compl. ¶¶ 33-41). Such conduct allegedly resulted in Mr. Carmack's termination of employment, and otherwise caused Mr. Carmack harm. (Compl. ¶ 41).

In Count II of his Complaint, Mr. Carmack is seeking damages for "slander, libel and defamation" as a result of this conduct. In Count III, Mr. Carmack contends that such conduct constitutes an invasion of privacy. While there are generic references to "Defendants" in the complaint, all of the numerous individuals identified in the complaint

were employed by Amtrak and/or later by MBCR. There is no evidence or any indication that any personnel from the MBTA were involved in any of the challenged events.

The plaintiff is seeking additional damages arising out of these core events. Thus, according to Mr. Carmack, as a result of Mr. DeModena's allegations, members of the Amtrak Threat Assessment Response Team ("TART") got involved, and eventually decided that he should be psychologically examined and tested for mental illness and mental instability. (Compl. ¶¶ 51-59). Such conduct, according to the plaintiff, constituted wrongful discrimination. (Counts IV and V). Again, while there are some references to "Defendants," the challenged conduct was undertaken solely by "Amtrak's TART team." (See, e.g., Compl. ¶ 56).

Thereafter, the plaintiff contends that Amtrak's Medical Director, Dr. Tim Pinsky, wrongfully medically disqualified him due to an alleged mental impairment. (Compl. ¶ 61). Dr. Pinsky allegedly wrongfully disseminated this information to other named employees of Amtrak, and this eventually led to Mr. Carmack's termination from employment and other harm. (Compl. ¶¶ 62-74). In Count VI, the plaintiff challenges this conduct as being discriminatory. Again, while reference is made to the wrongful conduct of Amtrak and other "Defendants," there is no indication whatsoever that any MBTA personnel were engaged in any of the challenged conduct.

According to the complaint, after Dr. Pinsky's evaluation, Mr. Carmack was ordered by his Amtrak superiors to undergo psychiatric evaluations and extensive psychological testing by Dr. Russell Vasile, a psychiatrist. (Compl. ¶¶ 75-77). The

plaintiff, based on his own doctor's evaluation, believed that such testing would be harmful to his emotional well being, and communicated his concerns to Amtrak employees, including Dr. Pinsky.  (Compl. ¶¶ 78-84).  Thereafter, Mr. Carmack was investigated by hearing officers "acting as agents of Amtrak."  (E.g., Compl. ¶¶ 84-85). While the plaintiff made various requests for accommodation in connection with such testing, the requests were rejected.  (See Compl. ¶¶ 96- 116).  Instead, according to Mr. Carmack, Amtrak wrongfully charged Mr. Carmack with insubordination for failing to appear for such testing, and then fired him for insubordination.  (See Compl. ¶¶ 116-122).  Such conduct constituted discrimination (Counts VII), harassment (Count VIII), and retaliation (Count IX).  Again, while Mr. Carmack has referred to unspecified "Defendants," all of the individuals Mr. Carmack has identified as being involved in the relevant events are Amtrak employees — none of them are employed by the MBTA in any way.

      The remaining counts of the complaint also relate to conduct of Amtrak employees.  Thus, in Count X of the complaint, Mr. Carmack contends that the conduct of Amtrak employees in generating reports "which distorted, stigmatized and characterized Plaintiff's ideas, religious beliefs and writings as the ideas, religious beliefs and writings of a mentally ill person," and otherwise wrongfully contending that the plaintiff was dangerous, constituted "discrimination generally."  (Compl. ¶¶ 126-129).  In Count XI, the plaintiff alleges that the same complained of conduct of the specific employees of Amtrak wrongfully interfered with his union activities and safety campaigns.  (Compl.

-6-

¶¶ 131-132). In Count XII, Mr. Carmack challenges the same conduct as constituting unfair labor practices. (Compl. ¶¶ 148-158). In Count XIII, the plaintiff claims that the Amtrak employees discriminated against him on the basis of religion by, among other things, misinterpreting and ridiculing his writings, which were wrongfully labeled as being threatening. (Compl. ¶¶ 160-182). In Count XIV, the plaintiff challenges the same conduct as constituting intentional infliction of emotional distress (Compl. ¶¶ 184-199), while in Count XV, he contends that his discharge was in violation of public policy. (Compl. ¶¶ 201-205). Throughout these counts, Mr. Carmack has identified the specific Amtrak employees and agents who he contends engaged in the wrongful conduct. While there are general references to "Defendants," there is no indication that MBTA personnel were in any way involved in the challenged conduct.

### Events Following Plaintiff's Discharge by Amtrak

Following his termination from employment, on July 1, 2003 Mr. Carmack contends that he "went to public access areas of North Station in Boston, Massachusetts to contact other union members to solicit assistance and support to enforce plaintiff's seniority rights in accordance with MBCR/BLE agreement, the Railway Labor Act and the Constitution of Brotherhood of Locomotive Engineers," the union representing such engineers. (Compl. ¶ 19). Once there, MBCR Transportation Manager, Jacqueline Boumel, called MBTA police to have him removed from the area. (Compl. ¶ 22). The MBTA police confiscated the plaintiff's materials and evicted him from the premises. (Compl. ¶¶ 23-26). In Count I of his complaint, Mr. Carmack contends that this conduct

violated his constitutional rights, among other things. The MBTA has not moved to dismiss this Count of the complaint.

### III.  DISCUSSION

#### A.  Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. Cooperman, 171 F.3d at 46. "Dismissal under Fed. R. Civ. P. 12(b)(6) is only appropriate if the complaint, so viewed, presents no set of facts justifying recovery." Id.; Conley v. Gibson, 355 U.S. 41, 45-48, 78 S. Ct. 99, 101-103, 2 L. Ed. 2d 80 (1957).

Under the liberal notice pleading requirement of Fed. R. Civ. P. 8(a), a plaintiff is required to submit "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Thus, "[p]laintiffs only are obligated to set forth in their complaint factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 26-27 (D. Mass. 2000) (quoting Gooley v. Mobil Oil Corp., 851 F. 2d 513, 515 (1st Cir. 1988)). "The Rules 'do not require a claimant to set out in detail the facts upon which he bases his claims.'" Id. (quoting Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993)). Nevertheless, "[t]he pleading requirements, though 'minimal' are not 'non-existent.' Modern notions of 'notice pleading' notwithstanding, a

plaintiff is nonetheless required to set forth factual allegations, either direct or inferential, *respecting each material element necessary to sustain recovery under some actionable legal theory*." Rumford Pharmacy, Inc. v. City of E. Providence, 970 F.2d 996, 998 (1st Cir. 1992) (internal citations omitted; emphasis in original).  Applying these principles to the instant case requires that the MBTA's motion to dismiss Counts II-XV of the First Amended Complaint should be allowed.

### B. The Complaint Fails to State a Claim Against the MBTA

Even the most liberal reading of the complaint compels the conclusion that no MBTA personnel were in any way involved in the conduct which forms the basis of Counts II-XV of the First Amended Complaint.  Therefore, this court recommends that the MBTA's motion be allowed.

In response to the motion to dismiss, Mr. Carmack argues only that:

> Defendants are mutually bound to causes for action with Defendant National Railroad Passenger Corporation in case filed in this Honorable Court as 03-12488-PBS.  Therefore, justice requires Defendants to answer to relative charges in this complaint in order that Plaintiff may seek full remedy to the same occurrences and omissions.

Pl.'s Opp. (Docket No. 29) at 4.  However, there are no allegations in the complaint which would support a conclusion of joint liability.  There are no allegations that even imply that the MBTA is liable for Amtrak's relationships with Amtrak's employees.[3]  Nor

---

[3] In fact, the portion of the MBTA/Amtrak contract submitted by Amtrak, the authenticity of which the plaintiff does not dispute, indicates that under the contract Amtrak is "an independent contractor for, and not an agent of, the MBTA."  See Agreement (Docket No. 33-2)

are there any contentions that would support a conclusion that the MBTA controlled or was in any way involved with any of the challenged conduct. In short, Counts II-XV fail to allege any claims against the MBTA.[4]

### IV. CONCLUSION

For the reasons detailed herein, this court finds that Counts II-XV of the First Amended Complaint fail to state a claim against the MBTA. Therefore, this court recommends to the District Judge to whom this case is assigned that the MBTA's motion to dismiss (Docket No. 18) be allowed.[5]

---

at § 5(a).

[4] The MBTA also claims that this action should be dismissed under the "prior action pending doctrine" which recognizes the court's inherent power to dismiss or stay an action in favor of prior litigation presenting the same claims and issues. See Continental Time Corp. v. Swiss Credit Bank, 543 F. Supp. 408, 410 (S.D.N.Y. 1982). However, the MBTA is not a party to the Amtrak litigation and is not seeking to be joined as a party to that action. In general, the prior pending action rule requires common parties and issues. See Conant v. Sherwin L. Kantrovitz, P.C., 29 Mass. App. Ct. 998, 563 N.E.2d 247, 249 (1990). If the instant complaint alleged wrongdoing on the part of the MBTA, the MBTA would not be able to avoid liability because it was not named in the earlier action.

[5] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

                            / s / Judith Gail Dein
                            Judith Gail Dein
                            United States Magistrate Judge