UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

JOSEPH T. CARMACK
    PLAINTIFF, PRO SE

    V.

MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY
   AND
MASSACHUSETTS BAY COMMUTER
RAILROAD COMPANY
      DEFENDANTS

CIVIL ACTION
NO. 05-11430-PBS

MEMORANDUM IN SUPPORT OF

PLAINTIFF JOSEPH T. CARMACK'S

OBJECTION TO REPORT AND

RECOMMENDATION ON DEFENDANT

MBCR'S MOTION TO DISMISS

PLAINTIFF, PRO SE, JOSEPH T.

CARMACK ("PLAINTIFF") HEREBY SUBMITS

PAGE 1

THIS MEMORANDUM IN SUPPORT OF

PLAINTIFF'S OBJECTION TO REPORT

AND RECOMMENDATION ON DEFENDANT

MBCR'S MOTION TO DISMISS (DOCKET 38

-1, "THE RECOMMENDATION"). PLAINTIFF

HEREBY RESPECTFULLY OBJECTS TO THE

RECOMMENDATION "THAT THE RAILWAY LABOR

ACT CLAIM ASSERTED AGAINST MBCR

IN COUNT I AND THE CLAIMS SET

FORTH AGAINST MBCR IN COUNTS

II - IX AND XI - XV BE DISMISSED"

(RECOMMENDATION, PART I). PLAINTIFF

RESPECTFULLY REQUESTS THAT THIS

HONORABLE COURT CONSIDER ADDITIONAL

PAGE 2

FACTS AND EVIDENCE IN ACCORDANCE
WITH RULE 72 OF THE FEDERAL
RULES OF CIVIL PROCEDURE ("F.R.C.P.")
PRIOR TO ADOPTING RECOMMENDATION
TO ALLOW ANY PART OF DEFENDANT
MBCR's MOTION TO DISMISS.
    PARTICULARLY, PLAINTIFF
REQUESTS THAT THIS HONORABLE
COURT CONSIDER EVIDENCE THAT
THE DEFENDANT HAS MADE
AGREEMENTS WITH THE NATIONAL
RAILROAD PASSENGER CORPORATION
("NRPC" OR "AMTRAK") AND THE
CO-DEFENDANT, THE MASSACHUSETTS

BAY TRANSPORTATION AUTHORITY
("MBTA") WHICH BIND THE
DEFENDANT AS CORPORATE
SUCCESSOR TO LIABILITIES TO
THE PLAINTIFF INCURRED FROM
AMTRAK AS AN EMPLOYER OF
THE PLAINTIFF AND ARTICULATED
BY THE PLAINTIFF IN CASE
03-12488-PBS (THE "AMTRAK CASE")
CURRENTLY PENDING IN THIS
HONORABLE COURT AND REITERATED
BY THE PLAINTIFF IN THE
FIRST AMENDED COMPLAINT
IN THE INSTANT CASE.

PAGE 4

IN VARIOUS BIDDING DOCUMENTS,
CONTRACTS AND AGREEMENTS,
DEFENDANT HAS AGREED TO
BE RESPONSIBLE FOR THE
"PRESERVATION OF RIGHTS, PRIVILEGES,
AND BENEFITS (INCLUDING CONTINUATION
OF PENSION RIGHTS AND BENEFITS)
UNDER EXISTIN. COLLECTIVE
BARGAINING AGREEMENTS OR
OTHERWISE." THE URBAN MASS
TRANSPORTATION ACT OF 1964 s 13(c),
49 U.S.C. s. 5333(b) (EMPHASIS
ADDED). DEFENDANT HAS
FURTHER CONTRACTED WITH AMTRAK

PAGE 5

TO PROVIDE FOR "ASSURANCES

OF PRIORITY OF REEMPLOYMENT

OF EMPLOYEES WHOSE IS ENDED

OR WHO ARE LAID OFF, AND ...

PAID TRAINING OR RETRAINING

PROGRAMS" IBID.

WHEREIN THIS HONORABLE

COURT HAS ALLOWED DEFENDANT'S

MOTION TO DISMISS IN PART BECAUSE

PLAINTIFF "HAS NOT ALLEGED THAT

MBCR HAD ANY CONTRACTUAL

AGREEMENT WITH AMTRAK, AND

NOTHING IN THE FIRST AMENDED

COMPLAINT SUGGESTS THAT THERE

WAS A SALE OR OTHER
TRANSACTION THAT COULD GIVE
RISE TO A PREDECESSOR-
SUCCESSOR RELATIONSHIP BETWEEN
AMTRAK AND MBCR" (RECOMMEND-
ATION, PAGE 25); PLAINTIFF
REQUESTS LEAVE TO AMEND
THE COMPLAINT IN ACCORDANCE
WITH F.R.C.P. RULE 15 TO
ALLOW ALL COUNTS TO STAND.


I. HISTORY AND FACTS RELATING
TO OBJECTION.
   1. PLAINTIFF, AN EMPLOYEE WITH
                PAGE 7

AMTRAK SINCE 1979 WAS TERMIN-
ATED FROM EMPLOYMENT IN 2002,

2. ON OR ABOUT APRIL 2003
DEFENDANT CONTRACTED WITH
THE MBTA TO PROVIDE FOR
TRANSFER AND IMPLEMENTATION OF
OPERATIONS OF MASSACHUSETTS
COMMUTER RAIL SERVICES FROM
AMTRAK TO THE DEFENDANT.

3. IN MAY 2003, DEFENDANT
MADE A "CONDITIONAL OFFER
OF EMPLOYMENT TO THE PLAINTIFF
WHICH THE PLAINTIFF ACCEPTED
IN ACCORDANCE WITH THE

PAGE 8

TERMS OF THE OFFER.

4. DURING THE MONTH OF JUNE, AFTER PLAINTIFF BID ON POSITIONS OFFERED IN ACCORDANCE WITH REQUIREMENTS OF UNION AGREEMENT, THE DEFENDANT FAILED TO AWARD A POSITION TO THE PLAINTIFF.

5. DURING THE LAST WEEK OF JUNE, PLAINTIFF CONTACTED VARIOUS REPRESENTATIVES OF THE DEFENDANT TO DISCUSS PLAINTIFF'S RIGHTS AND PRIVILEGES AS A MASS TRANSPORTATION

PAGE 9

EMPLOYEE IN COMMUTER RAIL.
PLAINTIFF LEARNED FROM THE
DEFENDANT'S LABOR RELATIONS
OFFICER THAT AMTRAK WAS REQUIRED
TO RESOLVE DISCIPLINE ISSUES WITH
IN ACCORDANCE WITH AN "IMPLEMENTING
AGREEMENT."

6. PLAINTIFF FILED RELATED
CASE 03-12488-PBS IN DECEMBER
OF 2003,

7. THROUGHOUT THE COURSE
OF DISCOVERY IN THE RELATED
CASE, AMTRAK MADE CLAIMS
THAT IT COULD NOT BE
LIABLE FOR LOSSES APPLIED

PAGE 10

AFTER JULY 1, 2003 BECAUSE
THEY ARE NO LONGER RESPONSIBLE
FOR PLAINTIFFS FORMER POSITION.

8. IN JULY 2005 PLAINTIFF
MOVED THIS HONORABLE COURT
FOR AN ORDER TO COMPEL
DISCOVERY OF CONTRACTS AND
AGREEMENTS FROM AMTRAK,
DEFENDANT AND MBTA RELATIVE
TO TRANSFER OF COMMUTER RAIL
SERVICES FROM AMTRAK to
THE DEFENDANT (03-12488-PBS,
DOCKET 65). MOTION TO COMPEL
WAS DENIED IN SEPTEMBER (03-12488-PBS

PAGE 11

DOCKET 80).

9. IN ADDITION, IN JULY 2005, PLAINTIFF MOVED THIS HONORABLE COURT FOR A ORDER ADDING MBTA AND DEFENDANT AS DEFENDANTS TO THE RELATED CASE BASED ON A THEORY OF SUCCESSOR LIABILITY (03-12488-PBS DOCKET 64, DENIED 7/25/2005).

10. ON DECEMBER 9, 2005 DEFENDANT FILED MOTION TO DISMISS 1ST AMENDED COMPLAINT. (DOCKET 15).

11. ON SEPTEMBER 22, 2006,

ORDER WAS ENTERED RECOMMENDING

THAT DEFENDANTS MOTION TO DISMISS

BE ALLOWED IN PART AND

DENIED IN PART. (DOCKET 38).

II. ACCEPTABLE LEGAL STANDARD

IN ACCORDANCE WITH

F.R.C.P., RULE 72, " WITHIN 10

DAYS AFTER BEING SERVED WITH A

COPY OF THE RECOMMENDED DISPOSITION,

A PARTY MAY SERVE AND FILE SPECIFIC,

WRITTEN OBJECTIONS TO THE PROPOSED

FINDINGS AND RECOMMENDATIONS ...

THE DISTRICT JUDGE TO WHOM

THE CASE IS ASSIGNED SHALL MAKE

A DE NOVO DETERMINATION UPON THE RECORD, OR AFTER ADDITIONAL EVIDENCE, OF ANY PORTION OF THE MAGISTRATE JUDGE'S DISPOSITION TO WHICH SPECIFIC WRITTEN OBJECTION HAS BEEN MADE IN ACCORDANCE WITH THIS RULE." THE RECOMMENDATION IN THIS CASE CONSIDERS A MOTION TO DISMISS UNDER RULE 12(B)(6) WHICH "TESTS THE SUFFICIENCY OF THE PLEADINGS" RECOMMENDATION, PART II, 1ST PARAGRAPH.

PURSUANT TO RULE 12(B)(6), THE COURT EXAMINES THE PLEADINGS

PAGE 14

FOR "FAILURE TO STATE A CLAIM

UPON WHICH RELIEF CAN BE

GRANTED." THE COURT MUST DECIDE

WHETHER THE COMPLAINT CONTAINS

" A SHORT AND PLAIN STATEMENT

OF THE CLAIM SHOWING THAT THE

PLEADER IS ENTITLED TO RELIEF,"

F. R. P. C. RULE 8, IN ORDER TO

DEMONSTRATE THAT THE PLAINTIFF

IS ENTITLED TO RELIEF, THE

COMPLAINT MUST " SET FORTH.

FACTUAL ALLEGATIONS, EITHER DIRECT

OR INFERENTIAL, RESPECTING EACH

MATERIAL ELEMENT NECESSARY TO

PAGE 15

SUSTAIN RECOVERY UNDER SOME

ACTIONABLE THEORY." RUMFORD PHARMACY

INC, V. CITY OF PROVIDENCE. 970 F. 2d

996 - 998 (1ST CIR 1992) (INTERNAL

CITATIONS OMITTED) (EMPHASIS IN ORIGINAL).

SHOULD THE COMPLAINT REQUIRE

AMENDMENT TO SATISFY RULE, AFTER

THE COMPLAINT HAS ALREADY BEEN

AMENDED ONCE AS A MATTER OF

COURSE, "A PARTY MAY AMEND

THE PARTY'S PLEADING ONLY BY

LEAVE OF THE COURT OR BY

WRITTEN CONSENT OF THE ADVERSE

PARTY, AND LEAVE SHALL BE

PAGE 16

FREELY GIVEN WHEN JUSTICE

SO REQUIRES." F.R.C.P. 15,

III ARGUMENT.

A. MBTA AND MBCR A LIABLE
FOR PLAINTIFFS CLAIMS AGAINST
AMTRAK.

THE MBTA THE DEFENDANT

AND AMTRAK TO ESTABLISH AGREEMENTS

THAT INCLUDE PROTECTION OF

THE PLAINTIFFS INTERESTS AS

A FORMER EMPLOYEE OF AMTRAK

WHO IS AFFECTED BY A TRANSFER

OF THE OPERATIONS FROM ONE

ENTITY TO THE OTHER, AS A

CONDITION OF FINANCIAL ASSISTANCE

PURSUANT TO FEDERAL LAW AND
AGREEMENT WITH THE UNITED STATES
SECRETARY OF LABOR, THE MBTA
ARRANGES FOR PROTECTION OF
THE INTERESTS OF EMPLOYEES
AFFECTED THE ASSISTANCE. SUCH
ARRANGEMENTS ARE MADE IN
ACCORDANCE WITH REQUIREMENTS
OF THE URBAN MASS TRANSPORTATION
ACT OF 1964 s. 13(c), 49 U.S.C. 5333(b)
("13(c)"). ARRANGEMENTS UNDER
13(c) INCLUDE PROVISIONS THAT MAY
BE NECESSARY FOR:

            (A) THE PRESERVATION

OF RIGHTS, PRIVILEGES, AND BENEFITS (INCLUDING CONTINUATION OF PENSION RIGHTS AND BENEFITS) UNDER EXISTING COLLECTIVE BARGAINING AGREEMENTS OR OTHERWISE;

(B) THE CONTINUATION OF COLLECTIVE BARGAINING RIGHTS;

(C) THE PROTECTION OF INDIVIDUAL EMPLOYEES AGAINST A WORSENING OF THEIR POSITIONS RELATED TO EMPLOYMENT;

(D) ASSURANCES OF EMPLOYMENT TO EMPLOYEES OF ACQUIRED MASS TRANSPORTATION SYSTEMS;

(E) ASSURANCES OF PRIORITY OF REEMPLOYMENT OF EMPLOYEES WHOSE EMPLOYMENT IS ENDED OR WHO ARE LAID OFF; AND

PAGE 19

(F) PAD TRAINING
OR RETRAINING PROGRAMS.

TO DEMONSTRATE THE

OBLIGATIONS OF MBCR TO THE

PLAINTIFF UNDER 13(C), THE

PLAINTIFF HEREBY REFERS THIS

HONORABLE COURT TO A CASE

INVOLVING THE MBTA AND ANOTHER

URBAN TRANSPORTATION CONTRACTOR.

THE CASE WAS HEARD IN MASSACHUSETTS

SUFFOLK COUNTY SUPERIOR COURT AS

CIVIL ACTION NO. 00-202 G, BAY

STATE SERVICES, L.L.C. V.

MASSACHUSETTS BAY TRANSPORTATION

AUTHORITY, ("THE BAY STATE CASE").
A COPY OF THE SUPERIOR COURT'S
" MEMORANDUM OF DECISION AND
ORDER ON PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION "
FROM THE BAY STATE CASE IS
INCLUDED AS EXHIBIT A. IN THE
BAY STATE CASE MEMORANDUM, THE
COURT REFERS TO A "TRANSITION
AGREEMENT, THE PURPOSE OF WHICH
WAS TO PROVIDE FOR A POSSIBILITY
OF TRANSITIONING AMTRAK WORKERS TO
BAY STATE". THE BAY STATE
CONTRACT TO OPERATE TRANSPORTATION

PAGE 21

MECHANICAL SERVICES WAS ULTIMATELY
TERMINATED FOR CONVENIENCE AS
AN INDIRECT RESULT OF BAY
STATE'S INABILITY TO MEET ITS
13 (c) OBLIGATIONS IN FACT, BAY
STATE WAS INFORMED THAT "THE
CONTRACT [WITH MBTA] WOULD HAVE
TO BE AMENDED TO PROVIDE THAT
BAY STATE WOULD BE DIRECTLY
RESPONSIBLE FOR ... 13(c) OBLIGATIONS".
EXHIBIT A, PAGE 4.

ON INFORMATION AND
BELIEF, THE DEFENDANT SIGNED
ITS OWN "TRANSITION AGREEMENT" OR

SIMILAR AGREEMENT. SUCH AN AGREEMENT MAY HAVE INCLUDED AMTRAK AS A SIGNATORY WHEREIN AMTRAK WAS REQUIRED TO RESOLVE OUTSTANDING CLAIMS WITH EMPLOYEES, MBCR'S LABOR RELATIONS OFFICER HAS REFERRED TO SUCH AN AGREEMENT, WHICH IS CALLED THE "IMPLEMENTING AGREEMENT". EXHIBIT B.

IN ANY CASE, IT IS REASONABLE TO ASSUME, BASED ON THE HISTORY OF MBTA TRANSPORTATION SERVICE CONTRACTS AND THE REQUIREMENTS

IMPOSED ON THEM BY 13(c), THAT
MBCR IS CONTRACTED WITH THE MBTA
(AND POSSIBLY AMTRAK) TO PROVIDE
THAT MBCR IS RESPONSIBLE FOR
13(c) OBLIGATIONS.

AS REGARDS THE PLAINTIFF,
MBCR's OBLIGATIONS WOULD REQUIRE
" THE PROTECTION OF [THE PLAINTIFF]
AGAINST A WORSENING OF [HIS] POSITION()
RELATED TO EMPLOYMENT" AND " THE
CONTINUATION OF RIGHTS, PRIVILEGES AND
BENEFITS (INCLUDING CONTINUATION OF PENSION
RIGHTS AND BENEFITS) UNDER EXISTING COLLECTIVE
BARGAINING AGREEMENTS OR OTHERWISE "

"THE CONTINUATION OF COLLECTIVE

BARGAINING RIGHTS." PLAINTIFF

SUBMITS THAT THESE REQUIREMENTS,

TOGETHER WITH AGREEMENTS AND

CONTRACTS THAT MBCR IS SIGNATORY

TO, EXPLICITLY PROVIDE THAT MBCR

WILL BE RESPONSIBLE FOR OUTSTANDING

LIABILITIES STEMMING FROM ALL

PLAINTIFF'S CLAIMS AGAINST

AMTRAK, INCLUDING RAILWAY LABOR

ACT CLAIMS IN COUNT I OF THE

FIRST AMENDED COMPLAINT AND

COUNTS II THROUGH XV OF THE FIRST

AMENDED COMPLAINT. THOSE CLAIMS

SHOULD BE ALLOWED TO STAND AGAINST THE MBCR. PLANTIFF ADVISED MBCR OF THEIR LIABLITIES AT THE MOMENT MBCR FAILED TO AWARD POSITION TO PLAINTIFF IN JUNE 2003 ( SEE PLAINTIFF "MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS " DOCKET 30 EXHIBIT E ).    ALL CLAIMS LISTED AN THE FIRST AMENDED COMPLAINT SHOULD BE ALLOWED TO STAND AGAINST THE MBCR. THIS HONORABLE COURT MUST NOT ALLOW AMTRAK OR MBCR to BE FROM

POTENTIAL LIABILITIES FOR
DAMAGES INCURRED PROTECTING
THE PLAINTIFF AFTER JULY 1, 2003
RESULTING FROM PLAINTIFF'S PRIOR
EMPLOYMENT IN COMMUTE RAIL
TRANSPORTATION. WHEREAS BOTH
DEFENDANTS SEEK EXONERATION ON
EITHER SIDE OF THAT DATE, PLAINTIFF
RISKS LOSING VALID LEGAL REMEDY.

　　　B. PLAINTIFF'S RIGHT TO
AMEND COMPLAINT PURSUANT TO
F.R.C.P. RULE 15.

　　　IN ACCORDANCE WITH THE RECOMENDA-
TION, PLAINTIFF HAS NOT MADE SUBSTANTIVE
INFERENCES IN THE FIRST AMENDED

PAGE 27

COMPLAINT TO PERMIT A CLAIM
BASED ON THE FOREGOING. PLAINTIFF
CONSIDERS THAT PERHAPS HIS RAILWAY
LABOR ACT CLAIMS AND OTHER CLAIMS
AGAINST THE DEFENDANT MAY BE ALLOWED
TO RESUME INDIRECTLY VIA 13(c) OR
OTHERWISE AS CIVIL RIGHTS CLAIMS
AGAINST THE DEFENDANT PURSUANT TO
42 U.S.C. s. 1983 ("SECTION 1983), BUT
THE PLAINTIFF WOULD BE FORCED TO ARGUE
AGAINST THE WORDING OF THE RECOMMEND-
ATION WHEREIN IT ALLOWS DISMISSAL OF
RAILWAY LABOR ACT CLAIMS IN COUNT I OF
THE FIRST AMENDED COMPLAINT AND

PAGE 28

COUNTS II - IX, XI - XV. THE RECOMMENDATION INFERS THAT THOSE CLAIMS SHOULD BE DISMISSED BECAUSE THEY "ALLEGE NO WRONGDOING ON THE PART OF MBCR." AND IN ORDER FOR THE FIRST AMENDED COMPLAINT ON THE BASIS OF SUCCESSOR LIABILITY, "THERE MUST BE SOME TYPE OF PRIVITY BETWEEN THE PREDECESSOR AND SUCCESSOR EMPLOYER" KORLIN V. CHARTWELL HEALTH CARE, INC 128 F. SUPP. 2d 609, 614 (E. D. Mo. 2001) AND "NONE OF THE PLAINTIFF'S ALLEGATIONS SUGGESTS THAT ANY SUCH RELATIONSHIP EXISTED BETWEEN

PAGE 29

MBCR AND AMTRAK." NEVERTHELESS, PLAINTIFF SUBMITS THAT SUCH A RELATIONSHIP CAN BE INFERRED IF THE DEFENDANT CONTRACTED WITH THE MBTA TO "PROVIDE THAT (MBCR) WOULD BE RESPONSIBLE FOR () 13(c) OBLIGATIONS" EXHIBIT A, PAGES 3 AND 4, FOOTNOTE 3, AND MBCR ACCEPTED RESPONSIBILITY OF OUTSTANDING CLAIMS AGAINST AMTRAK IN ORDER TO PROVIDE FOR "THE PRESERVATION OF RIGHTS, BENEFITS, PRIVILEGES AND BENEFITS UNDER EXISTING COLLECTIVE BARGAINING AGREEMENTS OR OTHERWISE ...

THE PROTECTION OF [THE PLAINTIFF]

AGAINST A WORSENING OF [HIS]

POSITION[S] RELATED TO EMPLOYMENT...

ASSURANE(S) OF PRIORITY OF REEMPLOYMENT

OF [THE PLAINTIFF] WHOSE EMPLOYMENT

HAS ENDED" 49 U.S.C s5333(b).

EVEN IF SUCH ASSURANCES ARE NOT

LIABILITIES PURSUANT TO SIGNATORY

AGREEMENTS WOULD HAVE THE SAME

EFFECT. THE COMPLAINTS COUNTS

II - IX , XI-XV AND THE RAILWAY LABOR

ACT CLAIMS IN COUNT I SHOULD BE

ALLOWED TO STAND. PLAINTIFF SHOULD

BE ALLOWED TO INFER LIABILITY

IN THE COMPLAINT PURSUANT TO CONTRACTS ENTERED INTO BY THE DEFENDEN PURSUANT TO 13(C) REQUIREMENTS. PLAINTIFF SHOULD BE ALLOWED TO AMEND THE COMPLAINT TO COMPORT WITH THE PROVISIONS OF SUCH CONTRACTS. PLAINTIFF HAS A RIGHT TO REMEDIES FOR DAMAGES CONTINUING AFTER JULY 1, 2003 AND JUSTICE REQUIRES THAT THE PLAINTIFF BE PERMITTED TO AMEND THE COMPLAINT TO PROVIDE FOR THEM.

WHEREFORE, THE PLAINTIFF PRAYS THAT THIS HONORABLE COURT DENY

PAGE 32

DEFENDANT'S MOTION TO DISMISS COMPLAINT, INCLUDING COUNTS II-IX, XI-XV, AND RAILWAY LABOR ACT CLAIMS IN COUNT I. ALL CLAIMS SHOULD STAND WITH THE PROVISO THAT THE COMPLAINT WILL BE AMENDED TO ADEQUATELY ACCOUNT FOR THEM.

OCTOBER 6, 2006        RESPECTFULLY SUBMITTED,

_Joseph T. Carmack_

JOSEPH T. CARMACK
PLAINTIFF PRO SE.
398 COLUMBUS AVE
PMB 130
BOSTON MA. 02116-6008
WORK 617/727-2310
                EXT 7045
HOME 617 536.0772

PAGE 33

CERTIFICATE OF SERVICE

I, JOSEPH T. CARMACK, HEREBY CERTIFY THAT I HAVE ON OCTOBER 6, 2006 SERVED A TRUE COPY OF THE FOREGOING BY 1ST CLASS U.S. MAIL TO ROBERT K. BLAISDELL, ATTORNEY FOR MASSACHUSETTS BAY COMMUTER RAILROAD CO. AT ONE BEACON ST. SUITE 1320 BOSTON, MA. 02108-3113

DATE: OCTOBER 6, 2006

Joseph T. Carmack
JOSEPH T. CARMACK
PLAINTIFF, PRO SE
398 COLUMBUS AVE
PMB 130
BOSTON MA. 02116-6008

I, JOSEPH T. CARMACK, HEREBY CERTIFY THAT I HAVE ON OCTOBER 6, 2006 SERVED A TRUE COPY OF THE FOREGOING DOCUMENT BY 1ST CLASS MAIL TO TODD VALICENTI, ATTORNEY FOR MASSACHUSETTS BAY COMMUTER RAILROAD. AT 10 PARK PLAZA ROOM 3910, BOSTON, MA 02116

DATE: OCTOBER 6, 2006

Joseph T. Carmack
JOSEPH T. CARMACK
398 COLUMBUS AVE.
PMB 130
BOSTON, MA. 02116-6008

PAGE 34

10/6/ 2006          05-11430-PBS

EXHIBIT    A.

*Notify*

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 00-2027G

## BAY STATE TRANSIT SERVICES, LLC.

**vs.**

## MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff, Bay State Transit Services, LLC, ("Bay State") requests that this Court enjoin defendant, the Massachusetts Bay Transportation Authority (the "MBTA"), from entering into a contract or otherwise authorizing anyone other than Bay State to perform the services in the September 15, 1999 Mechanical Services Agreement (the "Agreement") between the MBTA and Bay State, and "from interfering with or frustrating Bay State's ability to perform under the agreement." On May 10, 2000, this Court granted Bay State's request for a temporary restraining order. For the reasons set forth below, Bay State's motion for a preliminary injunction is **DENIED**.

## BACKGROUND

Defendant, the MBTA, is a corporate and political subdivision of the Commonwealth of Massachusetts. Pursuant to the Enabling Act of 1964, G.L. c. 161A, the MBTA has the power and authority to acquire and operate mass transportation and commuter rail services within Boston and the surrounding towns and cities. The MBTA averages approximately 1.16 million passenger boardings each weekday, including 645,000 subway, 366,000 bus, 132,000 commuter rail, 64,000 trolley, 5,500 private bus, 4,500 ferry, and 4,000 paratransit for persons with

disabilities.

Pursuant to a contract with the MBTA dated September 1, 1995, the National Railroad Passenger Corporation ("Amtrak") operates the MBTA commuter rail service that services Greater Eastern Massachusetts and into Rhode Island. This contract covers three aspects of work: (1) Transportation, which provides the train and engine crews who run the commuter trains and other transportation personnel who operate the system; (2) Engineering, which provides for the maintenance of the fixed infrastructure; and (3) Mechanical Services, which provides for the maintenance of the trains and related equipment. The Amtrak contract is due to expire on June 30, 2000. Amtrak has collective bargaining agreements with various rail unions that represent the operating and maintenance employees presently employed by Amtrak on MBTA's commuter rail system (the "Rail Unions").

In the Spring of 1998, based on its belief that it could improve service quality and cut operating costs by over 40% and save approximately $100 million over the course of a five year contract, the MBTA separated or "unbundled" the mechanical maintenance portion of the Amtrak contract. The MBTA undertook competitive procurement for the mechanical maintenance service at the urging of the Federal Transit Authority ("FTA"), an entity of the United States Department of Transportation. The MBTA followed the federal procurement procedure by requesting proposals for mechanical service work.

On May 3, 1999, plaintiff, Bay State, whose bid was $119 million less than the amount bid by Amtrak for a five-year term, was selected as the successful bidder. In fact, Bay State was the leader among all bidders in every category, including price, technical ability and combined score. In response, the Rail Unions, which represent 13 separate national craft bargaining units at

2

Amtrak, 8 of which supply workers for MBTA commuter rail mechanical work, mounted a vigorous campaign to hinder the "unbundling" process. In printed bulletins and letters sent to their respective members working on the MBTA's commuter rail and the public throughout the Summer and Fall of 1999, representatives of the Rail Unions threatened that if the MBTA executed a contract with Bay State, the Rail Union would strike the MBTA's commuter rail services operated by Amtrak. The effect of the Rail Unions' efforts was to delay the signing of the Bay State Agreement by several months.

Beginning around May 1999, before the execution of the Bay State Agreement, the MBTA began communicating with the Rail Unions concerning a "transition agreement," the purpose of which was to provide for a possibility of transitioning Amtrak workers to Bay State, thereby implementing the MBTA's policy goal of minimizing the impact of this contractor transition on the Amtrak workforce. In July 1999, the MBTA began meeting and negotiating with the Rail Unions' officials and counsel in an attempt to work out the transition agreement.

On September 15, 1999, the MBTA executed the Agreement with Bay State to perform the maintenance operation beginning in the Spring of 2000. The MBTA made efforts to maintain harmony through the fair treatment of Amtrak workers. Under the Agreement, Bay State was required "to the extent feasible," to give priority consideration to incumbent Amtrak/Rail Union workers. Specifically, §24(c) of the agreement provides:

> Subject to paragraph 5(e)(3) [cost-savings provision], [Bay State] shall, to the maximum extent feasible, give priority consideration in hiring to employees of [Amtrak] who are currently employed in the performance of mechanical services for the MBTA's commuter rail operations and who meet such reasonable employment-related qualifications as may be established by [Bay State].

On September 28, 1999, the Rail Unions filed an action to enjoin the MBTA and Bay

3

State from implementing the Agreement. On October 5, 1999, the court issued a temporary restraining order enjoining the MBTA from implementing the Agreement with Bay State. The temporary restraining order expired on October 15 and after a hearing, the Rail Unions' request for a preliminary injunction was denied. TWCA, et al. v. MBTA, et al., C.A. No. 99-4672F (Suffolk Super. Ct. November 15, 1999). Following their unsuccessful effort at blocking the transfer of the mechanical work to Bay State through the courts, the Rail Unions began an intensive lobbying effort seeking to have the Federal Transit Administration (the "FTA") and the Department of Labor withhold federal funding of all MBTA transit projects unless the MBTA essentially acquiesced to all of the Rail Unions' demands.[1] As a result of these lobbying efforts, the FTA threatened to cut off federal funding to the MBTA if the problems with the Rail Unions were not satisfactorily resolved.

Pursuant to §24(c) of the contract, Bay State attempted, without success, to recruit Amtrak employees to transition from Amtrak to Bay State. In response to its four separate mailings, Bay State received form responses criticizing the Bay State invitations as not being offers, asserting Section 13(c) rights[2], stating that the recipients would wait for the matter to be

---

[1] In addition to their lobbying efforts, the Rail Unions, through those members who were working for Amtrak in the MBTA commuter rail operation, began harassing and assaulting Bay State personnel who were attempting to tour the facilities in order to prepare for Bay State's assumption of the contract.

[2] The bid documents prepared and distributed by the MBTA for the mechanical services state that the MBTA will be responsible for and indemnify the winning bidder for all obligations pursuant to §13(c) of the Urban Mass Transportation Act of 1964, 49 U.S.C. §5333(b). Section 13(c) provides for certain payments to employees who are adversely affected by certain transactions, including a transfer of the mechanical services from Amtrak to Bay State. Consistent with the bid documents, the contract between the MBTA and Bay State provides that the MBTA shall indemnify Bay State with respect to all claims pursuant to §13(c). In February 2000, the MBTA informed Bay State that the contract would have to be amended to provide that

4

resolved in court, and directing that all future communications go through the Rail Unions.  Bay

State received no acceptances of its offer.  In light of the lack of response from Amtrak

employees, on or about December 3, 1999, Bay State informed the MBTA of its intention to

publish an advertisement for non-Amtrak workers.  MBTA requested that Bay State postpone this

advertisement pending a negotiating session with the Rail Unions that was scheduled for .

December 8.  Bay State complied with this request and to date, the MBTA has not agreed to

permit Bay State to make offers to non-Amtrak employees.

        The Agreement between the MBTA and Bay State contains a Force Majeur provision,

§29(a), which states in pertinent part:

> Each party will be excused from performance of any of its obligations to the other under
> this Agreement, where such non-performance is occasioned by any event beyond the non-
> performing party's control which shall include, without limitation, any order by any
> Federal, State, or local Government body, agency, or instrumentality; . . . provided,
> however, that the party excused hereunder shall use all reasonable efforts to minimize its
> non-performance and to overcome, remedy, or remove such event in the shortest practical
> time.  A strike, work stoppage or other labor dispute shall not constitute an event beyond
> contractor's control if the Contractor fails as soon as reasonably possible to proceed to
> obtain an order of a court or administrative agency of competent jurisdiction to prevent
> the continuation of the same. . . .  In the event either party fails or refuses to use all
> reasonable efforts as aforesaid, the continuation of an event beyond the control of such
> -party shall not be deemed an excuse for performance hereunder.

The Agreement also contains a provision, §26(a), enabling the MBTA to terminate for

convenience: .

> This agreement may be terminated for convenience at any time by the MBTA in
> accordance with this Section.  Any such termination shall be effected by delivery of a
> notice of termination specifying the date upon which such termination becomes effective,

Bay State would be directly responsible for §13(c) obligations.  At the hearing, counsel for Bay
State represented to this Court that Bay State undertook in good faith to negotiate the inclusion
of a new provision in the Agreement to cover the §13(c) obligations.  As of this time, the parties
are very close to agreeing on such language.

which shall be at least six months after the date of such notice.

Based on articles appearing in the *Boston Globe* on May 8, 2000 and *The Boston Herald* on May 7, 2000, it appears that the MBTA is preparing to sign a new contract with Amtrak, pursuant to which Amtrak would continue to perform the mechanical services for three years following June 30, 2000.

## DISCUSSION

To obtain preliminary injunctive relief, the moving party must demonstrate that: (1) it has a reasonable likelihood of success on the merits; (2) it will suffer irreparable harm if the injunction is not granted; and (3) the harm suffered by the moving party if the injunction is denied outweighs the harm to the nonmoving party is the injunction is granted. Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 617 n. 11 (1980); see also Planned Parenthood League of Massachusetts, Inc. v. Operation Rescue, 406 Mass. 701, 710 (1990). Moreover, in appropriate cases, the court should also consider the risk of harm to the public interest. GTE Products Corp. v. Stewart, 414 Mass. 721, 723 (1993); Commonwealth v. Massachusetts CRINC., 392 Mass. 79, 89 (1984). A preliminary injunction is a drastic remedy that a court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Charles Wright & Arthur Miller, 11 Federal Practice & Procedure, §2948, at 129-130 (1995). Thus, a preliminary injunction shall properly issue only where the balance of hardship measured in light of the legal merits cuts in favor of the moving party. GTE, supra at 722-23; CRINC, supra at 617.

### Likelihood of Success on the Merits:

In its verified complaint, Bay State alleges that the MBTA breached the Agreement by

6

allegedly: (1) refusing to allow Bay State to seek employees outside the current Amtrak workforce; (2) refusing to cooperate in a joint inspection of the mechanical facilities and equipment; (3) failing to turn over the equipment and facilities to Bay State under §4 of the Agreement; (4) failing to cooperate with Bay State or refrain[] from interfering with the performance of the Agreement under §2(b)(8); (5) failing to make payments due; and (6) for the last eight weeks, refusing to respond to telephone calls and letters from Bay State. Bay State contends that the effect of these actions constitutes a breach because they have "prevent[ed] Bay State from performing pursuant to the Agreement." This Court declines to go so far as to say that Bay State's claims are without merit. However, certain provisions in the Agreement may excuse the MBTA from its obligations, thereby diminishing Bay State's likelihood of success.

First, the Force Majeure provision of the Agreement may well enable the MBTA to terminate the Agreement. The relevant portion of the Force Majeure provision, §29(a), states:

> Each party will be excused from performance of any of its obligations to the other under this Agreement, where such non-performance is occasioned by any event beyond the non-performing parties control which shall include, without limitations, any order by any Federal, State, or local Government body, agency, or instrumentality. . . provided, however, that the party excused hereunder shall use all reasonable efforts to minimize its non-performance and to overcome, remedy, or remove such event in the shortest practical time.

As a result of the Rail Unions' lobbying efforts with the FTA and the U.S. Department of Labor, the FTA has threatened to cut off all federal funding to the MBTA pending a resolution between the MBTA and the Rail Unions. This impending suspension of federal funding certainly qualifies as an event, apparently beyond the control of the MBTA, which would prevent performance not just of the MBTA's obligations under the Agreement, but substantially impair the MBTA's ability to operate its commuter rail service at all. Therefore, without making a definitive determination

7

as to Bay State's likelihood of success on the merits, this Court recognizes that the Force Majeure

provision of the Agreement would likely constitute grounds to excuse the MBTA from its

contractual obligations.[3]

Second, the Agreement contains a Termination for Convenience clause, §26(a), which

states:

> This agreement may be terminated for convenience at any time by the MBTA in
> accordance with this Section. Any such termination shall be effected by delivery of a
> notice of termination specifying the date upon which such termination becomes effective,
> which shall be at least six months after the date of such notice.

The MBTA asserts that it intends to terminate the Bay State Agreement for convenience because,

in light of the interference of the Rail Unions and the actions of the Federal authorities, Bay State

cannot run the commuter rail service when the Amtrak contract expires on June 30. Concerning

termination for convenience clauses, "in the absence of bad faith or clear abuse of discretion the

contracting officer's election to terminate is conclusive." Salisbury Industries v. U.S., 905 F.2d

1518, 1521 (Fed. Cir. 1990), citing John Reiner & Co. v. United States, 163 Ct.Cl. 381, 325 F.2d

438, 442 (1963). The facts before this Court indicate that the MBTA acted in good faith in its

efforts to implement the Agreement with Bay State. Unfortunately, as a result of the actions of

the Rail Unions and the resulting threats by federal authorities to suspend federal funding, the

MBTA and Bay State, to use the words of counsel for the MBTA, "are caught in the same vice."

Thus, the invocation of the termination for convenience clause seems appropriate in this

---

[3]This Court notes that, while the terms of the Agreement may enable the MBTA to avoid
having to follow through on its obligations, it is clear that Bay State has been wronged and is
likely entitled to appropriate damages (such as, at a minimum, the cost of preparing the bid as well
as the costs expended on the project thus far). Moreover, Bay State may have legal recourse
against the Rail Unions.

situation.[4]

As another ground for its request for a preliminary injunction, Bay State contends that the

MBTA violated the competitive bidding process under G.L. c. 30, §39M. This Court is

unpersuaded by this argument. G.L. c. 30, §39M states in pertinent part:

> Every contract for the construction, reconstruction, alteration, remodeling or repair of
> public work, or for the purchase of any material, as hereinafter defined, by the
> commonwealth, or political subdivision thereof. . .estimated by the awarding authority to
> cost more than ten thousand dollars, and every contract for the construction,
> reconstruction, installation, demolition, maintenance or repair of any building by a public
> agency, as defined by subsection c. 149, § 44A(1), estimated to cost more than ten
> thousand dollars, shall be awarded to the lowest responsible and eligible awarding
> authority forthwith upon expiration of the time for the filing thereof, provided, however,
> that such awarding authority may reject any and all bids, if it is in the public interest to do
> so.

The MBTA contends that G.L. c. 30, §39M does not apply to the Agreement because it does not

involve "public work." This argument is unsupported by case law. The Agreement was for the

provision of services to maintain trains and rail equipment. Contrary to the MBTA's contention,

such work does constitute "construction, reconstruction, alteration, remodeling or repair of any

public work," such that the requirements of G.L. c. 30, §39M would be triggered. The term

"public works" has not been comprehensively defined, as its meaning is somewhat elastic

depending on the statutory context. Perlera v. Vining Disposal Service, Inc., 47 Mass. App. Ct.

491, 494 (1999). The core concept of "public works" in Massachusetts is generally expressed as

---

[4]If the MBTA terminates the agreement for convenience, Bay State is protected by §26(b)
which provides in pertinent part that:
> In the event of a termination of this Agreement by the MBTA pursuant to this Section, the
> MBTA shall pay the Contractor its costs of closing out the Agreement Services, including
> Contractor's overhead and management fees at the rates included in the Base Service
> Price through the effective date of such termination, and any other amounts due and
> payable to Contractor under this Agreement.

involving the creation of public improvements having a nexus to land, building, road, sewerage or waterworks facility, bridge, or park. Id. A second category of activities sometimes associated with "public works" includes the work of maintaining and repairing such a facility. Id; see also Thorn Transit Sys. Intl. Ltd. v. Massachusetts Bay Trans. Authy., 40 Mass. App. Ct. 650, 652-656 (1996) (upgrade of transit fare collection system is "public work" under G.L. c. 30, §39M). Accordingly, the maintenance of trains and rail equipment clearly falls within the definition of "public works" contemplated by G.L. c. 30, §39M.

While G.L. c. 30, §39M does apply to the Agreement between Bay State and the MBTA, the MBTA has not violated that law since it has fully complied with the competitive bidding laws. Bay State was the winning proposer and consequently was awarded the contract. The bid procurement process, which was appropriately followed, is over. The actions that the MBTA now threatens to take to terminate Bay State's obligations are pursuant to contract, and not a violation of the competitive bidding laws. Bay State is mischaracterizing the dispute as a bidding dispute, when in actuality it is a contract dispute. Therefore, G.L. c. 30, §39M has no application here.

Even if this dispute did fall under the purview of the competitive bidding laws, G.L. c. 30, §39M contains a caveat which states that "such awarding authority may reject any and all bids, if it is in the public interest to do so." If, as the facts suggest, the MBTA will lose federal funding if it follows through with its Agreement with Bay State, thereby potentially resulting in a significant disruption of commuter rail services, then it is arguably not in the "public interest" to implement the contract with Bay State. Therefore, even if G.L. c. 30, §39M is applicable to the issue before this Court, the "public interest" caveat would likely exempt the MBTA from the requirements of

the statute.

### Irreparable Harm:

Assuming, arguendo, Bay State could succeed on the merits of its claims, it must also demonstrate that, if the injunction is not issued, it will suffer irreparable harm which is greater than the harm the MBTA will suffer if the injunction is issued. "In the context of a preliminary injunction the only rights which may be irreparably lost are those not capable of vindication by a final judgment, rendered either in law or in equity." Packaging Indus., supra at 617 n. 11, citing Radio Hanover, Inc. v. United Utils., Inc., 273 F. Supp. 709, 713 (M.D. Pa. 1967). "Irreparable injury is that injury for which money damages are not adequate compensation." Sierra Club v. Larson, 769 F. Supp. 420, 422 (D. Mass 1991). Bay State has not satisfactorily demonstrated why money damages would not adequately redress any harm it may incur prior to final judgment on the merits. See id.

In ¶19 of its verified complaint, Bay State contends that it will suffer irreparable harm if the MBTA signs a new contract with Amtrak because "Bay State is a joint venture created to bid on and perform the Agreement and to bid on and perform similar contracts with other commuter rail operators in the future. The ability to win other contracts depends in large part on the successful performance of the Agreement."

This is not a case in which a bid was unfairly rejected and the cost of bid preparation would be an unfair remedy. See Petricca v. Commonwealth, 37 Mass. App. Ct. 392 (1994) (concerning a bid that was unfairly rejected, the court acknowledged that unless injunctive relief issued, whatever profits may have been earned upon completion of the work would be lost forever, and could not be recovered in an action at law); see also Modern Continental

11

Construction Co. v. Lowell, 391 Mass. 829, 837 (1984) (Modern Continental's opportunity for consideration as a bidder would be forever lost, and its remedy at law for the damages incurred in preparing the bid falls far short of being equivalent of the potential to win the contract). In this case, Bay State did win the contact. If it succeeds on the merits of its breach of contract claims, it will be entitled to appropriate contract remedies. In Petricca, there was no contract to enforce and therefore no remedy at law, whereas in the case at bar, there is a contract, which, if found enforceable and found to have been breached by the MBTA, would enable Bay State to pursue contract remedies.

Without question, this Court is sympathetic to Bay State's argument that its ability to win other contracts may be contingent upon the successful completion of the Agreement, however, as discussed below, such a risk is outweighed by the risk to the MBTA and the consequent risk to the public should an injunction issue. Moreover, this Court doubts that the ultimate frustration of the Agreement would threaten Bay State's reputation. The parties whose reputations are at stake here are the Amtrak Rail Unions and the federal authorities which encouraged the MBTA to put this contract out for bid and then pulled the proverbial rug from underneath them.

Public Interest:

In a case such as this, it is appropriate for the court to consider whether the requested relief would promote or, alternatively, adversely affect the public interest. See CRINC, supra at 89; Biotti v. Board of Selectmen of Manchester, 25 Mass. App. Ct. 637, 640 (1988). Here, although the public faces consequences whether the injunction is granted or denied, for the following reasons, this Court finds that the balance tips in favor of denying the request for an injunction.

12

On the one hand, a refusal to issue injunctive relief would permit the MBTA to enter into a substitute mechanical service contract with Amtrak, which contract would increase the cost to the MBTA and ultimately to the public by $119 million over five years. On the other hand, if the injunction is issued and the MBTA is enjoined from terminating its contract with Bay State and signing a contract with Amtrak, Amtrak will not provide any commuter rail services, including mechanical services, after June 30, 2000. According to E.S. Bagley, Jr., the President of the Northeast Corridor of Amtrak, "Amtrak has advised the MBTA that Amtrak will not agree to provide commuter rail services, including mechanical services, to the MBTA beginning in July 2000, unless Amtrak has a long-term (e.g. at least 3-year) agreement with the MBTA." Bagley Aff. ¶4. Thus, whether or not Bay State is prepared to commence work under the Agreement on July 1, 2000, the MBTA may be forced to shut down commuter rail service, impacting thousands of people each day. As recognized by the three judge panel (King, Connolly, and Kern, JJ.) which ruled in earlier filed litigation involving the Bay State Agreement, the impact on the public interest should an injunction issue would be enormous:

> Thousands of people who use the commuter rails would be forced to use other methods of transportation, potentially clogging passage of highways and other streets to an extent that could cause a public safety issue.

TWCA, et al. v. MBTA, et al., C.A. No. 99-4672F (Suffolk Super. Ct. 1999), citing Massachusetts Bay Transportation Authority Advisory Board v. Massachusetts Bay Transportation Authority, 382 Mass. 569, 573 (1981). In this Court's view, the cost to the public should the injunction issue outweighs the added financial burden imposed on the public if injunctive relief is denied.

** TOTAL PAGE.15 **

## ORDER

For the foregoing reasons, it is hereby **ORDERED** that Bay State's motion for a

preliminary injunction be **DENIED**.

*Carol S. Ball*

Carol S. Ball
Justice of the Superior Court

Dated: May 23 , 2000

14

10/6/2006          05-11430-PBS

EXHIBIT B

10/6/2006

I, JOSEPH CARMACK, DECLARE UNDER PENALTY OF PURJURY THAT:

1. I AM PLAINTIFF, PRO SE, IN THE CASE 05-11430-PBS.

2. ON OR ABOUT JUNE 27, 2003 CHRISTA CUPERNALL, LABOR RELATIONS OFFICER FOR MBCR, WHO IS NOW CHRISTA PHILLIPS, MENTIONED TO ME THAT AMTRAK WAS REQUIRED TO SETTLE COMMUTER RAIL DISCIPLINARY ISSUES IN ACCORDANCE WITH AN "IMPEMENTING AGREEMENT.

JOSEPH T. CARMACK
398 COLUMBUS AVE
PMB 130
BOSTON MA 02116-6008