UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Joseph T. Carmack | ) | |
| Plaintiff, Pro Se | ) | |
| | ) | Civil Action No. 05-11430-PBS |
| v. | ) | |
| | ) | |
| Massachusetts Bay Transportation Authority | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Massachusetts Bay Commuter Railroad Co. | ) | |
| | ) | |
| Defendants | ) | |

## PLAINTIFF'S MOTION TO AMEND PLAINTIFF'S 1ST AMENDED COMPLAINT

### INTRODUCTION

Plaintiff Joseph T. Carmack ("Plaintiff") hereby moves this Honorable Court for an order allowing Plaintiff to amend Plaintiff's 1st Amended by changes represented in Plaintiff's 2nd Amended Complaint. As grounds therefore, Plaintiff states that an amended complaint is necessary to clarify triable issues and set forth claims that arose out of the conduct, transactions, or occurrences set forth or attempted to be set forth in the 1st Amended Complaint. The current 2nd Amended Complaint to be filed on Monday December 18, 2006, is intended to resolve failures to state claims identified by this Honorable Court in the grants of Defendants' Motions to Dismiss.

1

The 2nd Amended Complaint presents facts in a more triable light and justice requires that it be allowed for a fair presentation of the case.

*************************
Plaintiff certifies that parties have
Conferred and complied with Local Rules.
********************************

**Respectfully submitted,**

Date: December 15, 2006

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045

**Certificate of Service**

Joseph T. Carmack hereby certify that I have on December 15, 2006 served a true copy of the foregoing document by First Class U.S. Mail to Robert K. Blaisdell, Attorney for Massachusetts Bay Commuter Railroad Company ate One Beacon St. Suite 1320 Boston, MA 02103-3113

Date:  December 15, 2006

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045

Joseph T. Carmack hereby certify that I have on December 15, 2006 served a true copy of the foregoing document by First Class U.S. Mail to Todd Valicenti, Attorney for Massachusetts Bay Transportation Authority at 10 Park Plaza Room 3910, Boston, MA 02116.

Date:  December 15, 2006

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045

2

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2006 DEC 18  A 8:40

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Joseph T. Carmack<br>　　　　Plaintiff, Pro Se<br><br>　　　　v.<br><br>Massachusetts Bay Transportation Authority<br><br>　　　　and<br><br>Massachusetts Bay Commuter Railroad Co.<br><br>　　　　Defendants | Civil Action No. 05-11430-PBS<br><br>SECOND AMENDED COMPLAINT<br><br>AND<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

### I. PARTIES

1. The plaintiff, Joseph Thomas Carmack, is a natural person residing at 592 Tremont Street, Boston, County of Suffolk, Massachusetts.

2. The plaintiff, Joseph T. Carmack, uses a mailing address of 398 Columbus Avenue, Private Mail Box 130, Boston, County of Suffolk, Massachusetts.

3. The defendant, Massachusetts Bay Transportation Authority (MBTA) is a state agency charged with administering transportation services throughout the Commonwealth of Massachusetts whose formation is mandated by Massachusetts General Law. The principle offices for the MBTA are located at 10 Park Plaza, Third Floor, Boston, Suffolk County, Massachusetts, 02116.

1

UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph T. Carmack<br>　　　　　Plaintiff, Pro Se<br><br>　　　v.<br><br>Massachusetts Bay Transportation Authority<br><br>　　and<br><br>Massachusetts Bay Commuter Railroad Co.<br><br>　　　　Defendants | )<br>)<br>)<br>)　Civil Action No. 05-11430-PBS<br>)<br>)<br>) SECOND AMENDED COMPLAINT<br>)<br>)　　　　　AND<br>)<br>)　DEMAND FOR JURY TRIAL<br>)<br>)<br>) |

## **COMPLAINT**

### **I. PARTIES**

1. The plaintiff, Joseph Thomas Carmack, is a natural person residing at 592 Tremont Street, Boston, County of Suffolk, Massachusetts.

2. The plaintiff, Joseph T. Carmack, uses a mailing address of 398 Columbus Avenue, Private Mail Box 130, Boston, County of Suffolk, Massachusetts.

3. The defendant, Massachusetts Bay Transportation Authority (MBTA) is a state agency charged with administering transportation services throughout the Commonwealth of Massachusetts whose formation is mandated by Massachusetts General Law. The principle offices for the MBTA are located at 10 Park Plaza, Third Floor, Boston, Suffolk County, Massachusetts, 02116.

1

4. The defendant, Massachusetts Bay Commuter Railroad Company (MBCR) is a for-profit corporation organized and existing under the laws of the United States and the Commonwealth of Massachusetts. MBCR is contracted by the MBTA to provide and operate commuter rail services for the commonwealth pursuant to contract, Massachusetts General Law chapter 161A and the Urban Mass Transportation Act of 1964 as amended. The principle offices for the MBCR are located at 89 South Street, Boston, Suffolk County, Massachusetts 12110.

## II. JURISDICTION AND VENUE

5. This court has subject matter jurisdiction over this action pursuant to U.S. Constitution Amendment 1, U.S. Constitution Amendment 14, 45 U.S.C. s 151 et seq., 29 U.S.C. s. 151 et seq., 42. U.S.C. s 1983 and 28 U.S.C. s. 1331.

6. This court has personal jurisdiction over the defendants who reside within this judicial district and a substantial part of the events or omissions giving rise to this complaint occurred in this district. Venue is proper in this district under 28 U.S.C. S. 1391 (b) and 1391 (c).

7. This court has supplemental jurisdiction over ancillary claims that are so related to claims in this action, of which this court has original jurisdiction, that such ancillary claims form part of the same case or controversy under 28 U.S.C. s. 1367.

8. At all times relevant to this complaint Kevin Lydon, Dennis Coffey, Jacqueline Boumel, John Santamaria and others did independently and conjointly act or fail to act so as to give rise to the causes of action contained in this complaint.

## III. FACTS

2

9. The Commonwealth of Massachusetts and the MBCR rely on federal funding of commuter rail pursuant to provisions of the Urban Mass Transportation Act of 1964, which is also referred to as the Federal Transit Act ("FTA").

10. The provisions and compliance with the FTA are administered and overseen by the Federal Transit Administration ("FTAD").

11. Prior to July 2003, MBTA contracted with the National Railroad Passenger Corporation ("Amtrak") to provide and operate Massachusetts commuter rail service pursuant to the provisions and requirements of M.G.L. 161A and the FTA.

12. Federal grant rules require MBTA to compete commuter rail bids every five years.

13. Section 13(c) of the FTA requires commuter rail contractors with the MBTA to maintain the same work force, the same rates of pay and the same work rules of previous contractors.

14. Pursuant to instructions from the United States Department of Labor and the provisions of the FTA, MBTA requires that provisions and requirements of 13 (c) be included in all bids, contracts and agreements affecting the work force, rates of pay and work rules (including labor agreements) of the previous contractor.

15. On or about February 19, 2003, the MBTA entered into contract with the MBCR to provide and operate commuter rail transportation pursuant to M.G.L. 161A and the requirements and provisions FTA.

16. In addition to the basic contract with the MBTA, MBCR also signed additional agreements with the MBTA and Amtrak, including "transition" agreements

3

and an "Implementing Agreement" which indemnify "MBCR" for the requirements of 13(c) and reference Amtrak as the previous contractor.

17. Amtrak and MBCR operate trains out of hub stations in Boston to outlying points from North Station in Boston and South Station in Boston.

18. Locomotive engineers operating Massachusetts commuter rail trains are represented by the Brotherhood of Locomotive Engineers and Trainmen ("BLET"), which was called the Brotherhood of Locomotive Engineers ("BLE") prior to January 1, 2004. The local subdivisions of the BLE/BLET are called "divisions". Most Massachusetts commuter rail engineers are in Division 57 of the BLE/BLET.

19. The BLET (and the BLE before January 1, 2004) maintains collective bargaining agreements with Amtrak and MBCR.

20. The BLE first signed a collective bargaining agreement (CBA) with MBCR on or about May 2003.

21. Pursuant to contracts and agreements between MBCR and the MBTA, contracts and agreements between MBCR and BLE (and subsequently BLET) and the provisions of 13(c), MBCR accepted the rules the existing collective bargaining agreement between Amtrak and the BLE as the working contract between MBCR and the BLE (and BLET).

22. Pursuant to collective bargaining agreement between MBCR and the BLE ("MBCR/BLET agreement"), MBCR would not consider any discipline imposed on employees by Amtrak.

4

23. Pursuant to the MBCR/BLET agreement, former engineers of Amtrak in BLE Division 57 or Division 12 would be awarded positions with MBCR in accordance with seniority based on the Amtrak/BLE seniority roster.

24. The MBCR/BLET agreement includes a provision permitting former Amtrak employees who were terminated and/or on medical leave to return to commuter rail service with MBCR.

25. The Plaintiff was awarded the position of Locomotive Engineer in Massachusetts commuter rail by Amtrak in December 1996.

26. The Plaintiff has been a member of the Brotherhood of Locomotive Engineers and BLET in Division 57 since on or about March 1998.

27. On or about May 6, 2003, MBCR General Manager Kevin Lydon, offered the plaintiff a position of employment as locomotive engineer in accordance with plaintiff's seniority and the BLE agreement with the MBCR.

28. On or about May 14, 2003, plaintiff accepted employment with MBCR and submitted appropriate application materials to MBCR.

29. On or about June 24, 2003 MBCR issued awards for engineer positions in Massachusetts commuter rail, but omitted plaintiff from the award list.

30. On or about June 28, 2003, plaintiff reiterated his acceptance of employment offer to MBCR General Manager Kevin Lydon by letter with an accompanying grievance for MBCR's failure to award plaintiff a position which plaintiff attempted to address in accordance with the provisions of the Railway Labor Act.

31. Pursuant to MBTA's bidding notices, MBCR's bidding proposal and award contract signed by the Defendant's, MBCR was required to accept Plaintiff's application as a continuing MBTA employee.

32. By contract signed with MBTA, MBCR agreed to accept liability damages incurred by commuter rail employees against MBCR's predecessor Amtrak and continuing after July 1, 2003.

33. By contract signed with MBCR, MBTA agreed to indemnify MBCR against liability damages incurred by commuter rail employees against MBCR's predecessor Amtrak and continuing after July 1, 2003.

## COUNT ONE: VIOLATION OF FREE SPEECH, U.S. CONSTITUTION AMENDMENT I, VIOLATION OF CIVIL RIGHTS U.S. CONSTITUTION AMENDMENT 14, U.S.C. 42 s. 1983, UNFAIR LABOR PRACTICE 45 U.S.C. s. 151 et seq. INTERFERENCE WITH RIGHTS AND VIOLATION OF MASSACHUSETTS CIVIL RIGHTS ACT M.G.L. c.12 s.111

34. Plaintiff here repeats and realleges the allegations of paragraph 1 through 33 of the complaint, the same as if said paragraphs were expressly restated here.

35. On July 1, 2003, plaintiff went to public access areas of North Station in Boston, Massachusetts to contact other union members to solicit assistance and support to enforce plaintiff's seniority rights in accordance with MBCR/BLE agreement, the Railway Labor Act and the Constitution of the Brotherhood of Locomotive Engineers.

36. Plaintiff had written informational materials to hand to fellow union members.

6

37. After plaintiff arrived at public access areas in North Station; and after plaintiff spoke to a few union members in public access areas in North station; MBCR Transportation Manager, Jacqueline Boumel called MBTA police to have plaintiff removed from the public access areas at North Station.

38. In answer to Boumel's call, an MBTA police officer approached plaintiff in the public access area at North Station and confiscated some of plaintiff's informational materials.

39. After clarifying that plaintiff's written material dealt with union issues and union agreement matters, the MBTA police officer evicted the plaintiff from the public access areas at North Station.

40. Upon evicting plaintiff from North Station, the MBTA police officer warned the plaintiff that if plaintiff were discovered at any MBTA stations, plaintiff would be charged with trespassing and arrested.

42. As a direct and proximate result of the actions of Ms. Boumel and the MBTA police officer, acting as agents of MBCR and the MBTA: plaintiff's rights, privileges and immunities as a citizen have been abridged; Plaintiff is denied freedom of speech and association; plaintiff is denied the right to organize in his union; and plaintiff is denied union rights generally.

## SUCCESSOR AND JOINT LIABILITY CLAIMS FOR ACTIONS OF PREVIOUS EMPLOYER OF PLAINTIFF, NATIONAL RAILROAD PASSENGER CORPORATION.

## COUNT TWO: SLANDER, LIBEL AND DEFAMATION

7

43. Plaintiff here repeats and realleges the allegations of paragraph 1 through 42 of this complaint, the same as if said paragraphs were expressly restated here.

44. On or about April 11, 2001, Gerrard L. DeMondena was an employee for Amtrak acting in service to the MBTA who became subsumed into the operations of MBCR in service to the MBTA on or about July 1, 2003.

45. On or about April 11, 2001, Gerrard L. DeModena, a supervisor of the Plaintiff began an oral and written campaign portraying Plaintiff as a violent, dangerous and mentally unstable person who has threatened Mr. DeModena

46. Mr. DeModena created, filed and disseminated documents to various departments within employer corporation Amtrak that falsely and maliciously portrayed Plaintiff as a violent, dangerous and mentally unstable person who has threatened Mr. DeModena.

47. On or about April 11, 2001 and at various times thereafter, Mr. DeModena falsely and maliciously reported to his superiors at Amtrak and the MBTA that Plaintiff was a violent dangerous and mentally unstable person who has threatened Mr. DeModena

48. Beginning on or about April 11, 2001, Mr. DeModena conspired with other agents and employees of Amtrak and MBTA, including Mr. Michael J. O'Malley and Mr. William Rae, to instruct other managers and employees of Amtrak and the MBTA to Falsely and maliciously portray Plaintiff as a mentally unstable person who posed a threat to the health and safety of fellow employees and the traveling public.

49. As a direct and proximate result of actions of Mr. DeModena and other agents of Amtrak and the MBTA, Amtrak's Medical Director declared to other officials that Plaintiff was suffering from a severe psychiatric disorder (Possibly Bi-Polar or

8

Personality Disorder) that posed a direct threat to Plaintiff's self, other employees and the traveling public.

50. Beginning on or about May 4, 2001 and at various times thereafter, Mr. Mike O'Malley, agent of Amtrak and the MBTA, created and disseminated various letters addressed and directed to Plaintiff's union that contained intentionally false and malicious assertions that it is obvious that Plaintiff is mentally impaired in a way that affects Plaintiff's service to Amtrak and the MBTA.

51. On or about February 2002, Ms. Christa Cupernall, now Christa Phillips, was a Labor Relations officer for Amtrak and the MBTA.

52. Beginning on or about June 1, 2001, Ms. Christa Phillips was transferred to the MBCR payroll from Amtrak as an employee of MBCR and the MBTA.

53. On or about February 2002, Ms. Christa Cupernall, now Christa Phillips, sent and electronic mail letter to John Hume (payroll clerk for Amtrak) containing an intentionally false statement the Plaintiff was "removed from service by reason of insanity".

54. As a direct and proximate result of actions of Defendant agents acting as employees of Amtrak and the MBTA, Plaintiff was medically disqualified from employment and ultimately terminated from employment.

55. By virtue of the willful conduct of agents of Amtrak and the MBTA, the Amtrak and the MBTA, through their agents, servants and employees, have maliciously written and distributed false statements regarding Plaintiff's medical condition, state of mind and performance abilities.

56. Amtrak and the MBTA, through their agents, servants and employees, have knowingly, willingly and intentionally libeled and defamed Plaintiff intending to prejudice Plaintiff in his reputation, community standing, office, trade, union, business and means of livelihood.

57. As a direct and proximate result of Amtrak's and MBTA's actions: Plaintiff was terminated from employment with Amtrak and the MBTA in all capacities. Plaintiff has suffered damage to his professional reputation and reputation generally with the result that new and further employment is unavailable to Plaintiff; gainful employment in Plaintiff's chosen profession particularly with reference to his experience is unavailable to Plaintiff; Plaintiff has lost opportunities of community involvement; Plaintiff has lost access to the usual terms, conditions and privileges of employment; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury due to loss of access to personal emotional resources; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of medical treatment; Plaintiff has lost medical insurance as an employee and for retirement; fellow union members are denying Plaintiff membership privileges and opportunities for union office; Plaintiff has fallen into bankruptcy.

58. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT THREE: INVASION OF PRIVACY

10

59. Plaintiff here repeats and realleges the allegations of Paragraph 1 through 58 of the complaint, the same as if said paragraphs were expressly restated here.

60. As stated above, Defendants, through their agents, engaged in a written and oral campaign to portray Plaintiff as a violent, dangerous and mentally unstable person.

61. As a direct and proximate result of actions of agents for Defendants and Amtrak, Amtrak intervened in Plaintiff's medical treatment and thereby disrupted and damaged Plaintiff's health and medical treatment.

62. By virtue of the willful conduct of the Defendants, the Defendants, through their agents, servants and employees, have put the Plaintiff in a false position in the public eye, attributed to Plaintiff views which he doesn't hold and has written, spoken and distributed false statements regarding Plaintiff's medical condition, state of mind and work performance abilities.

63. By virtue of the willful conduct of the Amtrak and the MBTA, Defendants have knowingly, willingly and intentionally induced the Plaintiff to reveal confidential matters relative to his diagnosis and treatment by his personal psychiatrist and physician and thereby caused injury and loss to the Plaintiff.

64. As a direct and proximate result of the willful conduct of Amtrak and MBTA: Plaintiff has suffered unreasonable, substantial and serious interference with his privacy in violation of M.G.L. 214 s. 1B.

65. As a direct and proximate result of the above mentioned wrongful conduct of Amtrak, MBTA and their agents, Plaintiff was scorned by his colleagues, exposed to contempt and has suffered injury to his career, termination from his position of employment and the loss of reputation and standing in the community, all of which

11

caused Plaintiff humiliation, severe depression, anxiety, worry, emotional distress and injury and other incidental and consequential damages and expenses.

66. As a direct and Proximate result of the above-mentioned wrongful conduct of Amtrak, MBTA and their agents, Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment and union membership in his chosen profession; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment including health benefits currently and upon retirement; Plaintiff is deprived of gainful employment generally.

67. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## V. DISCRIMINATION ON THE BASIS OF DISABILITY

## AMERICANS WITH DISABILITIES ACT; 42 U.S.C. S 12101 ET. SEQ.;

## MASSACHUSSETTS CIVIL RIGHTS ACT; M.G.L. c. 151b, REHABILITATION

## ACT OF 1973; 29 U.S.C. 701 ET. SEQ

## COUNT FOUR: UNILIZING STANDARDS OF CRITERIA, OR METHODS OF

## ADMINISTRATION THAT HAVE THE EFFECT OF DISCRIMINATION ON

## THE BASIS OF DISABILITY: 42 U.S.C. s. 12112 (3)(A);

12

68. Plaintiff here repeats and realleges the allegations of paragraph 1 through 67 of this Complaint, the same as if said paragraphs were expressly restated here.

69. On or about April 11, 2001 and at various times thereafter, members of the Amtrak Threat assessment Response Team (TART) considered Mr. DeModena's complaint that Plaintiff has threatened Mr. DeModena.

70. As part of their duties in assessing Mr. DeModena's complaint, the TART reviewed and evaluated written materials reportedly written by Plaintiff.

71. The TART team was unable to assess a threat by the Plaintiff or cause for Discipline.

72. On or about April 13, 2001, the TART and agents for Amtrak and MBTA decided that Mr. DeModena's statements that he felt threatened justified an order for Plaintiff to be Psychologically examined and tested for mental illness and mental instability.

## COUNT FIVE: UTILIZING STANDARDS OF CRITERIA, OR METHODS OF ADMINISTRATION THAT PERPETUATED THE DISCRIMINATION OF OTHERS THAT ARE SUBJECT TO COMMON ADMINISTRATIVE CONTROL.

### 42 U.S.C. s. 12112 (3)(B)

73. Plaintiff here repeats and realleges the allegations of paragraph 1 through 72 of this Complaint, the same as if said paragraphs were expressly restated here.

74. As a direct and proximate result of actions of agents of Amtrak and the MBTA, on April 13, 2001 Amtrak's TART team concluded that the Amtrak Workplace

Violence Policy required Tart to regard mental illness as a threat whether or not TART perceived a threat.

75. On or about April 13, 2001 Amtrak's TART team concluded that Amtrak's Workplace Violence Policy required the TART to regard any employee accused of threatening behavior to be regarded as having mental illness which poses a threat to that employee's self, other employees and the traveling public.

76. On or about April 13, 2001, agents of the MBTA and Amtrak and Amtrak's TART team concluded that Amtrak's Workplace Violence policy required the TART to have any employee accused of threatening behavior medically examined and tested for mental illness whether or not the TART perceived a threat.

77. By virtue of the willful conduct of Amtrak and the MBTA through their agents, servants and employees, Amtrak and MBTA have designed, administered and interpreted a Workplace Violence Policy with arbitrary criteria and methods of administration that permit Amtrak and the MBTA to arbitrarily and falsely accuse employees of violent behavior and regard said employees as mentally ill in violation of 42 U.S.C. s. 12112 (3)(A). As a direct and Proximate result of Amtrak's and MBTA's applications of such arbitrary and false assertions against Plaintiff: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions: Plaintiff has

14

suffered injury and will continue to suffer injury; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

78. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT SIX: LIMITING, SEGREGATING, OR CLASSIFYING AN EMPLOYEE IN A WAY THAT ADVERSELY AFFECTS THE OPPORTUNITIES OR STATUS OF SUCH APPLICANT OR EMPLOYEE BECAUSE OF THE DISABILITY OF SUCH APPLICANT OR EMPLOYEE: 42 U.S.C. 12112 (B)(1);

79. Plaintiff her repeats and realleges the allegations of paragraph 1 through 78 of this Complaint, the same as if said paragraphs were expressly restated here.

80. On or about May 3, 2001, agents of Amtrak and the MBTA directed Amtrak's Medical Director, Dr. Tim Pinsky to medically disqualify Plaintiff due to an alleged mental impairment.

81. On or about May 3, 2001, as a direct and proximate result of actions of agents and servants of Amtrak and the MBTA, Dr Pinsky prepared medical reports copied to various of Amtrak's and MBTA's employees in Amtrak's Health Services department and Corporate Headquarters and said reports falsely and maliciously stated that Plaintiff suffered from Bi-Polar and/or Personality disorder.

82. On or about May 3, 2001, Dr. Pinsky directed Marianne Letterio, Amtrak's Manager of Health Services to falsely inform O'Malley, DeModena and other agents of

15

Amtrak and MBTA that Dr. Pinsky deemed Plaintiff medically disqualified pending a psychiatric evaluation and psychological testing.

83. On or about May 3, 2001 and at various times thereafter, Dr. Pinsky alleged in reports to O'Malley, DeModena, William Rae and other employees and agents of Amtrak and MBTA that Plaintiff's alleged Bi-polar and/or Personality disorder posed a direct threat to Plaintiff's self and others.

84. On or about May 3, 2001, Letterio, acting under the direction of Pinsky, sent an electronic mail to O'Malley, DeModena, William Rae and other employees and agents of Amtrak and MBTA that Dr. Pinsky supported medical disqualification of Plaintiff because Plaintiff allegedly had Bi-polar and/or Personality disorder which allegedly posed a direct threat to Plaintiff's self and others.

85. On or about May 4, 2001 O'Malley medically disqualified Plaintiff from service in his position as Locomotive Engineer in Commuter Rail because Plaintiff allegedly had Bi-polar and/or Personality disorder which allegedly posed a direct threat to Plaintiff's self and others.

86. In investigation held on April 23, 2002 O'Malley admitted that when O'Malley disqualified Plaintiff from service in Plaintiff's position as Locomotive Engineer in commuter rail, O'Malley did not believe that any materials written by Plaintiff were threatening in any way.

87. In investigation held on April 23, 2002 O'Malley admitted that when O'Malley disqualified Plaintiff from service in Plaintiff's position as Locomotive Engineer in Commuter Rail, O'Malley did not believe that any materials written by Plaintiff were intended to communicate threats.

16

88. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff as suffering from mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder.

89. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff with having an impairment caused by mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder.

90. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff to be suffering from mental illness.

91. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff with a severe psychiatric disorder and/or bi-polar disorder and /or personality disorder.

92. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff as having an impairment due to mental illness and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder that substantially limits Plaintiff's ability to work.

93. At all times subsequent to on or about May 3, 2001 and relevant to this complaint, O'Malley has regarded Plaintiff as having an impairment due to mental illness and/or a severe psychiatric disorder and/or a severe psychiatric disorder and/or bi-polar disorder and/or personality disorder that substantially limits Plaintiff's ability to work.

94. By virtue of the willful conduct of O'Malley, DeModena, Rae and other agents and employees of Amtrak and MBTA, Amtrak and MBTA, through their agents, servants and employees, have medically disqualified Plaintiff from his position as

17

Locomotive Engineer in commuter rail service and by so doing, Amtrak and MBCR have limited, segregated and classified Plaintiff in a way that adversely affects his opportunities and status as Locomotive Engineer on the basis of the alleged mental disability of Plaintiff with Which Amtrak and MBTA regard Plaintiff. Amtrak and MBTA have collected false information about and have otherwise collected or maintained more personal data on Plaintiff than are reasonably necessary for the performance of Defendant's statutory functions in violation of M.G.L. 66A s 1 and 2 … As a direct and proximate result of Amtrak's and MBTA's action: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession: Plaintiff is deprived of opportunities or community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

95. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT SEVEN: EXAMINATIONS AND INQUIRIES DESIGNED TO SCREEN OUT INDIVIDUALS WITH A DISABILITY, 42 U.S.C. s 12112 (b)(7): MEDICAL EXAMINATIONS AND INQUIRIES DESIGNED TO SCREEN OUT AND

18

## DISCRIMINATE AGAINST INDIVIDUALS WITH A DISABILITY, 42 . s. 12112 (D)(1), 42 U.S.C. s. 122112 (d) (4); VIOLATION OF RIGHTS OF A MENTALLY ILL PERSON U.S.C. 42 s 10841

96. Plaintiff here repeats and realleges the allegations of paragraph 1 through 95 of this Complaint, the same as if said paragraphs were expressly restated here.

97. On various occasions between on or about May 4, 2001 and on or about September 10, 2001 O'Malley and Pinsky (through his subordinate Letterio) directed Plaintiff to undergo psychiatric evaluations and extensive psychological testing to be conducted and arranged by Dr. Russell Vasile.

98. Dr. Russell Vasile is a practicing psychiatrist licensed to practice psychiatry by the Commonwealth of Massachusetts Board of Registration in Medicine

99. On or about May 20, 2001, Plaintiff's personal physician advised Plaintiff against submitting to Defendant's requirements for psychiatric evaluation and extensive psychological testing.

100. On or about May 24, 2001, Plaintiff wrote to Pinsky at 30th Street Station in Philadelphia, Pennsylvania and asked Pinsky for Plaintiff's medical file.

101. On or about May 24, 2001, Plaintiff wrote to Pinsky and asked Pinsky to substantiate specific medical basis for Amtrak and MBTA to disqualify Plaintiff from commuter rail service as locomotive engineer.

102. On or about May 24, 2001, Plaintiff wrote to Pinsky and asked Pinsky to substantiate specific medical credentials qualifying Defendant and Pinsky to disqualify Plaintiff

19

103. Plaintiffs requests to Pinsky specified in allegations 100, 101 and 102 were repeated as Freedom of Information Act requests on July 27, 2001.

104. Neither Amtrak, MBTA nor Pinsky answered requests made of Amtrak, MBTA and Pinsky in allegations 100 through 103.

105. On or about April 4, 2002, April 23, 2002, April 24, 2002 and May 7, 2002, Rae and Deborah Gaines, Defendant hearing officer acting as agent of Amtrak and MBCR, conducted an investigation, to reveal alleged mental impairments that would allegedly prevent Plaintiff from safely performing the duties of Locomotive Engineer

106. As a direct and proximate result of Pinsky's and O'Malley's actions and omission, Amtrak and the MBTA, through their agents, servants and employees have: obstructed and impeded Plaintiff's access to information which is necessary to address personal health maintenance and remedies; wantonly and maliciously invaded Plaintiff's personal and private affairs: attempted to expose Plaintiff's personal emotions, shames, fears and feelings up to scorn, ridicule and humiliation in violation of M.G L. 214 s. 1B; interfered with Plaintiff's personal health maintenance and treatment in violation of 42 U.S.C. s. 12112 (b)(7) endangered Plaintiff with frivolous neglectful medical intervention; distorted and released confidential medical information in violation of M.G.L.C. 233 20B. and M.G.L. c. 66A ss. 1 and 2 in order to exacerbate and disable Plaintiff's medical condition; and drive Plaintiff from usual means of employment. Plaintiff was coerced to submit to examinations without legitimate business or medical basis. Plaintiff was denied access, upon request, to medical and mental health care records in violation of M.G.L c. 661 ss. 1 and 2 and U.S.C. 42 ss. 10841 (1)(G) and (1)(I). As a direct and proximate result of Amtrak's and MBTA's actions Plaintiff has

suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession: Plaintiff is deprived of gainful employment generally; and Plaintiff is suffering from severe emotional distress with physical repercussions. Plaintiff requires medical treatment and is deprived of medical treatment and is unable to procure medical treatment.

107. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT EIGHT; HARASSMENT AND DENIAL OF REQUESTS FOR REASONABLE ACCOMODATION: 42 U.S.C. s. 12112 (5)(a); DENIAL OF RIGHT OF INFORMED CONSENT AND PARTICIPATION OF MENTALLY ILL PERSON IN PLANNING OF MENTAL HEALTH TREATMENTS AND PROCEDURES, DENIAL OF RIGHT TO ACCESS, UPON REQUEST, TO MENTAL HEALTH RECORDS 42 U.S.C. s. 10841 (C) (i-vi)(D)(H)(I)

108. Plaintiff here repeats and realleges the allegations of paragraph 1 through 107 of this Complaint, the same as if said paragraphs were expressly restated here.

109. On or about June 14, 2001, Plaintiff advised O'Malley that O'Malley's intervention in Plaintiff's medical affairs was medically harmful.

110. On or about June 27, 2001, Plaintiff and Michael J. O'Bryan, Plaintiff's union representative met with Dr. Russell Vasile and Plaintiff asked Vasile for an explanation of specific medical basis for disqualification of Plaintiff.

111. On or about June 27, 2001 Plaintiff and O'Bryan met with Vasile and Plaintiff asked Vasile for reasonable accommodation in evaluating Plaintiff's medical condition. Specifically, besides asking for explanation of specific medical basis for disqualification of Plaintiff, Plaintiff asked for the opportunity to confront Defendant employee's directly to answer any concerns about "materials reportedly written by [Plaintiff]". Plaintiff also asked that any examination address only specific medical concerns of which Plaintiff would be informed in writing.

112. On or about June 27, 2001 Vasile told Plaintiff and O'Bryan that Vasile would have to speak to Amtrak to suggest that Amtrak should find some other resolution to Amtrak's disagreements with Plaintiff that would not require Plaintiff to undergo a forced, Non-confidential psychiatric evaluation and extensive psychological testing.

113. On or about July 16, 2001 Vasile suggested to Pinsky that Amtrak should find resolution to Amtrak's disagreements with Plaintiff that would not require Plaintiff to undergo a forced, non-confidential psychiatric evaluation and extensive psychological testing.

114. On or about July 16, 2001 Pinsky refused to accept Vasile's suggestion and asked Vasile to write a letter Amtrak falsely stating that Plaintiff refused to undergo psychiatric evaluation.

115. On or about July 16, 2001 Vasile wrote a letter to Amtrak's Health Services Department falsely stating that Plaintiff declined to submit to psychiatric evaluation.

116. On or about July 24, 2001 O'Malley refused Plaintiff's requests for reasonable accommodation and falsely accused Plaintiff of refusing to cooperate with "the physician" on June 27, 2001.

22

117. As a direct and proximate result of Amtrak's and MBTA's intentional denial of reasonable accommodation in violation of 42 U.S.C. s. 12112 (5)(A), Plaintiff is exposed to intentional defamation and stigmatization by Amtrak and MBTA. Plaintiff is deprived of means to guarantee protection of Plaintiff's own health and well-being, Plaintiff has suffered damage to his professional reputation and reputation generally, Plaintiff is deprived of gainful employment in his chosen profession, Plaintiff is deprived of gainful employment generally and Plaintiff is suffering from sever emotional distress with physical repercussions.

118. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT NINE: RETALIATION: COERCION, INTERFERENCE AND INTIMIDATION: SABOTAGE OF MITIGATING MEASURES: 42 U.S.C. s. 12112(5)(B), U.S.C. s. 12203 (a), 42 U.S.C. s. 12203 (b), DENIAL OF RIGHT OF GRIEVANCE OF MENTALLY ILL PERSON AND REPRISAL 42 U.S.C. s. 10841 (1)(L)(N).

119. Plaintiff here repeats and realleges the allegations of paragraph 1 through 118 of this Complaint, the same as if said paragraphs were expressly restated here.

120. Beginning on or about January 25, 1985, Plaintiff consulted with Dr. Martha Stark of 4 Ripley Road in Newton, Massachusetts.

23

121. At various times from on or about January 25, 1985, Plaintiff has consulted Dr. Martha Stark for medical evaluations and assistance in monitoring, controlling and treating for possible signs and symptoms of mental illness.

122. At various times from 1983 until on or about May 17, 2001, Plaintiff advised Amtrak that he was monitoring his mental health by consulting professional resources.

123. At various times from on or about February 1, 1995 Plaintiff has consulted with Dr. Ann Gurian of Cambridge, Massachusetts while continuing to consult with Dr. Martha Stark and Plaintiff consulted with both doctors in order to continue monitoring and maintaining his mental health.

124. On or about June 27, 2001, Plaintiff spoke with Dr. Russell Vasile to request reasonable accommodation militating against any threat to Plaintiff that might be caused by forced non-confidential psychiatric evaluation and forced non-confidential psychological testing. As part of such accommodation Plaintiff requested that he be able to discuss concerns of Amtrak officials directly with said officials voicing such concerns about Plaintiffs mental health and written materials.

125. On or about June 27, 2001 and at various times between June 27, 2001 and September 10, 2001, Plaintiff spoke with Vasile or wrote to Dr. Timmy Pinsky to request reasonable accommodation in that Plaintiff requested his medical file and an opportunity to confront Amtrak's medical concerns independently through alternate medical resources before discussing evaluation with Pinsky or Vasile.

126. On or about August 16, 2001, Plaintiff asked Dr. Russell Vasile for reasonable accommodation in the form of limited disclosure of confidential information from evaluations or extensive and extensive psychological testing.

127. On or about July 27, 2001 and on various other occasions between May 4, 2001 and September 10, 2001, Vasile declined to discuss with Plaintiff any reasonable accommodation that would militate against any threat to Plaintiff that would be caused by non-confidential psychiatric evaluation and extensive psychological testing.

128. On or about July 27, 2001, Vasile declined to discuss scheduling of evaluation with Plaintiff.

129. On or about July 31, 2001 Plaintiff requested reasonable accommodation from Amtrak and Dr. Pinsky Whereby Plaintiff would be allowed to answer concerns directly to Amtrak about "materials reportedly written by [Plaintiff]".

130. On various occasions between July 27, 2001 and September 10, 2001 Plaintiff conducted telephone conversations with Vasile in which Plaintiff requested reasonable accommodation whereby a limited report could be made by Vasile to Amtrak in which report only information assuring Plaintiff's qualification for service would be necessary.

131. At various times between on or about July 27, 2001 and September 10, 2001, Vasile declined to discuss special accommodations.

132. At various times between on or about June 27, 2001 and September 10, 2001, Vasile told Plaintiff that Vasile would tell Amtrak to get another doctor.

133. At various times between on or about July 27, 2001 and September 10, 2001, Vasile discussed Plaintiff's proposed reasonable accommodations with Pinsky.

134. At various times between on or about June 27, 2001 and September 10, 2001 Pinsky asked Vasile to write a letter to Amtrak's Health Services Department falsely stating that Plaintiff decided not to present for evaluation".

135. On or about June 14, 2001, Plaintiff asked O'Malley for reasonable accommodation in a request to address medical concerns with Amtrak's Medical Department free of Mr. O'Malley's intervention.

136. In response to Plaintiffs requests for reasonable accommodation and at various times beginning on or about June 4, 2006, O'Malley wrote letters to Plaintiff accusing Plaintiff of "refusing to cooperate with the physician".

137. Beginning on or about June 4, 2006, O'Malley wrote letters to Plaintiff threatening Plaintiff with dismissal for asking for reasonable accommodation.

138. On or about August 28, 2001, Vasile wrote a letter to Amtrak's Health Services Department and falsely stated that Plaintiff "decided not to present for evaluation".

139. On or about September 10, 2001, O'Malley began formal proceedings to charge Plaintiff with insubordination in which Amtrak and MBTA portrayed Plaintiff's requests for reasonable accommodation as insubordination.

140. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Amtrak and MBTA issued a decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Plaintiff believed Plaintiff himself to be Lucifer, Prince of Darkness.

141. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Amtrak and MBTA issued a decision letter in response to O'Malley's charges of

Plaintiff's alleged insubordination in which Gaines declared Plaintiff to be suffering from Bi-Polar disorder or Personality Disorder.

142. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Amtrak and MBTA issued a decision letter in response to O'Malley's charges of Plaintiff's insubordination in which Gaines declared that Plaintiff was insubordinate when Plaintiff asked for reasonable accommodation.

143. On or about May 13, 2002, Deborah Gaines, Hearing Officer in service to Amtrak and MBTA issued a decision letter in response to O'Malley's charges of Plaintiffs alleged insubordination in which Gaines declared that Gaines credited Plaintiff's testimony that Plaintiff believed that submission to a forced non-confidential psychiatric evaluation would cause Plaintiff injury and harm.

144. On or about May 13, 2002, Francis J. O'Connor, Assistant General Manager in service to Amtrak and MBTA, dismissed Plaintiff in all capacities in Plaintiff's position as Locomotive Engineer in Massachusetts commuter rail service.

145. When Plaintiff asked for special accommodations from Amtrak and MBTA, Amtrak and MBTA retaliated against Plaintiff by charging Plaintiff with insubordination, terminating Plaintiff from employment as Locomotive Engineer in Massachusetts commuter rail service and denying Plaintiff his seniority rights and contractual rights to employment with Amtrak, MBTA and MBCR.

146. By denying Plaintiff's requests for special accommodation Agents of Amtrak, MBTA and MBCR have denied Plaintiff the right: to appropriate and available alternative treatments, services and types of providers of mental health services; the right to appropriate treatment and related services in a setting and under conditions that are the

most supportive of Plaintiff's personal liberty; to an individualized, written treatment of service plan; to any appropriate and available alternative treatments, services and types of providers of mental health services; not to receive a mode or course of treatment, established pursuant to a treatment plan, in the absence of Plaintiff's informed, voluntary, written consent to such mode or treatment; to access, upon request, to Plaintiff's mental health care records.

147. As a direct and proximate result of Amtrak, MBTA and MBCR's intentional retaliation against Plaintiff, Plaintiff is deprived of means of protection of health and well-being, Plaintiff is defamed, misrepresented and stigmatized, Plaintiff has suffered damage to his professional reputation and reputation generally, Plaintiff is deprived of gainful employment in his chosen profession, Plaintiff is deprived of gainful employment generally and Plaintiff is suffering from severe emotional distress with physical repercussions.

148. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT TEN: DISCRIMINATION GENERALLY: 42 U.S.C. s. 12112

149. Plaintiff here repeats and realleges the allegations of paragraph 1 through 148 of this Complaint, the same as if said paragraphs were expressly restated here.

150. On or about April 11, 2001, DeModena and other agents of Amtrak and MBTA, prepared workplace violence reports which distorted, stigmatized and

28

characterized Plaintiff's ideas, religious beliefs and writings as the ideas, religious beliefs and writings of a mentally ill person.

151. By electronic mail letter dated on or about April 13, 2001, Mr. Lou DePhillips, Labor Relations officer for Amtrak and MBTA, outlined a ruse or "scenario" for a chain of events that would lead to Plaintiff's disqualification and termination from employment and all other rights, terms and conditions of employment because DeModena, DePhillips, and O'Malley "have concern for [Plaintiff's] own well-being and, by extension, the traveling public".

152. On or about July 1, 2003, MBTA and MBCR denied Plaintiff's right to a position as Locomotive Engineer in commuter rail service on information and recommendation from MBCR Labor Relations Officer Christa Cupernall and other employees and former employees of Amtrak, MBTA and MBCR that falsely claimed Plaintiff is violent and dangerous due to mental illness.

153. By virtue of the willful conduct of Amtrak, MBTA and MBCR, through their agents, servants and employees, Amtrak, MBTA and MBCR have written and distributed false statements regarding Plaintiff's medical condition, state of mind and performance abilities in order to discredit Plaintiff in union activities and community involvement. Amtrak, MBTA and MBCR, through their agents, servants and employees, have knowingly, willingly and intentionally libeled and defamed Plaintiff intending to prejudice Plaintiff in his reputation, community standing, office, trade, Business and means of livelihood. Defendants have disrespected Plaintiff's individual dignity personal responsibility, self-determination, and pursuit of meaningful career in violation of the Rehabilitation Act of 1973; 29 U.S.C. s. 701 (c) (1). As a direct and proximate result of

29

the actions of Amtrak, MBTA and MBCR: Plaintiff has suffered damage to his professional reputation and reputation generally; Plaintiff is deprived of gainful employment in his chosen profession; Plaintiff is discriminated against on the basis of disability in regard to discharge of Plaintiff in violation of 42 U.S.C. s. 12112; Plaintiff is deprived of opportunities of community involvement; Plaintiff is deprived of access to the usual terms, conditions and privileges of employment; Plaintiff is deprived of gainful employment generally; Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff has suffered injury and will continue to suffer injury; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of such treatment.

154. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

### COUNT ELEVEN:

### INTERFERENCE WITH RIGHTS

### M.G.L. c. 12, ss. 11H, 11I; M.G.L. 265 s. 37

155. Plaintiff here repeats and realleges the allegations of paragraph 1 through 154 of this Complaint, the same as if said paragraphs were expressly restated here.

156. Throughout the period of Plaintiff's employment with Amtrak and with the MBTA, the Plaintiff actively participated in railroad unions by means of written discussions designed to promote safe and effective rail transportation service.

30

157. Throughout the period of Plaintiff's employment with Amtrak and the MBTA, Plaintiff actively participated in railroad unions by means of written discussions designed to promote rail worker and rail administrator compliance with railroad company rules, policies and procedures.

158. Throughout the period of Plaintiff's employment with Amtrak and the MBTA, Plaintiff actively participated in railroad unions by means of written discussions designed to promote rail worker and rail administrator compliance with federal regulations.

159. Plaintiff's written discussion include a variety of literary techniques including: fictional and literary references; religious, philosophical and moral references; allegory, satire, metaphor, simile, etc.

160. At various times, beginning on or about April 25, 2000, DePhillips, DeModena, O'Malley and other administrative agents of Amtrak, MBTA and MBCR began a campaign to inhibit and quell Plaintiff's union and safety campaigns.

161. At various times, beginning on or about April 25, 2000, DePhillips, DeModena, O'Malley and other administrative agents of Amtrak, MBTA and MBCR began a campaign to inhibit and prevent Plaintiff from running for union office.

162. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servants and employees of Amtrak, MBTA and MBCR created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and characterized Plaintiff's ideas, religious beliefs and writings as the ideas, religious beliefs and writings of a mentally ill person.

31

163. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servants and employees of Amtrak, MBTA and MBCR created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and interpreted Plaintiff's ideas, religious beliefs and writings as threats.

164. On or about April 11, 2001 and at various times thereafter, De DeModena, DePhillips, O'Malley and other agents, servants and employees of Amtrak, MBTA and MBCR accused Plaintiff of workplace violence for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions.

165. On or about May 4, 2001, Pinsky, O'Malley and agents of Amtrak and MBTA medically disqualified Plaintiff from employment in his position as locomotive engineer with Amtrak and MBTA for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other Unions.

166. Beginning on or about April 4, 2001, agents of Amtrak, MBTA and MBCR harassed, retaliated against Plaintiff and otherwise coerced Plaintiff with orders to publicly expose and reveal private matters and personal medical information for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions.

167. Beginning on or about September 10, 2001, agents of Amtrak, MBTA and MBCR subjected Plaintiff to internal investigation and charges of insubordination for

writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

168. On or about May 13, 2001, agents, servants and employees of Amtrak and the MBTA terminated Plaintiff from his employment with Amtrak and MBTA as Locomotive Engineer because Plaintiff wrote a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE.

169. As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR, Defendants have, by force, threat of force willfully injured, intimidated, interfered with, oppressed and threatened Plaintiff in the free exercise and enjoyment of rights and privileges secured to Plaintiff by the constitution and laws of the United States of America and the Commonwealth of Massachusetts including, but not limited to the right of free, speech and assembly (Amendment 1 of the Constitution of the United States of America), the right to toil in Plaintiffs chosen profession and the right to organize and participate in a railway labor organization (U.S.C. 45 s. 151 et. seq.).

170. As a direct and proximate result of actions of agents, servants and employs of Amtrak, MBTA and MBCR, Plaintiff has been unlawfully, illegally, improperly and maliciously deprived of his means of livelihood and all opportunity for Plaintiff to procure work of equal dignity and character has been foreclosed to Plaintiff, and Plaintiff has been humiliated and suffered great pain, and endured great mental suffering.

171. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

### COUNT TWELVE; UNFAIR LABOR PRACTICES U.S.C. 45 ss 151 et. seq.

172. Plaintiff here repeats and realleges the allegations of paragraph 1 through 171 of this Complaint, the same as if said paragraphs were expressly restated here.

173. On or about April 11, 2001 and at various times thereafter, DeModena DePhillips, O'Malley and other agents, servants and employees of Amtrak, MBTA and MBCR distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and characterized Plaintiff's union activities as the activities of a mentally ill person.

174. On or about April 11, 2001 and at various times thereafter, DeModena DePhillips and O'Malley and other agents, servants and employees of Amtrak, MBTA and MBCR created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and interpreted Plaintiff's union activities as threats.

175. On or about April 11, 2001 and at various times there after, DeModena DePhillips, O'Malley and other agents, servants and employees of Amtrak, MBTA and MBCR accused Plaintiff of workplace violence for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions.

176. On or about May 4, 2004, agents of Amtrak, MBTA medically disqualified Plaintiff from employment in his position as Locomotive Engineer for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of BLE and other unions.

177. Beginning on or about April 4, 2001, Agents of Amtrak and Defendants harassed, retaliated against Plaintiff and otherwise coerced Plaintiff with orders to publicly expose and reveal private matters and personal medical information for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions.

178. Beginning on or about September 10, 2001, agents of Amtrak and MBTA subjected Plaintiff to internal investigation and charges of insubordination for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions.

179. On or about May 13, 2002, Agents of Amtrak and MBTA terminated Plaintiff from his employment as Locomotive Engineer because Plaintiff wrote a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions.

180. As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR, Amtrak, MBTA and MBCR have by force

35

and threat of force willfully injured, intimidated, interfered with, oppressed and threatened Plaintiff in the free exercise and enjoyment of rights and privileges secured to Plaintiff by the Railway Labor Act (U.S.C. 45 ss. 151 et.seq.).

181. As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR: Amtrak, MBTA and MBCR have by force and threat of force willfully injured, intimidated, interfered with, Plaintiff's right to organize, join or assist a union or engage in collective bargaining and the adjustment of grievances.

182. As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR, Plaintiff has been unlawfully, illegally, improperly and maliciously retaliated against for filing grievances and engaging in union discussion.

183. As a direct and proximate result of actions of agents, servants and employs of Amtrak, MBTA and MBCR, Plaintiff has been unlawfully, illegally, improperly and maliciously deprived of his means of livelihood and all opportunity for Plaintiff to procure work of equal dignity and character has been foreclosed to Plaintiff, and Plaintiff has been humiliated and suffered great pain, and endured great mental suffering.

184. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT THIRTEEN:

36

## DISCRIMINATION ON THE BASIS OF RELIGION

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, U.S.C. ss. 2000e et. Seq.

## U.S.C. 42 ss. 1983: U.S.CONSTITUTION AMENDMENT 1; M.G.L. 151B

185. Plaintiff here repeats and realleges the allegations of paragraph 1 through 184 of this Complaint, the same as if said paragraphs were expressly restated here.

186. On or about April 4, 2001, Plaintiff expressed aspects of his personal moral, ethical and political beliefs in letter to BLE Local Chairman O'Bryan and other union members.

187. More specifically, in his letter of on or about April 4, 2001, Plaintiff expressed belief in spiritual forces exerting positive and negative moral, spiritual and ethical influence on human beings.

188. In his letter of on or about April 4, 2001, Plaintiff used standard cultural and religious expressions of God and, conversely, Satan or Lucifer, Prince of Darkness to refer to the positive and negative spiritual forces in which Plaintiff beliefs.

189. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other Agents, servants and employees of Amtrak and Defendants created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and characterized Plaintiff's religious beliefs (as expressed in Plaintiff's letter of on or about April 4, 2004) as the indicators of a mental illness.

190. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servants and employees of Amtrak and the

37

Defendants created, distributed and promoted Workplace Violence complaints and reports which distorted, stigmatized and interpreted Plaintiff's religious beliefs as threats.

191. On or about April 11, 2001 and at various times thereafter, DeModena, DePhillips, O'Malley and other agents, servants and employees of Amtrak and the Defendants accused Plaintiff of workplace violence because Plaintiff wrote a letter expressing personal religious beliefs to BLE Local Chairman O'Bryan, and fellow members of the BLE which DeModena and DePhillips characterized as threatening.

192. On or about May 4, 2001, agents of Amtrak and MBTA medically disqualified Plaintiff from employment in his position as locomotive engineer for writing a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions which personal ideas, political and moral principles, personal philosophies and religious beliefs Amtrak, MBTA and MBCR stigmatized and characterized as threatening.

193. Beginning on or about April 4, 2001 agents and employees of Amtrak and the Defendants harassed, retaliated against and otherwise coerced Plaintiff with orders to publicly expose and reveal private matters and personal medical information because Plaintiff had written a letter expressing Plaintiff's personal religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE which personal religious beliefs Amtrak, MBTA and MBCR characterized as threatening.

194. Beginning on or about September 10, 2001, agents of Amtrak and MBTA subjected Plaintiff to internal investigation and charges of insubordination for writing a

38

letter expressing personal religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions.

195.  On or about May 13, 2002, Agents of Amtrak and MBTA terminated Plaintiff from his employment as Locomotive Engineer because Plaintiff wrote a letter expressing personal ideas, political and moral principles, personal philosophies and religious beliefs to BLE Local Chairman O'Bryan and fellow members of the BLE and other unions, which Amtrak and Defendants characterize as threatening.

196.  As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR, Amtrak, MBTA and MBCR have by force and threat of force willfully injured, intimidated, interfered with, oppressed and threatened Plaintiff in the free exercise and enjoyment of religion secured to Plaintiff by Title VII of the Civil Rights Act of 1964 and the First Amendment to the Constitution of the United States of America.

197.  As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR, Plaintiff has been unlawfully, illegally, improperly and maliciously retaliated against for freely expressing his religion and practicing its moral precepts.

198.  As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR, Plaintiff has been unlawfully, illegally, improperly and maliciously retaliated against for freely expressing his religious views and practicing its moral precepts.

199.  As a direct and proximate result of actions of agents, servants and employs of Amtrak, MBTA and MBCR, Plaintiff has been unlawfully, illegally, improperly and

maliciously: discriminated against for his religious views; deprived of his means of livelihood and all opportunity for Plaintiff to procure work of equal dignity and character has been foreclosed to Plaintiff; and Plaintiff has been humiliated and suffered great pain, and endured great mental suffering.

200. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT FOURTEEN

## PERSONAL INJURY: FEDERAL EMPLOYERS LIABILITY ACT, 45 U.S.C. s. 51 et seq.; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

201. Plaintiff here repeats and realleges the allegations of paragraph 1 through 200 of this Complaint, the same as if said paragraphs were expressly restated here.

202. For the purpose of carrying on commerce, Amtrak maintained a railway within Massachusetts and connecting to railway services maintained by the Amtrak throughout the continental United States. MBTA has operated trains over this railway between Massachusetts and Rhode Island.

203. Amtrak and MBTA have engaged in said commerce at all times relevant to this complaint.

204. The Plaintiff was employed by Amtrak and the MBTA in such commerce on April 11, 2001.

40

205. On or about April 11, 2001 DeModena and DePhillips maliciously and intentionally filed a false workplace violence complaint in order to coerce Plaintiff to undergo a non-confidential psychiatric exam and psychological testing.

206. Agents, servants and employees of Amtrak, MBTA and MBCR maintain and execute policies that wantonly, arbitrarily and maliciously permit Amtrak, MBTA and MBCR to falsely, arbitrarily and maliciously label, stigmatize arbitrarily disfavored employees and persons under their administrative control as persons mentally ill and posing a direct threat to such stigmatized employee's selves, fellow employees and the public at large.

207. Agents of Amtrak and MBTA have em0loyed registered osteopath Dr. Timmie Pinsky (who is registered by the Pennsylvania Bureau of Professional and Occupational Affairs, State Board of Osteopathic Medicine) and the psychiatrist Dr. Russell Vasile (who is registered by the Massachusetts Board of Registration in Medicine and said physicians are hired as experts in their fields employed for the purpose of falsely using there credentials to falsely legitimize stigmatization of disfavored employees and falsely medically label, defame, diagnose and otherwise asses disfavored employees as mentally ill persons posing a direct threat to themselves, their fellow employees and the public at large.

208. Amtrak, MBTA and MBCR through their agents Pinsky, Vasile and other agents, servants and employees, have used the publicly recognized credentials of Pinsky and Vasile to falsely label, stigmatize and otherwise assess the Plaintiff as a mentally ill person posing a direct threat to himself, his fellow employees and the public at large.

41

209. Amtrak and the Defendants, through their agents Pinsky, Vasile and others have falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use its administrative control over Plaintiff to induce Plaintiff to forgo fundamental rights and privileges, including rights of privacy and confidentiality in order that Defendants can wantonly and maliciously explore, reveal and publicly expose the full breadth of Plaintiff's conscious and unconscious feelings and attitudes.

210. Amtrak and Defendants, through their agents Pinsky, Vasile and others, have falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person Amtrak and Defendants, through their agents Pinsky, Vasile and others have falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use its administrative control over plaintiff to induce Plaintiff to forgo fundamental rights and privileges including rights of privacy and confidentiality in order to wantonly and maliciously explore, reveal and publicly expose Plaintiff's entire conscious and unconscious self including his personal and private conscious and unconscious dreams, fantasies, sins and shame.

211. Amtrak and Defendants, through their agents Pinsky, Vasile and others have falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use it administrative control over plaintiff to induce plaintiff to forgo fundamental rights and privileges including rights of privacy and confidentiality and special accommodation in order to wantonly and maliciously interfere with psychotherapist-patient relationship between Plaintiff and Plaintiff's personal

42

physician; and likewise, to interfere with the psychotherapist-patient privilege of Plaintiff and Plaintiff's personal physician.

212. Amtrak, MBTA and MBCR, through their agents Pinsky, Vasile and others, have falsely and publicly labeled, stigmatized and otherwise assessed the Plaintiff as a mentally ill person in order to use their administrative control over the Plaintiff to induce Plaintiff to forgo fundamental rights and privileges including rights of privacy and confidentiality and thereby to wantonly and maliciously injure Plaintiff and undermine Plaintiff's health, safety and medical treatment.

213. As a direct and proximate result of the actions of Amtrak, MBTA and MBCR, Plaintiff lives in constant fear that Plaintiff's personal and private self, including Plaintiff's personal and private conscious and unconscious feelings, attitudes, dreams fantasies, sins and shames may be laid bare and revealed to the whole world by other persons and institutions of authority, power, government and employment.

214. As a direct and proximate result of actions of agents of Amtrak, MBTA and MBCR, Plaintiff suffers and increased inability to trust in others or to obtain effective psychiatric treatment and to enjoy fundamental freedoms and opportunities.

215. As a direct and proximate result of actions of agents and employees of Amtrak, MBTA and MBCR, Plaintiff suffers and increased inability to form belief and value systems and to engage in rational thought.

216. By virtue of the willful conduct of DeModena, DePhillips, O'Malley, Rae, O'Connor, Pinsky, Vasile and others, acting as agents of Amtrak, MBTA and MBCR, Plaintiff is suffering from severe emotional distress with physical repercussions; Plaintiff

has suffered injury and will continue to suffer injury; Plaintiff requires medical treatment, will continue to require medical treatment and is deprived of means of medical treatment.

217. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## COUNT FIFTEEN:

## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY:

218. Plaintiff here repeats and realleges the allegations of paragraph 1 through 217 of this Complaint, the same as if said paragraphs were expressly restated here.

219. On or about April 4, 2001 Plaintiff publicized personal ideas, political and moral principles, personal philosophies and religious beliefs in a letter to Plaintiff's union chairman O'Bryan and fellow members of Plaintiff's union members in an effort to encourage compliance with federal regulations and Amtrak's safety policies.

220. On or about April 11, 2001, DePhillips, DeModena, O'Malley and other agents, servants and employees of Amtrak and Defendants became concerned that Plaintiff's letter of April 4, 2001 exposed non-compliance with federal regulation.

221. On or about April 1, 2001, DePhillips, DeModena, O'Malley and other agents servants and employees of Amtrak and the MBTA exposed Amtrak's and MBTA's non-compliance with federal regulation.

222. On or about April 11, 2001, DePhillips, DeModena, O'Malley and other agents servants and employees of Amtrak and the MBTA communicated the desire to

44

quell Plaintiff's writings and union activities because Plaintiff's writings and activities expose Defendant's non-compliance with federal regulations.

223. On or about April 13, 2001, DePhillips, DeModena, O'Malley and other agents servants and employees of Amtrak and MBTA created a ruse or "scenario" by which Defendant would use Defendant's Workplace violence policy to falsely color Plaintiff's letter of on or about April 4, 2001 as a threat of violence leading to the termination of Plaintiff from employment in violation of public policy.

224. On or about May 13, 2002, Amtrak and MBTA, through their agents, servants and employees, wrongfully discharged Plaintiff from his position with Defendant corporation in violation of public policy under a pretext of workplace violence.

225. By contract with MBCR and Amtrak, MBTA has accepted liability for these damages. By contract with MBTA and Amtrak, MBCR has accepted liability for damages continuing after July 1, 2003. By contract with MBCR, MBTA has agreed to indemnify MBCR against damages continuing after July 1, 2003 resulting from Amtrak's actions.

## LEAVE TO AMEND COMPLAINT

226. Plaintiff hereby seeks leave to amend this complaint should any new cause are causes of action arise out of the original transactions, occurrences or omissions, including cause for action based on Duties of Fair Representation, when such cause or causes come to light.

## PRAYER FOR RELIEF

Wherefore the Plaintiff demands judgment against defendants for injunctive relief permitting entrance to public access areas of North Station and South Station as Plaintiff needs or desires including to engage in legal union related activities.

Furthermore, the Plaintiff demands: reinstatement, back pay, and full rights and privileges commensurate with his seniority rights; vacation rights commensurate with continuous railroad service from October 8, 1979; and judgment against defendants for damages and such other relief as this Honorable Court deems just.

### DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury.

**Respectfully submitted,**

Date: December 18, 2006

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA  02116-6008
Work:  617/727-2310 ext. 7045
Home: 617/536-0772

46

**Certificate of Service**

Joseph T. Carmack hereby certify that I have on December 18, 2006 served a true copy of the foregoing document by First Class U.S. Mail to Robert K. Blaisdell, Attorney for Massachusetts Bay Commuter Railroad Company ate One Beacon St. Suite 1320 Boston, MA 02103-3113

Date:  December 18, 2006

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA  02116-6008
Work: 617/727-2310 ext. 7045
Home: 617/536-0772

Joseph T. Carmack hereby certify that I have on December 18, 2006 served a true copy of the foregoing document by First Class U.S. Mail to Todd Valicenti, Attorney for Massachusetts Bay Transportation Authority at 10 Park Plaza Room 3910, Boston, MA 02116.

Date:  December 18, 2006

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA  02116-6008
Work: 617/727-2310 ext. 7045
Home: 617/536-0772

47