UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Joseph T. Carmack<br>            Plaintiff, Pro Se | )<br>)<br>) |
| v. | ) Civil Action No. 05-11430-PBS<br>)<br>) |
| Massachusetts Bay Transportation Authority | )<br>) |
| and | )<br>) |
| Massachusetts Bay Commuter Railroad Co. | )<br>) |
| Defendants | ) |

## PLAINTIFF JOSEPH T. CARMACK'S OPPOSITION TO MASSACHUSETTS BAY COMMUTER RAILROAD COMPANY'S MOTION TO DISMISS COUNT X OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P.12(b)(6)

### I. Introduction

Plaintiff Joseph T. Carmack hereby submits this opposition to Defendant Massachusetts Bay Commuter Railroad Company's ("MBCR") Motion to Dismiss Count X of Plaintiff's First Amended Complaint. As grounds therefore, Plaintiff states that Defendant MBCR is a corporate successor to the National Railroad Passenger Corporation ("NRPC" or "Amtrak") and is therefore liable for claims ensuing against NRPC as employer of the Plaintiff with other Defendants in matters relevant to the instant case. Plaintiff has moved for and submitted a Second Amended Complaint ("2nd

1

Am. Compl.") in order to adequately aver MBCR's liability as a 'carrier' and 'employer'

of the Plaintiff as defined by the *Railway Labor Act* ("*RLA*") *45 U.S.C. ss. 151 et. Seq.*

The 2nd Am. Compl. also adequately states a claim upon which relief can be granted for

*RLA* claims as civil rights claims pursuant to *42 U.S.C. s. 1983.* Justice requires that this

Honorable Court allow Plaintiff's Second Amended Complaint which will render moot

Defendant MBCR's motion to dismiss.

## II. Overview

In December 1996, Plaintiff was employed by the National Railroad Passenger

Corporation ("Amtrak") as a locomotive engineer to operate trains for the Massachusetts

Bay Transportation Authority ("MBTA") on Massachusetts Commuter rail. Amtrak

employed Plaintiff for the MBTA pursuant to contract between the MBTA and Amtrak.

MBTA funds all services in Massachusetts commuter rail pursuant to the requirements of

Massachusetts General Laws chapter 161A. Amtrak dismissed Plaintiff from

employment with the MBTA on or about May 13, 2002. Plaintiff continued to grieve his

termination pursuant to the *RLA*. Plaintiff maintains that termination was not final and

binding by the terms of the collective bargaining agreement ("Amtrak/BLE CBA")

between Amtrak and the Brotherhood of Locomotive Engineers ("BLE", now called

Brotherhood of Locomotive Engineers and Trainmen or "BLET") which is now the

primary agreement between the BLET and MBCR. (Plaintiff and MBCR are also subject

to a second collective bargaining agreement between the BLET and MBCR

("MBCR/BLE CBA") which combines with the Amtrak/BLE CBA. In February 2003,

MBCR was awarded contract with the MBTA to succeed Amtrak as provider of

Commuter Rail services, including administration of services formerly operated by

Plaintiff, beginning July 1, 2003. Pursuant to various other contracts resulting from the award and the requirements of the *Federal Transit Act 42 U.S.C. s. 5333(b)*, including contract with the Brotherhood of Locomotive Engineers ("BLE"), the MBCR offered the Plaintiff opportunity to resume employment with the MBTA, but ultimately failed to award the Plaintiff a position in accordance with his seniority. In June 2003, Plaintiff filed grievance with the MBCR pursuant to the *RLA*, the MBCR/BLE CBA, the Amtrak/BLE CBA and the provisions of the BLE Constitution.

On or about July 1, 2003, Plaintiff was at North Station with written materials related to his grievance attempting to process his grievances. While Plaintiff was present at the station, Jacqueline Boumel, an MBCR employee, contacted the MBTA police to have the Plaintiff evicted from North Station. After ascertaining that the Plaintiff was carrying written materials related to his grievance, the MBTA officer directed the Plaintiff to leave and warned the Plaintiff that Plaintiff would be arrested if Plaintiff were discovered on MBTA property.

The instant case was filed in June 2005 and the Complaint was first amended in December 2005. In response, the Defendants filed Motions to Dismiss. Defendant Massachusetts Bay Transportation Authority, ("MBTA") did not move to dismiss Count I of the 1st Amended Complaint and this Honorable Court allowed the MBTA's Motion to Dismiss counts II-XV. Defendant Massachusetts Bay Commuter Railroad Co. ("MBCR") moved to dismiss the entire complaint. This Honorable Court also allowed MBCR's Motion to Dismiss in part, but denied MBCR's motion to dismiss counts I and X with the exception that the motion to dismiss claims pursuant to the Railway Labor Act *45 U.S.C. 45 s. 151 et seq.* incorporated into Count I of the 1st Amended Complaint were

allowed. The current 2nd Amended Complaint filed with Plaintiff's MOTION TO AMEND PLAINTIFF'S 1ST AMENDED COMPLAINT is intended to resolve failures to state claims identified by this Honorable Court in the grants of Defendants' Motions to Dismiss.

In Count I of the First Amended Complaint ("1st Amend. Compl.") and Count I of the 2nd Am. Compl. Plaintiff alleges that the actions of MBTA and MBCR at North Station on July 1, 2003, constitute violations of Plaintiff's rights pursuant to the *RLA* and other civil rights including, but not limited to the *Americans with Disabilities Act* and the *Rehabilitation Act.*

## II. APPLICABLE LEGAL STANDARD

Pursuant to Rule 12 (B)(6), the Court examines the pleadings for "failure to state a claim upon which relief can be granted." The Court must decide whether the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief, the complaint must "set forth factual allegation, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory." Rumford Pharmacy Inc. v. City of Providence. 970 f. 2d 996-998 (1st Cir 1992) (internal citations omitted) (Emphasis in original). Should the complaint require amendment to satisfy Rule after the complaint has already been amended once as a matter of course, "a party may amend the Party's pleading only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires." F.R.C.P 15, (sic)

### A. Joint and Successor Liability

4

The Plaintiff has amended the Complaint, in part, to successfully state a claim

against the MBTA based on a theory of joint liability with both Amtrak and MBCR. A

company or, in this case, the MBTA "can be a 'joint employer'...if it contracts with

another for the services of the aggrieved individual and actually exercises control over

the terms and conditions of employment". *45A AM JUR 2d ss. 62,194* (referencing

Arizona Governing committee for Tax Deferred Annuity and Deferred Compensation

Plans v. Norris, *463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed 2d 1236 [1983]*). Joint liability

can give rise to successor liability when the controlling entity of a joint enterprise

changes partners and the change demonstrates "merely a disguised continuance of the old

employer" through the new partner. Southport Petroleum Co. v. National Labor

Relations Board, *35 U.S. 100, 106 (1942)*. In either case, "persons acquiring an interest

in property that is a subject of litigation are bound by, or entitled to the benefit of, a

subsequent judgment, despite the lack of knowledge." *Restatement of Judgments 89, and

comment c (1942)* (Quoted in Golden State Bottling Co. v. National Labor Relations

Board, *414 U.S. 168 (1973) 179*. This Honorable Court has also noted regarding

successor liability "There must be some type of privity between the predecessor and

successor employer." MBCR R&R at 25 quoting Korlin v. Chartwell Health Care, Inc.,

*128 F.Supp. 2d 609, 614 (E.D. Mo. 2001)*.

### B.  42 U.S.C. s. 1983 and the Railway Labor Act

As has been previously demonstrated by this Court, *Section 1983* "provides a method

for vindicating rights elsewhere conferred" *Graham v. Connor, 490 U.S. 386, 393-94,

109 S.Ct. 1865, 1870, 104 L.Ed 2d 443 (1989)*. (Quoted from MBCR-R&R)  *Section

1983* states:

5

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...*42 U.S.C. s. 1983*.

In the instant case, the "rights, privileges, or immunities secured by the Constitution and laws" of the constitution includes Plaintiff's rights pursuant to the *RLA*.

## III. ARGUMENT

### A. Joint and Successor Liability

In granting MBCR's Motion to Dismiss in Part (Counts II-IX and Counts XI-XV), this Honorable Court indicated that claims should be dismissed because "no MBCR personnel were involved in the conduct that forms the basis of Claims" and the Plaintiff "has not alleged that MBCR had any contractual relationship the Amtrak". MBCR-R&R at pages 24-25. However, the 2nd Am. Compl. contains language that alleges the necessary relationship. (2nd Am. Compl. Para. 16). Furthermore, the 2nd Am. Compl. Clarifies the controlling role of the MBTA. Paragraph 14 of the 2nd Am. Compl. reads as follows:

> Pursuant to instructions from the United States Department of Labor and the provisions of the FTA, MBTA requires that provisions and requirements of 13 (c) be included in all bids, contracts and agreements affecting the work force, rates of pay and work rules (including labor agreements) of the previous contractor.

In addition, the 2nd Amended Complaint includes the following paragraphs as pp 21-28:

> 21. Pursuant to contracts and agreements between MBCR and the MBTA, contracts and agreements between MBCR and BLE (and subsequently BLET) and the provisions of 13(c), MBCR accepted the rules the existing collective bargaining agreement between Amtrak and the BLE as the working contract between MBCR and the BLE (and BLET).

6

22. Pursuant to collective bargaining agreement between MBCR and the BLE ("MBCR/BLET agreement"), MBCR would not consider any discipline imposed on employees by Amtrak.

23. Pursuant to the MBCR/BLET agreement, former engineers of Amtrak in BLE Division 57 or Division 12 would be awarded positions with MBCR in accordance with seniority based on the Amtrak/BLE seniority roster.

24. The MBCR/BLET agreement includes a provision permitting former Amtrak employees who were terminated and/or on medical leave to return to commuter rail service with MBCR.

25. The Plaintiff was awarded the position of Locomotive Engineer in Massachusetts commuter rail by Amtrak in December 1996.

26. The Plaintiff has been a member of the Brotherhood of Locomotive Engineers and BLET in Division 57 since on or about March 1998.

27. On or about May 6, 2003, MBCR General Manager Kevin Lydon, offered the plaintiff a position of employment as locomotive engineer in accordance with plaintiff's seniority and the BLE agreement with the MBCR.

28. On or about May 14, 2003, plaintiff accepted employment with MBCR and submitted appropriate application materials to MBCR.

29. On or about June 24, 2003 MBCR issued awards for engineer positions in Massachusetts commuter rail, but omitted plaintiff from the award list.

30. On or about June 28, 2003, plaintiff reiterated his acceptance of employment offer to MBCR General Manager Kevin Lydon by letter with an accompanying grievance for MBCR's failure to award plaintiff a position which plaintiff attempted to address in accordance with the provisions of the Railway Labor Act.

31. Pursuant to MBTA's bidding notices, MBCR's bidding proposal and award contract signed by the Defendant's, MBCR was required to accept Plaintiff's application as a continuing MBTA employee.

32. By contract signed with MBTA, MBCR agreed to accept liability damages incurred by commuter rail employees against MBCR's predecessor Amtrak and continuing after July 1, 2003.

33. By contract signed with MBCR, MBTA agreed to indemnify MBCR against liability damages incurred by commuter rail employees against MBCR's predecessor Amtrak and continuing after July 1, 2003.

Plaintiff submits that the 2nd Am. Compl. Alleges MBTA directly assumed joint liability for claims against Amtrak as it alleges that MBTA agreed to indemnify MBCR for those liabilities. To the degree that this Honorable Court allows these amendments the Court must accept allegations that MBTA was a joint employer of Plaintiff with Amtrak. In the MBTA R&R this honorable Court granted dismissal of Plaintiff's 1st Am. Compl. to MBTA because "there are no allegations that even imply that the MBTA is liable for Amtrak's relationships with Amtrak employees…" On the other hand, the 2nd Am. Compl. does demonstrate alleged control over behaviors of both Amtrak and MBCR. The complaint alleges MBTA assumed liability for Amtrak's conduct by indemnifying MBCR against them. The Plaintiff also demonstrates an alleged control over relationships between contractors and MBTA by requiring labor agreements and protections of existing terms and conditions of employment. Although this Honorable Court rule in favor of Amtrak on claims against Amtrak, the ruling was based on a summary judgment motion and the court ruled that the Plaintiff hasn't proved his claims by a preponderance of evidence and some claims were preempted by the *Railway Labor Act*. Although the court ruled against the Plaintiff in the Amtrak case (03-12488-PBS) the Court may nonetheless rule against MBTA and MBCR for different reasons: "defendants may not nullify a decree by carrying out prohibited acts through aiders and

8

abettors, although they were not parties to the original proceeding" Regal Knitwear Co. v.

N.L.R.B., *324 U.S. 9 14 (1945)*. The Parties have not proceeded with any discovery.

This Honorable Court denied Plaintiff's discovery requests via subpoena's to MBCR. An

active discovery against Defendant's MBTA and MBCR may allow evidence to rise to

the level of preponderance. Furthermore, the Defendant's actions resulting in civil rights

claims will override preemption issues in case 03-12488-PBS.

### B. Application of Section 1983 to Railway Labor Act Claim

In the REPORT AND RECOMMENDATION ON MBCR'S MOTION TO

DISMISS ("MBCR R&R") this Honorable Court has allowed the Plaintiff to present

claims against the MBCR as a state actor wherein the Plaintiff has maintained that the 1st

Amended Complaint is a civil rights claim pursuant to *42 U.S.C. s. 1983 ("Section*

*1983")*. This Honorable Court has also permitted civil rights claims against MBTA in

the REPORT AND RECOMMENDATION ON MBTA'S MOTION TO DISMISS

("MBTA R&R"). Although this Honorable Court has allowed dismissal of the *RLA*

claims in Count I against the MBCR, Plaintiff has moved to amend Count I in order to

reinstate those claims.

Allegations in the 2nd Am. Compl. infer that MBCR summoned an MBTA police

officer to MBTA's North Station to have the Plaintiff removed from the station for

conducting union activities. The complaint alleges the following:

> 37. After plaintiff arrived at public access areas in North Station;
> and after plaintiff spoke to a few union members in public access areas in
> North station; MBCR Transportation Manager, Jacqueline Boumel called
> MBTA police to have plaintiff removed from the public access areas at
> North Station.

9

38. In answer to Boumel's call, an MBTA police officer approached plaintiff in the public access area at North Station and confiscated some of plaintiff's informational materials.

39. After clarifying that plaintiff's written material dealt with union issues and union agreement matters, the MBTA police officer evicted the plaintiff from the public access areas at North Station.

40. Upon evicting plaintiff from North Station, the MBTA police officer warned the plaintiff that if plaintiff were discovered at any MBTA stations, plaintiff would be charged with trespassing and arrested.

42. As a direct and proximate result of the actions of Ms. Boumel and the MBTA police officer, acting as agents of MBCR and the MBTA: plaintiff's rights, privileges and immunities as a citizen have been abridged; Plaintiff is denied freedom of speech and association; plaintiff is denied the right to organize in his union; and plaintiff is denied union rights generally.

As indicated in the earlier reference to paragraphs 21-28 of the 2nd Am. Compl., the complaint infers that Plaintiff is a De Facto employee of MBCR by virtue of contracts and agreements with the MBTA and Plaintiff's union, the BLE/BLET. The complaint states that MBCR was required to protect Plaintiff and allow the Plaintiff to return to his former position with Amtrak. Whether or not this Honorable Court can allow these clarifications as allegations stating the Plaintiff is an employee of MBCR whose reinstatement should be permitted pursuant to a grievance process, the Court may allow that the Plaintiff still had grievances for which Amtrak is liable. In that case, the Court should allow *RLA* claims against MBCR as Section 1983 claims wherein MBCR allegedly interfered: between Plaintiff and his union; between Plaintiff and his employer; and between Plaintiff and the grievance process.

### C. ADA and Rehabilitation Act claims.

### 1. ADA claim.

MBCR as moved that this Honorable Court should dismiss Plaintiff's *ADA* claims because "The Plaintiff has not, and cannot, allege that he has filed a claim with either the Equal Employment Opportunity Commission ("EEOC") or the Massachusetts Commission Against Discrimination ("MCAD") within the requisite time, and his failure cannot be cured". (**MEMORANDUM IN SUPPORT OF MASSACHUSETTS BAY RAILROAD COMPANY'S MOTION TO DISMISS COUNT X OF PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED.R.CIV.P.12(b)(6)** Docket #48). MBCR's argument would apply were it not that defendant is a corporate successor to Amtrak. Pursuant to arguments presented above, the 2nd Amended Compl. satisfies this Honorable Court's requirements for successor liability. Plaintiff has filed MCAD and EEOC against Amtrak. MBCR is liable for claims pursuant to that complaint.

### 2. The Rehabilitation Act

MBCR has also moved that this Honorable Court should dismiss Plaintiff's *Rehabilitation Act* claims because "MBCR does not receive any federal funds, and the Plaintiff has made no assertion otherwise". *Ibid.* However, the 2nd Amended Compl. does make an assertion:

> 9. The Commonwealth of Massachusetts and the MBCR rely on federal funding of commuter rail pursuant to provisions of the Urban Mass Transportation Act of 1964, which is also referred to as the Federal Transit Act ("FTA").

WHEREFORE Plaintiff hereby prays this Honorable Court will deny Defendant MBCR's motion to dismiss the Railway Labor Act claims in Count X of Plaintiff's First Amended Complaint as moot.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Plaintiff certifies that parties have
Conferred and complied with Local Rule 7.2
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

11

**Respectfully submitted,**

Date: April 10, 2007

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045

**Certificate of Service**

I. Joseph T. Carmack hereby certify that I have on April 10, 2007 served a true copy of the foregoing document by First Class U.S. Mail to Robert K. Blaisdell, Attorney for Massachusetts Bay Commuter Railroad Company ate One Beacon St. Suite 1320 Boston, MA 02103-3113

Date: April 10, 2007

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045

I. Joseph T. Carmack hereby certify that I have on April 10, 2007 served a true copy of the foregoing document by First Class U.S. Mail to Todd Valicenti, Attorney for Massachusetts Bay Transportation Authority at 10 Park Plaza Room 3910, Boston, MA 02116.

Date: April 10, 2007

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045

12