UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH T. CARMACK,                          )
                                            )
            Plaintiff,                      )
      v.                                    )
                                            )        CIVIL ACTION
MASSACHUSETTS BAY          )        NO. 05-11430-PBS
TRANSPORTATION AUTHORITY                    )
and MASSACHUSETTS BAY                       )
COMMUTER RAILROAD COMPANY,                  )
                                            )
            Defendants.                     )


**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTIONS TO DISMISS AND
ORDER ON PLAINTIFF'S MOTION TO
AMEND FIRST AMENDED COMPLAINT**

August 14, 2007

DEIN, U.S.M.J.

## I.  INTRODUCTION

This case is the second of two actions brought by pro se plaintiff Joseph T.

Carmack ("Mr. Carmack") in order to challenge his termination from employment as a

locomotive engineer for the National Railroad Passenger Corporation ("Amtrak") and his

subsequent treatment during his efforts to be reinstated.  The first action, Civil Action

No. 03-12488-PBS, was brought against Amtrak only.  On March 22, 2007, the District

Court adopted this court's Report and Recommendation recommending that summary

judgment be awarded to Amtrak in that action, and on May 21, 2007, final judgment was

entered in favor of Amtrak.

In the instant case, Mr. Carmack has asserted claims against the Massachusetts Bay Transportation Authority ("MBTA") and the Massachusetts Bay Commuter Railroad Company ("MBCR"). On December 9, 2005, MBTA filed a motion to dismiss the claims asserted against it in Counts II-XV of Mr. Carmack's fifteen count First Amended Complaint. Subsequently, on September 1, 2006, this court issued a Report and Recommendation (Docket No. 37) ("MBTA R&R") in which it recommended that MBTA's motion to dismiss be allowed. The District Court adopted the MBTA R&R on September 22, 2006. As a result, the only claims currently pending against MBTA are those asserted in Count I of the First Amended Complaint. They consist of civil rights claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11 ("MCRA"), and claims under the Railway Labor Act, 45 U.S.C. §§ 151 et seq. ("RLA").

Also on December 9, 2005, MBCR filed a motion to dismiss all of the claims asserted against it in the First Amended Complaint. On September 22, 2006, this court issued a Report and Recommendation (Docket No. 38) ("MBCR R&R") in which it recommended that MBCR's motion be allowed in part and denied in part. In particular, this court recommended that the RLA claim asserted in Count I and the claims asserted in Counts II-IX and XI-XV be dismissed. However, this court recommended that the motion be denied with respect to the civil rights claims asserted in Count I pursuant to Section 1983 and the MCRA, and with respect to the discrimination claims asserted in Count X pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112,

and the Rehabilitation Act, 29 U.S.C. § 701.  The District Court adopted the MBCR R&R on October 10, 2006, thereby dismissing all of the claims against MBCR except for the civil rights claims set forth in Count I and the discrimination claims set forth in Count X.

Presently before this court are the defendants' second motions to dismiss and the plaintiff's motion to amend his complaint.  By its motion (Docket No. 45), MBTA is seeking dismissal of the RLA claim alleged in Count I of the First Amended Complaint, while MBCR, by its motion (Docket No. 47), is seeking dismissal of the ADA and Rehabilitation Act claims alleged in Count X.  Neither defendant has challenged the civil rights claims still pending against it pursuant to Section 1983 and the Massachusetts Civil Rights Act.

As detailed below, this court finds that Mr. Carmack has failed to state an RLA claim against MBTA because that statute only protects employees of carriers, and Mr. Carmack has not alleged any facts showing that he was an employee of MBTA at any relevant time.  Consequently, this court recommends to the District Judge to whom this case is assigned that "Defendant MBTA's Motion to Dismiss the Railway Labor Act Claim Asserted in Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Docket No. 45) be ALLOWED.  With respect to the claims against MBCR, this court finds that Mr. Carmack has failed to state a claim under the ADA because he has alleged no facts in his First Amended Complaint which establish that he has exhausted his administrative remedies.  In addition, this court concludes that the plaintiff has failed to state a claim against MBCR under the Rehabilitation Act because he has not

alleged any facts showing that MBCR received federal financial assistance.[1]  Consequently, this court recommends to the District Judge to whom this case is assigned that "Massachusetts Bay Commuter Railroad Company's Motion to Dismiss Count X of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Docket No. 47) be ALLOWED.

        Also before this court is Mr. Carmack's "Motion to Amend Plaintiff's 1st Amended Complaint" (Docket No. 49), by which the plaintiff is seeking to amend his complaint in order to remedy any deficiencies in his claims and to reassert all fifteen counts against each of the defendants.  However, at oral argument, Mr. Carmack informed the court that he no longer wishes to pursue Counts II-IX or Counts XI-XV of his proposed amended complaint, and he agreed that those Counts are withdrawn.  Accordingly, the only issues raised by the instant motion concern whether Mr. Carmack should be allowed to amend his complaint in order to maintain claims against the defendants under the RLA, the ADA and the Rehabilitation Act.  Each of the defendants has opposed the motion solely on the grounds of futility.

        For the reasons discussed below, this court will allow Mr. Carmack to amend his complaint in order to allege facts in support of his Rehabilitation Act claim against MBCR.  However, this court finds that even as amended, Mr. Carmack is unable to state a claim against either defendant under the RLA or the ADA, or against MBTA under the

---

[1]  As detailed below, however, this court will allow Mr. Carmack to amend his complaint in order to include allegations regarding MBCR's receipt of federal funding.

Rehabilitation Act.  Therefore, Mr. Carmack's motion to amend is ALLOWED IN PART and DENIED IN PART.

Consistent with this Report and Recommendation and Order, the only claims that would remain pending against MBTA would be the federal and state civil rights claims asserted in Count I.  The only claims that would remain pending against MBCR would be the federal and state civil rights claims asserted in Count I, and following Mr. Carmack's amendment, the Rehabilitation Act claim of Count X.

## II.  <u>STATEMENT OF FACTS</u>

The facts alleged by Mr. Carmack in the First Amended Complaint have been detailed in this court's R&Rs on the defendants' prior motions to dismiss.  Therefore, this court will provide only a brief summary of the facts relevant to the instant motions to dismiss.  In doing so, the court accepts all well-pleaded facts as true and gives the plaintiff the benefit of all reasonable inferences.  <u>See</u> <u>Cooperman v. Individual, Inc.</u>, 171 F.3d 43, 46 (1st Cir. 1999).

## <u>The Parties</u>

Mr. Carmack was employed by Amtrak as a Locomotive Engineer on Massachu-setts commuter rail trains from December 1996 until his termination by Amtrak on May 13, 2002.  (MBCR R&R at 3).  Defendant MBTA is a state agency that was established pursuant to Massachusetts statutory law and is responsible for the administration of transportation services within the Commonwealth.  (<u>Id.</u>).  Throughout the time of Mr. Carmack's employment as a Locomotive Engineer, Amtrak operated commuter rail

services pursuant to a contract with MBTA.  (Id.; see also 1st Am. Compl. (Docket No. 9) ¶ 10).  This contract, a September 1, 1995 Operating Agreement between Amtrak and MBTA, provides that "[i]n the performance of its obligations under this Agreement, Amtrak is an independent contractor for, and not an agent of, the MBTA."  (MBTA Opp. to Mot. to Am. (Docket No. 54), Ex. A).[2]  Mr. Carmack has not alleged any facts to indicate that he was ever employed by or had any relationship to the MBTA.

Defendant MBCR is a for profit corporation that is organized under the laws of Massachusetts.  (MBCR R&R at 3).  In the Fall of 2002, MBCR entered into a contract with MBTA pursuant to which MBCR agreed to replace Amtrak and take over the operation of commuter rail services within the Commonwealth of Massachusetts beginning on July 1, 2003.  (Id.).  Mr. Carmack was never employed by MBCR. Moreover, Mr. Carmack has not alleged any facts in his First Amended Complaint to indicate that MBCR had any contractual relationship with Amtrak or was otherwise affiliated with Amtrak.

## MBCR's Failure to Hire Mr. Carmack

Mr. Carmack's discrimination claims against MBCR are based on MBCR's alleged wrongful failure to hire him after he had been discharged from Amtrak and MBCR had taken over the operation of the commuter rail.  In support of these claims, Mr.

---

[2]  The court, in ruling on a motion to dismiss, may consider "documents sufficiently referred to in the complaint" without converting the motion into one for summary judgment. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

Carmack alleges that on April 11, 2001, while he was employed at Amtrak, his supervisor and other Amtrak employees prepared written materials that "distorted, stigmatized and characterized Plaintiff's ideas, religious beliefs and writings as the ideas, religious beliefs and writings of a mentally ill person." (1st Am. Compl. ¶ 126). He further contends that based on these employees' perceptions that Mr. Carmack was suffering from a mental illness, Amtrak's Labor Relations Officer devised "a ruse or 'scenario' for a chain of events that would lead to Plaintiff['s] disqualification and termination from employment . . . ." (Id. ¶ 127). Amtrak terminated Mr. Carmack in May 2002. (MBCR R&R at 3). Nearly one year later, on May 6, 2003, MBCR's General Manager allegedly offered him a job as a Locomotive Engineer. (1st Am. Compl. ¶ 15).[3] Mr. Carmack "accepted employment with MBCR and submitted appropriate application materials to MBCR." (Id. ¶ 16). However, when MBCR awarded Locomotive Engineer positions on June 24, 2003, it omitted the plaintiff from the award list. (Id. ¶ 17). Mr. Carmack claims in Count X of his complaint that MBCR's failure to hire him based "on information from employees who were former agents of Amtrak that Plaintiff is violent and dangerous due to mental illness" violated the ADA and the Rehabilitation Act. (Id. ¶¶ 128-29).

## Mr. Carmack's Eviction from North Station

---

[3] As detailed in MBCR's memorandum in support of its first motion to dismiss (Docket No. 16), MBCR hired Amtrak employees when it replaced Amtrak. Since Mr. Carmack was no longer employed by Amtrak at the time of the takeover, he was not hired by MBCR. (See Docket No. 16 at 4-5). Mr. Carmack agrees that MBCR denied him employment as a Locomotive Engineer. (1st Am. Compl. ¶ 128).

Mr. Carmack's RLA claim against MBTA is based upon an incident that took place on July 1, 2003, over a year after the plaintiff had ceased working for Amtrak.[4] On that date, Mr. Carmack went to North Station in Boston for the purpose of contacting and handing out informational materials to members of his union, the Brotherhood of Locomotive Engineers ("BLE").  (Id. ¶¶ 14, 20-21).  North Station is one of two hub stations in Boston from which MBCR operates commuter trains.  (Id. ¶ 11).  Mr. Carmack remained in the public access areas of the station.  (Id. ¶¶ 20, 22).

Mr. Carmack claims that after he arrived at North Station and had spoken to a few union members, MBCR's Transportation Manager called the MBTA police to have Mr. Carmack removed.  (Id. ¶ 22).  An MBTA police officer responding to the call approached the plaintiff and confiscated some of his informational materials.  (Id. ¶ 23).  After establishing that Mr. Carmack's materials concerned union issues and union agreement matters, the officer evicted the plaintiff from the public access areas of the station.  (Id. ¶ 24).  Mr. Carmack contends that the officer warned him that he would be charged with trespassing and arrested if he were discovered at any MBTA stations.  (Id. ¶ 25).  In Count I of his First Amended Complaint, Mr. Carmack claims that MBTA's actions violated his rights under the RLA.[5]  (Id. ¶¶ 20-26).

_____

[4] The facts alleged in support of Mr. Carmack's RLA claim against MBTA are the same facts that the plaintiff had relied on to assert the RLA claim against MBCR that was previously dismissed.

[5] Mr. Carmack claims that the defendants' actions surrounding his eviction from North Station also violated his civil rights under federal and state law.  Those claims are not presently at

Additional factual details relevant to this court's analysis are described below.

## III.  ANALYSIS

### A.    Motion to Dismiss Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. Thus, when confronted with a motion to dismiss, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff.  Cooperman, 171 F.3d at 46.  Dismissal under Fed. R. Civ. P. 12(b)(6) is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Caribe, – F.3d –, 2007 WL 1732883, at *2 (1st Cir. June 18, 2007) (quoting Bell Atl. Corp. v. Twombly, – U.S. –, 127 S. Ct. 1955, 1967, – L. Ed. 2d – (2007)).

Under the liberal notice pleading standard established by Fed. R. Civ. P. 8(a), a plaintiff is required to submit "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Bell Atl., 127 S. Ct. at 1964 (quotations and citation omitted).  Accordingly, "[p]laintiffs only are obliged to set forth in their complaint factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory."  Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 26-27 (D. Mass. 2000) ((quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).  "While a complaint attacked by a Rule

---

issue.

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitle[ment] to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." Bell Atl. 127 S. Ct. at 1964-65 (quotations and citation omitted; alteration in

original). Accordingly, the factual allegations "must be enough to raise a right to relief

above the speculative level on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)." Id. at 1965 (citations omitted). When these principles are

applied in the instant case, this court concludes that the plaintiff has failed, in his First

Amended Complaint, to state a claim against MBTA under the RLA or to state claims

against MBCR under the ADA and the Rehabilitation Act.

**B.** **Motion to Amend Standard of Review**

Mr. Carmack is seeking to amend his complaint, pursuant to Fed. R. Civ. P. 15(a),

in order to cure any pleading deficiencies in his RLA and discrimination claims against

MBTA and MBCR, and to revive those claims to the extent that they have been

dismissed. The decision whether to grant leave to amend is discretionary with the trial

court. Larocca v. Borden, Inc., 276 F.3d 22, 32 (1st Cir. 2002); Sheehan v. City of

Gloucester, 321 F.3d 21, 26 (1st Cir. 2003). "Leave to amend under Rule 15 'is freely

given when justice so requires' absent an adequate basis to deny amendment such as

futility, bad faith, undue delay or a dilatory motive." Transwitch Corp. v. Galazar

Networks, Inc., 377 F. Supp. 2d 284, 290 (D. Mass. 2005), and cases cited. The "futility"

assessment is governed by the standard for motions to dismiss under Fed. R. Civ. P.

12(b)(6).  See id.  Consequently, an "amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory."  Id. (quoting Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001)).

Each of the defendants opposes Mr. Carmack's motion to amend on the grounds of futility.  As described below, this court finds that even as amended, Mr. Carmack's effort to state claims against the defendants under the RLA and the ADA, and to state a claim against MBTA under the Rehabilitation Act, would be futile.  However, this court also finds that Mr. Carmack's proposed allegations would be sufficient to cure the deficiency that MBCR has identified with respect to the Rehabilitation Act claim against it.  Therefore, Mr. Carmack may amend his complaint in order to allege facts supporting his Rehabilitation Act claim against MBCR, but his motion is otherwise denied.

### C.    MBTA's Motion to Dismiss the Railway Labor Act Claim

In Count I of his First Amended Complaint, Mr. Carmack alleges that MBTA's actions in connection with his eviction from North Station violated the RLA.  MBTA has moved to dismiss this claim on the grounds that the statute's protections extend only to employees of a carrier, and Mr. Carmack was never an employee of MBTA.  This court agrees that Mr. Carmack has failed to allege that he was an MBTA employee at any relevant time, and that therefore, he has not stated a claim against MBTA under the RLA.

The RLA was designed "to facilitate collective bargaining and to achieve industrial peace" between interstate carriers and their employees.  Int'l Bhd. of Elec. Workers v.

Foust, 442 U.S. 42, 47, 99 S. Ct. 2121, 2125, 60 L. Ed. 2d 698 (1979).  See also Nelson

v. Piedmont Aviation, Inc., 750 F.2d 1234, 1236 (4th Cir. 1984) ("The purpose of the

[RLA] is to establish the mechanics for collective bargaining between interstate carriers

and their employees through freely selected representatives of both parties").  One of the

statute's stated purposes is "to forbid any limitation upon freedom of association among

employees or any denial, as a condition of employment or otherwise, of the right of

employees to join a labor organization . . . ."  45 U.S.C. § 151a.  Thus, under the RLA,

"[e]mployees shall have the right to organize and bargain collectively through

representatives of their own choosing."  Id. § 152 Fourth.

　　　　Mr. Carmack has not alleged any facts that would support an inference that he was

an employee of MBTA at the time of the alleged incident at North Station or at any other

relevant time.  The RLA defines an "employee" to include:

> every person in the service of a carrier (subject to its continuing
> authority to supervise and direct the manner of rendition of his
> service) who performs any work defined as that of an employee or
> subordinate official in the orders of the Surface Transportation
> Board....

45 U.S.C. § 151 Fifth.  Assuming, without deciding, that the MBTA is a "carrier" within

the meaning of the RLA, there is nothing in the First Amended Complaint to suggest that

Mr. Carmack was ever in the service of, or had any other relationship with, the MBTA.

Therefore, Mr. Carmack is not entitled to the protections of the RLA.

　　　　Mr. Carmack argues that even if he is unable to assert a direct claim against

MBTA under the RLA, his RLA claim should be construed as a predicate violation in his

civil rights claim against the agency under 42 U.S.C. § 1983.  (Pl.'s Opp. to MBTA Mot.

to Dismiss (Docket No. 53) at 8-9).  "Section 1983 provides a cause of action for a

plaintiff to seek money damages from a defendant who acted under color of state law to

deprive plaintiff of a right guaranteed by the Constitution or by federal law."  Kelley v.

LaForce, 288 F.3d 1, 6 (1st Cir. 2002).  Because Mr. Carmack has not alleged that he was

an employee of the MBTA who was entitled to the protections of the RLA, he cannot

establish that the MBTA deprived him of any rights under the RLA.  Therefore, Mr.

Carmack's RLA claim cannot serve as a basis for his Section 1983 claim against MBTA.

Accordingly, this court recommends that the MBTA's motion to dismiss Mr. Carmack's

claim under the RLA be allowed.

> **D.    Plaintiff's Motion to Amend the RLA Claims**

Mr. Carmack is proposing to amend the First Amended Complaint in order to

maintain RLA claims against each of the defendants.  However, none of the proposed

allegations establishes that Mr. Carmack had an employment relationship with either

defendant on July 1, 2003, the date of the incident giving rise to the claims asserted in

Count I.  Therefore, even as amended, Mr. Carmack cannot state a claim against either

defendant under the RLA.  Accordingly, his motion to amend is denied to the extent that

it seeks to cure deficiencies and/or reinstate his RLA claims against MBTA and MBCR.

None of Mr. Carmack's proposed factual allegations supports an inference that he

was an employee of MBTA in July 2003, when the plaintiff was evicted from North

Station.  Moreover, to the extent Mr. Carmack is arguing that he can maintain an RLA

claim against MBTA because MBTA was a "joint employer" with Amtrak and MBCR,
nothing in the proposed amended complaint indicates that Mr. Carmack was employed by
Amtrak or MBCR at any relevant time.  Mr. Carmack agrees that "Amtrak dismissed
Plaintiff from employment with the MBTA on or about May 13, 2002."  (Pl.'s Opp. to
MBTA Mot. to Dismiss at 2).  He also alleges, in his proposed amended complaint, that
MBCR denied him a position as a Locomotive Engineer in June 2003.  (See 2d Am.
Compl. (Docket No. 49-2) ¶¶ 29, 152).  Therefore, even under a "joint employer" theory,
Mr. Carmack could not have been an employee of MBTA as of July 1, 2003, when the
incident giving rise to his RLA claims occurred.

Similarly, Mr. Carmack's proposed amendments relating to MBCR contain no
facts to indicate that Mr. Carmack was an employee of MBCR at the time of the incident
at North Station.  Mr. Carmack argues that the proposed amendments establish that he
was "a De Facto employee of MBCR by virtue of contracts and agreements with the
MBTA and the Plaintiff's union, the BLE/BLET."  (Pl.'s Opp. to MBCR Mot. to Dismiss
(Docket No. 57) at 10).  In particular, he alleges that MBCR entered into agreements with
MBTA and the BLE under which it was obligated to hire former commuter rail engineers
of Amtrak, even if they had been terminated by Amtrak.  (See 2d Am. Compl. ¶¶ 21-24).[6]

---

[6]  MBCR contends that the motion to amend should be denied because, among other
reasons, the factual allegations concerning MBCR's contractual agreements with the plaintiff's
union are inaccurate.  However, this court must accept the plaintiff's factual allegations as true for
purposes of evaluating whether Mr. Carmack's proposed amendments are futile.  See Transwitch
Corp., 377 F. Supp. 2d at 290 ("Futility of a proposed amendment is gauged by reference to the
liberal criteria of Federal Rule of Civil Procedure 12(b)(6)") (quotations and citations omitted);

However, as the plaintiff acknowledges, the proposed amendments only allege a contractual obligation on the part of MBCR "to protect Plaintiff and allow the Plaintiff to return to his former position with Amtrak." (Pl.'s Opp. to MBCR Mot. to Dismiss at 10). They do not establish that MBCR ever complied with any such alleged contractual obligations by hiring Mr. Carmack as a Locomotive Engineer. Rather, as Mr. Carmack alleges in his proposed amended complaint, "[o]n or about June 24, 2003[,] MBCR issued awards for engineer positions in Massachusetts commuter rail, but omitted plaintiff from the award list." (2d Am. Compl. ¶ 29). In fact, MBCR's failure to hire the plaintiff in June 2003 serves as a basis for Mr. Carmack's claims of discrimination against MBCR. (See id. ¶ 152). Therefore, Mr. Carmack is unable to show that he was an employee of MBCR at any time relevant to his claim under the RLA.

Because the proposed factual allegations do not support an inference that an employment relationship existed between Mr. Carmack and the MBTA or between the plaintiff and MBCR on July 1, 2003, when Mr. Carmack was evicted from North Station, the motion to amend for purposes of maintaining RLA claims against either of the defendants is denied.

### E.    MBCR's Motion to Dismiss the ADA and Rehabilitation Act Claims

In Count X of his First Amended Complaint, Mr. Carmack alleges that MBCR's failure to hire him based on information from former Amtrak employees that he was

---

Cooperman, 171 F.3d at 46 (on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), court accepts all well-pleaded allegations as true and gives plaintiff benefit of all reasonable inferences).

violent and dangerous due to mental illness constituted unlawful discrimination under

Title I of the ADA, 42 U.S.C. § 12112, and the Rehabilitation Act, 29 U.S.C. §§ 701 <u>et</u>

<u>seq.</u>  MBCR has moved to dismiss the ADA claim on the grounds that the plaintiff has

failed to file a timely complaint with the Equal Employment Opportunity Commission

("EEOC").  It has moved to dismiss the Rehabilitation Act claim on the grounds that

MBCR receives no federal funds and is therefore not subject to liability under the Act.

This court finds that Mr. Carmack's failure to allege any facts showing that he has

exhausted his administrative remedies is fatal to his ADA claim.  Moreover, because the

Rehabilitation Act prohibits discrimination only by programs or activities that receive

federal funds, and the plaintiff has not alleged that MBCR receives federal financial

assistance, this court finds that Mr. Carmack's First Amended Complaint fails to state a

claim against MBCR under the Rehabilitation Act.  Therefore, this court recommends

that MBCR's motion to dismiss those claims be allowed.

## 1.    <u>The ADA Claim</u>

A plaintiff "who seeks to recover for an asserted violation of Title I of the ADA,

like one who seeks to recover for an asserted violation of Title VII, first must exhaust

administrative remedies by filing a charge with the EEOC, or alternatively, with an

appropriate state or local agency, within the prescribed time limits."  <u>Bonilla v. Muebles</u>

<u>J.J. Alvarez, Inc.</u>, 194 F.3d 275, 278 (1st Cir. 1999).  An unexcused failure to do so "bars

the courthouse door, as courts long have recognized that Title VII's charge-filing require-

ment is a prerequisite to the commencement of suit."  <u>Id.</u>  Mr. Carmack has not alleged

that he filed a charge, either with the EEOC or with any other agency, before filing the

instant lawsuit against MBCR under the ADA: he only filed administrative complaints

against Amtrak.  (See Pl.'s Opp. to MBCR Mot. to Dismiss at 11).  Consequently, Mr.

Carmack's ADA claim against MBCR should be dismissed.

### 2.    The Rehabilitation Act Claim

Mr. Carmack, in his First Amended Complaint, has also failed to state a claim

against MBCR under the Rehabilitation Act.  Section 504 of the Rehabilitation Act

provides, in relevant part, as follows:

> No otherwise qualified individual with a disability ... shall, solely by
> reason of her or his disability, be excluded from the participation in,
> be denied the benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial assistance or under
> any program or activity conducted by any Executive agency or by
> the United States Postal Service.

29 U.S.C. § 794(a).  "The Supreme Court has noted that '[s]ection 504, by its terms,

prohibits discrimination only by a program or activity receiving Federal financial

assistance.'" McDonald v. Commonwealth of Mass., 901 F. Supp. 471, 477 (D. Mass.

1995) (quoting Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 635, 104 S. Ct. 1248,

1255, 79 L. Ed. 2d 568 (1984)) (internal quotations omitted).  Accordingly, in order to

state a claim under the Rehabilitation Act, the plaintiff must allege, among other things,

that "he is being excluded from [a] position solely by reason of his handicap, and . . . the

position exists as part of a program or activity receiving federal financial assistance."  Id.

Where, as here, "[t]he plaintiff has not alleged that he was excluded from participation in

-17-

a 'program or activity receiving Federal financial assistance' within the meaning of § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), . . . his complaint consequently fails to state a claim under that statute."  Id. at 473 (quoting Bento v. I.T.O. Corp. of R.I., 599 F. Supp. 731, 741 (D.R.I. 1984)).  Accordingly, this court recommends that MBCR's motion to dismiss Count X be allowed.

### F.    Plaintiff's Motion to Amend the Discrimination Claims

#### 1.    Proposed Amendments Relating to MBTA

By his proposed amended complaint, Mr. Carmack is seeking to assert ADA and Rehabilitation Act claims against MBTA by establishing that MBTA is jointly liable with Amtrak and MBCR for acts of discrimination against him by Amtrak and MBCR employees.  In particular, he argues that while he was never directly employed by MBTA, a "joint employer" relationship existed between MBTA and Amtrak, as well as between the MBTA and MBCR, such that the MBTA should be held liable for the alleged discriminatory acts of those parties.[7]  (Pl.'s Opp. to MBTA Mot. to Dismiss at 4, 6).  Additionally, Mr. Carmack argues that the proposed amended complaint demonstrates that Amtrak was a state actor.  He contends that "[o]nce the Court accepts Amtrak as a

---

[7]  In Count X of his proposed amended complaint, Mr. Carmack asserts that the alleged acts of discrimination against him while he was employed by Amtrak were performed by employees or agents of "Amtrak and MBTA."  (2d Am. Compl. ¶¶ 150-151).  Similarly, he alleges that "MBTA and MBCR" wrongfully denied him a position as a Locomotive Engineer in July 2003.  (Id. ¶ 152).  However, it is clear from his briefs that the allegations of discrimination against the MBTA are based on his theory that MBTA was a "joint employer" with Amtrak and MBCR, and not on any direct conduct by MBTA personnel.

State actor, it can also accept the Plaintiff as an employee of the MBTA" and hold the

MBTA liable with Amtrak for Amtrak's alleged discriminatory conduct.  (Pl.'s Mem. in

Supp. of Mot. to Am. (Docket No. 50) at 5).  Finally, he argues that MBTA "directly

assumed joint liability for claims against Amtrak" under the terms of an indemnification

agreement between MBTA and MBCR.   (Pl.'s Opp. to MBCR Mot. to Dismiss at 8).

This court does not find any of these arguments persuasive.

In support of his argument that MBTA was a "joint employer," Mr. Carmack

alleges as follows:

> 13.  Section 13(c) of the FTA[8] requires commuter rail contractors
> with the MBTA to maintain the same work force, the same rates of
> pay and the same work rules of previous contractors.
>
> 14.  Pursuant to instructions from the United States Department of
> Labor and the provisions of the FTA, MBTA requires that provisions
> and requirements of 13(c) be included in all bids, contracts and
> agreements affecting the work force, rates of pay and work rules
> (including labor agreements) of the previous contractor.

(2d Am. Compl. ¶¶ 13, 14).  He contends that these allegations establish that MBTA,

through its contracts with Amtrak and MBCR, exerted sufficient control over Amtrak's

and MBCR's relationships with their employees to make MBTA a joint employer.  (See

Pl.'s Opp. to MBTA Mot. to Dismiss at 4-5, 6).

---

[8]  "FTA" refers to the Federal Transit Act, which is also known as the Urban Mass
Transportation Act of 1964.  (2d Am. Compl. ¶ 9).  Section 13(c) of the Act requires state and
local governments to make arrangements "to preserve transit workers' existing collective-
bargaining rights before that government may receive federal financial assistance for the
acquisition of a privately owned transit company."  Jackson Transit Auth. v. Local Div. 1285,
Amalgamated Transit Union, 457 U.S. 15, 16, 102 S. Ct. 2202, 2203, 72 L. Ed. 2d 639 (1982).

The proposed allegations do not support Mr. Carmack's assertion that MBTA was a "joint employer" with MBCR. As an initial matter and as described above, Mr. Carmack was never employed by MBCR. Therefore, he could not have been an employee of MBTA based on that agency's relationship with MBCR.

Similarly, the allegations are insufficient to establish the existence of a joint employer relationship between MBTA and Amtrak. In the employment context, such a relationship has been found to exist "where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." Rivera-Vega v. Conagra, Inc., 70 F.3d 153, 163 (1st Cir. 1995). Factors relevant to deciding whether joint employer status exists include: "supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." Id. The proposed allegations do not include any facts showing that MBTA exerted actual control over any aspect of Mr. Carmack's employment relationship with Amtrak, including the decision by Amtrak to terminate him. Moreover, the Operating Agreement between Amtrak and the MBTA, which is referenced in the proposed amended complaint, specifically provides that "Amtrak is an independent contractor for, and not an agent of, the MBTA." (MBTA Opp. to Mot. to Am. (Docket No. 54), Ex. A; see also 2d Am. Compl. ¶ 11).

-20-

To the extent MBTA's contracts with commuter rail operators required such operators to maintain the same work force, the same rates of pay and the same work rules of previous contractors, the proposed allegations establish that these requirements were compelled by federal law, and not as a result of MBTA's efforts to control Amtrak's relationships with its employees. Therefore, the plaintiff cannot hold MBTA jointly liable for any acts of discrimination by Amtrak employees based on a claim that MBTA was a "joint employer" with Amtrak.

Similarly, Mr. Carmack cannot show that Amtrak's employees were also employees of MBTA based on Amtrak's and the MBTA's status as state actors. Even assuming both Amtrak and the MBTA are state actors, this would not support a conclusion that the employees of one entity were employees of the other entity. Employees of one state agency are not also employees of another state agency, and employees of municipalities are not also employees of state agencies simply because their employers are state actors. Consequently, Mr. Carmack's effort to allege a theory of joint liability against MBTA based on Amtrak's status as a state actor is futile.

Finally, Mr. Carmack proposes to amend his complaint in order to show that MBTA, pursuant to a contract between MBTA and MBCR, assumed liability for discrimination claims against Amtrak. In particular, he is seeking to allege that "[b]y contract signed with MBCR, MBTA agreed to indemnify MBCR against liability damages incurred by commuter rail employees against MBCR's predecessor Amtrak and

continuing after July 1, 2003."[9]  (2d Am. Compl. ¶ 33).  He argues that this allegation is

sufficient to support discrimination claims against MBTA based on the conduct of

Amtrak employees.  (Pl.'s Opp. to MBCR Mot. to Dismiss at 8).

 The proposed allegation of an indemnification agreement, even if true, is not

adequate to state claims for discrimination against MBTA.  Mr. Carmack is neither a

party to the contract nor an intended third-party beneficiary.  Therefore, even if he were

to prove that MBCR should be held liable for discriminatory acts against him by Amtrak,

he has no standing to enforce MBCR's right of indemnification against MBTA.  See

Rymes Heating Oils, Inc. v. Springfield Terminal Ry., Inc., 265 F. Supp. 2d 147, 151 (D.

Mass. 2003) (in order to recover under a contract to which plaintiff is not a party,

plaintiff must show that it was an intended beneficiary of the contract), aff'd 358 F.3d 82

(1st Cir. 2004).  Accordingly, the plaintiff's motion to amend his complaint in order to

assert claims against MBTA under the ADA and the Rehabilitation Act is denied on the

basis of futility.

---

 [9]  In Count Ten of his proposed amended complaint, Mr. Carmack alleges that "[b]y contract with MBCR and Amtrak, MBTA has accepted liability for these damages" incurred as a result of Amtrak's and MBCR's acts of discrimination against him.  (2d Am. Compl. ¶ 154). However, Mr. Carmack has made it clear from his briefs that the contract he is referring to is the contract between MBTA and MBCR whereby MBTA agreed to indemnify MBCR for damages incurred by MBCR as a result of claims against Amtrak.  (See Pl.'s Opp. to MBCR Mot. to Dismiss at 8).

### 2.    Proposed Amendments Relating to MBCR

By his proposed complaint, Mr. Carmack also is seeking to maintain ADA and Rehabilitation Act claims against MBCR by establishing that MBCR is a successor to Amtrak and is therefore liable for past acts of discrimination against him by Amtrak employees. Additionally, he is seeking to cure any deficiency in his direct claim against MBCR under the Rehabilitation Act by alleging that MBCR receives federal financial assistance. The proposed allegations do not support Mr. Carmack's theory of successor liability. However, they are sufficient to overcome the deficiency identified by MBCR with respect to the Rehabilitation Act claim against it. Therefore, Mr. Carmack may amend his complaint in order to allege facts in support of his direct claim against MBCR under the Rehabilitation Act, but his motion is otherwise denied.

"The doctrine of successor liability is derived from equitable principles, and fairness is the prime consideration in application of the doctrine." Korlin v. Chartwell Health Care, Inc., 128 F. Supp. 2d 609, 613 (E.D. Mo. 2001), and cases cited. "[A] vital requirement when applying the theory of successorship liability" for a predecessor's past discriminatory conduct "is that there must be some type of sale, merger, or consolida-tion." Id. at 614. The imposition of successor liability may be equitable in such circumstances because "the successor's potential liability is a matter which can be reflected in the price he pays for the business, or in an indemnity clause in the sales contract which would indemnify him for liability arising from the seller's [past discrimination]." Id. See also Golden State Bottling Co., Inc. v. N.L.R.B., 414 U.S. 168,

172, 94 S. Ct. 414, 419, 38 L. Ed. 2d 388 (1973) (finding it equitable to impose liability

for unfair labor practices on bona fide purchaser in light of successor's becoming the

beneficiary of the unremedied unfair labor practice and his ability to account for his

potential liability in the purchase price or obtain an indemnity for liability resulting from

the unfair practice).  "This is impossible to do if there is no sale or contract between the

predecessor and successor."  Korlin, 128 F. Supp. 2d at 614.

Mr. Carmack contends that in his amended complaint he alleges the necessary

relationship between MBCR and Amtrak.  Specifically, he relies on a proposed

allegation, which provides: "[i]n addition to the basic contract with the MBTA, MBCR

also signed additional agreements with the MBTA and Amtrak, including 'transition'

agreements and an 'Implementing Agreement' which indemnify 'MBCR' for the

requirements of 13(c) [of the FTA] and reference Amtrak as the previous contractor."  (2d

Am. Compl. ¶ 16).  However, these facts do not fulfill the "vital requirement" that there

be a sale, merger, or consolidation.[10]  Nor do they establish that MBCR had an

opportunity to obtain an agreement from Amtrak to indemnify it for any liability arising

out of Amtrak's past acts of discrimination or otherwise protect itself from any such

liability.  Accordingly, this court denies Mr. Carmack's motion to amend his complaint in

order to support a claim of successor liability against MBCR.

---

[10]  MBCR argues that the alleged "transition" agreements and "Implementing Agreement"
do not exist.  (MBCR Opp. to Pl.'s Mot. to Am. (Docket No. 55) at 2-4).  Nevertheless, this
court must accept the plaintiff's factual allegations as true for purposes of evaluating futility.

MBCR has not demonstrated, however, that Mr. Carmack's proposed allegations in support of his Rehabilitation Act claim against it would be futile. The plaintiff proposes to allege that "[t]he Commonwealth of Massachusetts and the MBCR rely on federal funding of commuter rail pursuant to provisions of the Urban Mass Transportation Act of 1964, which is also referred to as the Federal Transit Act ('FTA')." (2d Am. Compl. ¶ 9). This is sufficient to cure the deficiency identified by MBCR in its motion to dismiss Mr. Carmack's claim under the Rehabilitation Act. Furthermore, for purposes of evaluating futility, this court must accept the alleged facts as true. See Transwitch Corp., 377 F. Supp. 2d at 290 (futility is assessed under a motion to dismiss standard of review). Consequently, MBCR's argument that it receives no federal funds is unavailing at this stage in the litigation. (MBCR Mem. to Mot. to Dismiss (Docket No. 48) at 3). The plaintiff may amend his complaint in order to allege facts supporting his direct claim against MBCR under the Rehabilitation Act.[11] The motion to amend is otherwise denied.[12]

## IV. CONCLUSION

For all of the reasons set forth above, this court recommends to the District Judge to whom this case is assigned that "Defendant MBTA's Motion to Dismiss the Railway

---

[11] The merits of the Rehabilitation Act claim could be addressed in an expedited motion for summary judgment following limited discovery on the issue of whether MBCR receives federal financial assistance.

[12] To the extent any arguments raised by the parties have not been addressed specifically in this Report and Recommendation and Order, they have been fully considered by this court.

Labor Act Claim Asserted in Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Docket No. 45) be ALLOWED.  This court also recommends that "Massachusetts Bay Commuter Railroad Company's Motion to Dismiss Count X of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Docket No. 47) be ALLOWED.[13]

Additionally, for the reasons set forth above, Mr. Carmack's "Motion to Amend Plaintiff's 1st Amended Complaint" (Docket No. 49) is ALLOWED IN PART and DENIED IN PART.  The plaintiff may amend his complaint in order to allege facts in support of his Rehabilitation Act claim against MBCR, but his motion is otherwise denied.

Consistent with this Report and Recommendation and Order, the only claims that would remain pending against MBTA would be the federal and state civil rights claims asserted in Count I.  The only claims that would remain pending against MBCR would be

---

[13]     The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).

the federal and state civil rights claims asserted in Count I, and following Mr. Carmack's

amendment, the Rehabilitation Act claim of Count X.

____/ s / Judith Gail Dein_____

Judith Gail Dein
United States Magistrate Judge
