UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Joseph T. Carmack )<br>           Plaintiff, Pro Se )<br>                            )<br>v.                          )<br>                            )<br>Massachusetts Bay Transportation Authority )<br>                            )<br>   and                      )<br>                            )<br>Massachusetts Bay Commuter Railroad Co. )<br>                            )<br>           Defendants       ) | Civil Action No. 05-11430-PBS |

**PLAINTIFF JOSEPH T. CARMACK'S MEMORANDUM IN SUPPORT OF**

**OPPOSITION TO REPORT AND RECOMMENDATION ON DEFENDANTS'**

**MOTIONS TO DISMISS AND ORDER ON PLAINTIFF'S MOTION TO AMEND**

**FIRST AMENDED COMPLAINT**

**I. INTRODUCTION**

Plaintiff Joseph T. Carmack ("plaintiff") hereby submits this memorandum in support of OPPOSITION TO REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS TO DISMISS AND ORDER ON PLAINTIFF'S MOTION TO AMEND FIRST AMENDED COMPLAINT pursuant to Rule 72 of the Federal Rules of Civil Procedure. Plaintiff hereby respectfully objects to the finding of the Court in the REPORT AND RECOMMENDATION ON DEFENDANT'S MOTIONS TO DISMISS AND ORDER ON PLAINTIFF'S MOTION TO AMEND FIRST AMENDED

1

COMPLAINT ("REPORT AND ORDER" OR "R&O") (Docket No. 58) that the plaintiff "has failed to state an RLA claim against MBTA…"[1] and the finding that the plaintiff has "alleged no facts in his First Amended Complaint which establish that he has exhausted his administrative remedies" of a claim under the ADA[2] against the Defendant Massachusetts Bay Commuter Railroad Co ("MBCR"). Plaintiff hereby objects to the R&O's recommendation that " 'Defendant MBTA's Motion to Dismiss the Railway Labor Act Claim Asserted in Plaintiff's First Amended Complaint Pursuant to Fed.R.Civ.P. 12 (b)(6)' (Docket No. 45) be ALLOWED". Plaintiff also hereby objects to the recommendation that " 'Massachusetts Bay Commuter Railroad Company's Motion to Dismiss Count X of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)' be ALLOWED".

As grounds for this motion plaintiff states that he has indeed stated a claim upon which relief can be granted and he has alleged facts showing that he is an employee of both the MBTA and MBCR. The Court's current recommendation is inconsistent with the previous Reports and Recommendations Docket 37 and Docket 38. Plaintiff has amended his claim to state a claim that he is an employee of MBTA and MBCR. The Court's R&O accepts defendant's submission of evidence from defendant MBTA without permitting plaintiff opportunity to discover agreements referenced in plaintiff's Second Amended Complaint which would confound the Court's and defendants' interpretation of the evidence that defendant MBTA has submitted. It is too early in the stage of the litigation process to permit conclusions drawn by the R&O.

---

[1] Railway Labor Act (45 U.S.C. 151 et seq.) ("RLA") and Massachusetts Bay Transportation Authority ("MBTA")
[2] Americans with Disabilities Act (42 U.S.C. 12101 et seq.) ("ADA")

However, even allowing the evidence presented, the Court's interpretation would contradict the application of federal law to the circumstances of this case. Transactions between the defendants are governed by the federal requirements established, in part, by: Section 13(c) of *Federal Transit Act 49 U.S.C. 5333(b)*, ("FTA); the *Transportation Act of 1940, ch. 722, 54 Stat. 898 (Sept. 18, 1940)*; *The Interstate Commerce Act, section 7 54 Stat. 90*; and the *Railroad Revitalization and Regulatory Reform Act of 1976 (Pub. L. No 94-210, Feb. 5, 1976, 90 Stat. 62), 49 U.S.C ss. 11347*. Pursuant to federal requirement of these laws (as a condition for the receipt of federal funding) the Plaintiff is classified as an employee of the MBTA and the MBCR. Plaintiff was an employee of the MBTA when fired from his position of Locomotive Engineer on the MBTA in May of 2002. *RLA* claims against National Railroad Passenger Corporation (Amtrak) for transactions or occurrences in May of 2002 giving rise to the circumstances relevant to this case likewise apply to MBTA as a joint employer of the plaintiff with Amtrak. Defendant MBCR is currently liable for those same *RLA* claims as a successor employer.

## II. OVERVIEW

As the R&O indicates, the current action was filed in tandem with a case against the National Railroad Passenger Corporation ("NRPC" or "Amtrak") which was filed in this Honorable Court (Civil Action 03-12488-PBS). The Amtrak case was dismissed on summary judgment motions. Most of the counts in the Amtrak case, which have been reiterated in the instant case, were dismissed on the basis of preemption by the *RLA*.[3] The transactions and occurrences in the Amtrak case were also subject to outstanding grievances against Amtrak pursuant to the mechanics of the *RLA* and subject to the

---

[3] Report and Recommendation on Cross-Motions for Summary Judgment, Civil Action 03-12488-PBS; Docket 132-1.

3

jurisdiction of the National Railroad Adjustment Board ("NRAB"). Owing to a narrow application of the Collective Bargaining Agreement ("*CBA*") by Amtrak in hearings on Plaintiff's termination from Amtrak, plaintiff and his union filed separate grievances relevant to plaintiff's medical disqualification and termination from Amtrak. In addition, the decision on grievance which was subject of hearing investigation pursuant to the *CBA* resulting in the termination of the plaintiff, was not final and binding by the terms of the *CBA*. All grievances pursuant to the *RLA* assert continuing seniority privileges on commuter rail.

In the 2nd Amended Complaint, plaintiff is asserting that pursuant to: (1) the requirements of the *Federal Transit* Act; (2), contracts and agreements between defendants; and (3) contracts and agreements between defendants and plaintiff's union, MBTA is jointly responsible for outstanding *RLA* grievances for the plaintiff against Amtrak. Plaintiff also avers that MBCR is liable for damages resulting from those grievances as successor to Amtrak. The *Railway Labor Act* elements of *Count* I of the 2nd Amended Complaint asserts that actions of the defendants result in a denial of plaintiff's "right to organize in his union" and a denial of "union rights generally". In count XII of the 2nd Amended Complaint, plaintiff "repeats and realleges the allegation of paragraph 1 through 171 of this Complaint, the same as if said paragraphs were expressly restated here". And, at paragraph 180, "As a direct and proximate result of actions of agents, servants and employees of Amtrak, MBTA and MBCR, Amtrak, MBTA and MBCR have by force and threat of force willfully injured, intimidated, interfered with, oppressed and threatened Plaintiff in the free exercise and enjoyment of

4

rights and privileges secured to Plaintiff by the Railway Labor Act (U.S.C. 45 ss. 151 et. Seq.)".

The defendants' current motions to dismiss follow similar previous motions to dismiss filed in December 2005 (Dockets 15 and 18 dated December 9, 2005). MBCR's previous motion to dismiss sought to dismiss the entire 1st Amended Complaint. MBTA's previous motion to dismiss sought to dismiss all but Count I of the complaint. This Honorable Court allowed previous motions to dismiss in part and denied them in part. (Report and Recommendation, "R&R, Docket 38). The Court allowed dismissal of all counts except Count I against MBTA. Against MBCR, the Court allowed dismissal of Counts II through IX and Counts XI through XV. In addition, the Court allowed dismissal of *Railway Labor Act* claims against MBCR in Count I of the 1st Amended Complaint. In the current motions to dismiss, MBTA is asking for dismissal of *RLA* claims in Count I and MBCR is seeking dismissal of averred violations of the *Americans with Disabilities Act* ("ADA") and the *Rehabilitation Act* ("RA") in Count X of the 2nd Amended Complaint. The R&O recommends that dismissal of the *ADA* claims be allowed and that dismissal of the *RA* claims be denied.

Concurrent with motions to dismiss, plaintiff submitted motion to amend the complaint as represented in a proposed 2nd Amended Complaint (Motion to Amend 1st Amended Complaint, Docket 49). As grounds for Motion to Amend, the plaintiff claims that the 2nd Amended Complaint states a valid claim of joint and successor liability against the defendants because it corrects deficiencies highlighted by the Court's previous R&R.

### III. LEGAL STANDARD

5

In accordance with *F.R.C.P., Rule 72*, a party may object to the Report and Recommendations of Judge Magistrate: "within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations…the District Judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule." The recommendation, in this case, considers a motion to dismiss under Rule12(b)(6) which "tests the sufficiency of the pleadings".

Pursuant to Rule 12(b)(6), the Court examines the pleadings for "failure to state a claim upon which relief can be granted." The court must decide whether the complaint contains "a short and plain statement of the claim showing that the pleader is entitled to relief", *F.R.C.P. Rule 8*. In order to demonstrate that the plaintiff is entitled to relief, the complaint must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable theory". *Rumford Phamracy Inc. v. City of Providence*, 970 F.2d 996-998 (1st Cir 1992) (internal citations omitted) (Emphasis in original). Should the complaint require amendment to satisfy Rule, after the complaint has already been amended once as a matter of course, "a party may amend the party's pleading only by leave of the Court or by written consent of the adverse party, and leave shall be freely given when justice so requires." *F.R.C.P. 15*.

### A. Joint and Successor Liability

A company or a public entity "can be a 'joint employer'…if it contracts with another for the services of the aggrieved individual and actually exercises control over the terms and conditions of employment". *45a am jur 2d ss 62, 194* (referencing Arizona Governing committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris, *463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed 2d 1236 [1983]*). Joint liability can give rise to successor liability when the controlling entity of a joint enterprise changes partners and the change demonstrates "merely a disguised continuance of the old employer" through the new partner. Southport Petroleum Co. v. National Labor Relations Board, *35 U.S. 100, 106 (1942)*. In either case, "persons acquiring an interest in property that is a subject of litigation are bound by, or entitled to the benefit of, a subsequent judgment, despite the lack of knowledge." *Restatement of Judgments 89, and comment c (1942)* (Quoted in Golden State Bottling Co. v. National Labor Relations Board, *414 U.S. 168 (1973) 179*. This Honorable Court has also noted regarding successor liability "There must be some type of privity between the predecessor and successor employer." MBCR R&R at 25 quoting Korlin v. Chartwell Health Care, Inc., *128 F.Supp. 2d 609, 614 (E.D. Mo. 2001)*.

### B. 42 U.S.C. s. 1983 and the Railway Labor Act

As has been previously demonstrated by this Court, *Section 1983* "provides a method for vindicating rights elsewhere conferred" Graham v. Connor, *490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed 2d 443 (1989)*. (Quoted from MBCR-R&R)  *Section 1983* states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,

7

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...*42 U.S.C. s. 1983.*

In the instant case, the "rights, privileges, or immunities secured by the Constitution and laws" of the United States includes Plaintiff's rights pursuant to the *RLA*.

### C. THE FEDERAL TRANSIT ACT

### And

### THE INTERSTATE COMMERCE ACT

The *Federal Transit Act ("Transit Act")* requires public agencies receiving federal assistance to ensure "fair and equitable" guarantees to employees in a transit enterprise who are affected by assistance. The Secretary of Labor certifies for the Federal Transit Administration that guarantees are in place before the FTA will provide the assistance. There are five specific areas of required guarantees:

> It shall be a condition of any assistance under section 3 of this Act that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of employment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 5(2)(f) of the Act of February 4, 1887 (24 Stat. 379), as amended. The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements.

*49 U.S.C. s. 5333(b)*

8

Section 5(2)(f) of the Interstate Commerce Act, referenced in the Transit act quoted above as "the Act of February 4, 1887 (24 Stat. 379)", provides, in part, as follows:

> As a condition of its approval, under this paragraph,...of any transaction involving a carrier or carriers by railroad subject to the provisions of this part, the Commission shall require a fair and equitable arrangement to protect the interests of the railroad employees affected. In its order of approval the Commission shall include terms and conditions providing that during the period of four years from the effective date of such order such transaction will not result in employees of the carrier or carriers by railroad affected by such order being in a worse position with respect to their employment, except that the protection afforded to any employee pursuant to this sentence shall not be required to continue for a longer period, following the effective date of such order, than the period during which such employee was in the employ of such carrier or carriers prior to the effective date of such order.[4]
>
> (*The Transportation Act of 1940, ch722 s. 7, 54 Stat. 906*)
>
> This requirement has been further amended:
>
> When a rail carrier involved in a transaction for which approval is sought...the Interstate Commerce Commission shall require the carrier to provide a fair arrangement at least as protective of the interests of employees who are affected by the transaction as the terms imposed under this section before February 5, 1976, and the terms established under section 405 of the Rail Passenger Service Act (45 U.S.C. 565)...The arrangement and the order approving the transaction must require that the employees of the affected rail carrier will not be in a worse position related to their employment as a result of the transaction during the 4 years following the effective date of the final action of the Commission (or if an employee was employed for a lesser period of time by the carrier before the action became effective, for that lesser period).
>
> (*49 U.S.C. s. 11347*).

By enacting these laws, congress was specifically concerned about the loss of union rights of employees of railroads in reorganization (through mergers, acquisitions and

---

[4] Certification of Railroad transactions, formerly approved by the Interstate Commerce Commission is currently (pursuant to Interstate Commerce Act amendments) the responsibility of a newly created "Surface Transportation Board" replacing the Interstate Commerce Commission.

9

abandonment) and the loss of union rights of employees of a private transit system that was acquired by a public entity with federal funds.[5] It is expected that specific conditions necessary for protection of rights are established through local agreements, bargaining and negotiations subject to expectation of fair and equitable treatment.[6] The process by which these agreements are established and certified by the Department of Labor is outlined in *29 C.F.R. 215, et. Seq.* The guidelines include example of a Model Agreement which includes an example of an 'Implementing Agreement' to be signed by Unions and a Grantee.

### III. ARGUMENT

### A. Introduction

In essence, with this opposition to this Honorable Court's Report and Order, the plaintiff is asking the Court to recognize the continuation and "preservation of [the plaintiff's] rights, privileges, and benefits...under existing collective bargaining agreements or otherwise" from the time of termination of plaintiff's employment as locomotive engineer in Massachusetts Commuter Rail (May 2002) until the present. In addition, the plaintiff is asking the Court to recognize defendant MBCR's responsibility as carrier for continuation of plaintiff's employee rights and defendant MBTA's responsibility as joint employer (and by extension, carrier) for the continuation of those rights. The need for this Honorable Court's intervention in this matter results from the defendants' actions intended, 'under color of state law', to impede, obstruct and prevent

---

[5] See House Report no 204, 88th Congress, 1st session (1963) reprinted in *1964 U.S. Code Congressional and Administrative News 2583, 2584*
[6] Senate Report No. 82, 88th Congress., 1st Session at 28 (1963). See also U.S. Code Cong. & Admin. News at 2584, 2585.

plaintiff's attempt at due process pursuant to application of collective bargaining agreements and the legal mechanics of the *Railway Labor Act*.

### B. Federal Certification of Transit and Railroad Contracts; Continuation of Rights; Congressional Intent of 13(c)

In order to establish a liability of the defendants for *Railway Labor Act* and *ADA*, the complaint introduces the *Federal Transit Act* as a relevant element in the background of the case: "The Commonwealth of Massachusetts and the MBCR rely on federal funding of commuter rail pursuant to provisions of the Urban Mass Transportation Act ('FTA')", 2nd Amended Complaint at 9. Continuing for 15 paragraphs, the Plaintiff outlines how continuation of collective bargaining rights are maintained from grantee (MBTA) to contractor (MBCR and Amtrak) and from contractor to contractor through a variety of contracts and agreements. Paragraph 14 indicates (and infers) that the development of the guarantees in the contracts is overseen by the United States Department of Labor:

> Pursuant to instructions from the United States Department of Labor and the provisions of the FTA, MBTA requires that provisions and requirements of 13(c) be included in all bids, contracts and agreements affecting the work force, rates of pay and work rules (including labor agreements) of the previous contractor.

These paragraphs introduce the opportunity for this Honorable Court to use reference to the mechanics of 13(c) and Surface Transportation Board certification as an element of probity in this case. In enacting the laws governing certification of contracts between railroads or between a railroad(s) and public agencies, congress sought to protect against the loss of rights guaranteed to employees that the defendants, claim exists in the instant

11

case. If the Court accepts defendants' arguments for dismissal, than the laws have failed in their intent.

As the grantee, the MBTA is representative agency responsible for showing compliance with 13(c). MBTA first became subject to 13(c) in commuter rail when it bought Massachusetts operations from the Boston and Maine Railroad with federal funds in 1973. Once it acquired the railroad, it established a direct relationship with the employees pursuant to the requirements of 13(c). Prior to negotiating any contract with a private entity, the MBTA negotiates terms and conditions that are required in any bidding notices with the unions.

### C. Contracts: Joint and Successor Liability

In order for the plaintiff to state a claim showing joint liability of MBTA with the actions of Amtrak, this Honorable Court requires that the plaintiff show that MBTA "exercises control over the terms and conditions of employment", (R&O, page 20). Plaintiff has indirectly alleged that MBTA exercises such control. This is inferred indirectly by reference to the *Transit Act*. Paragraph 14 of the complaint states:

> Pursuant to instructions from the United States Department of Labor and the provisions of the FTA, MBTA requires that provisions and requirements of 13(c) be included in all bids, contracts and agreements affecting the work force, rates of pay and work rules (including labor agreements) of the previous contractor.

The R&O states that this reference is insufficient because "these requirements are compelled by federal law" (*ibid*, page 21). But, plaintiff states that reference to federal law should not be dispositive. The statement directly alleges MBTA's involvement. Whether or not federal law compels it, MBTA independently 'requires' the provisions that establish conditions of employment. MBTA independently agrees to the

12

involvement with terms and conditions of employment. MBTA is not compelled to require the provisions of 13(c). MBTA agrees to require the mandates of 13(c) as a condition of receipt of federal funding. MBTA has the power to alter the relationship by declining federal funding. MBTA is independently responsible for the preservation of employee rights. Even in the event that this Honorable Court cannot agree that defendant MBTA is classified as 'carrier', the proof of which is subject to the circumstances to be revealed through discovery, dispositive motions and/or trial, plaintiff states that the Court will be able to find defendant MBTA responsible for liabilities that contractor's have incurred through implementation of federally financed projects. The liabilities will be revealed through the circumstances of the case, via agreements or otherwise, rather than through direct application of federal railroad and transit law.

The circumstances giving rise to the processing of this case are events in North Station on July 1, 2003 where actions of the defendants effectively prevented the plaintiff from processing grievances pursuant to the *Railway Labor Act* which are under the jurisdiction of the *National Railroad Adjustment Board*. Once the appropriate remedy was precluded, the establishment of liabilities for the grievances became the purview of this Honorable Court. The weight of the circumstances of the case will prove joint liability as a consequence of the defendant's actions. The plaintiff claims the right to prove those liabilities and it is too early at this stage of the litigation for liabilities to be precluded. The statements referenced in the complaint are sufficient to permit the case to proceed with the liabilities that the plaintiff claims, including liabilities averred per application of the *Railway Labor Act*.

### D. Motion to Dismiss

In arguments for motions to dismiss, defendant MBTA has introduced arguments of futility against plaintiffs 2nd Amended Complaint in order to circumvent plaintiff's legal right to this Honorable Court's intervention. In support of their argument, MBTA has introduced evidence out of context in order to obfuscate the truth that plaintiff seeks to expose in discovery process and the Court has erroneously accepted MBTA's evidence as justification for a partial dismissal of plaintiff's action. Also, in allowing MBTA's previous motion to dismiss, this Honorable Court stated that "There are no allegations that even imply that the MBTA is liable for Amtrak's relationships with Amtrak's employees. Nor are there any contentions that would support a conclusion that the MBTA controlled or was in any way involved with any of the challenged conduct." (MBTA R&R, Docket 37 at 9-10).

As stated above, plaintiff claims that he has included sufficient allegations in the complaint to aver joint liability. The Court, referencing the same statements in the complaint that the plaintiff does, acknowledges that joint liability could exist, but the Court states that complaint fails to fulfill the "'vital requirement' that there be a sale, merger or consolidation" (R&O, page 24). However, as shown above, the transition process required by federal grant process and federal approval of railroad transactions were intended to parallel the protections afforded employees during sales, mergers and consolidations. To bolster the defendant's positions that indemnity clauses are insufficient MBTA has submitted an "operating agreement" to prove that MBTA is not liable. The operating agreement states that "Amtrak is an independent contractor for and not an agent of the MBTA" (R&O page 20"). This is not dispositive of the allegations averred. As indicated above, regardless of this wording, defendant MBTA is required to

14

maintain collective bargaining agreements between Amtrak and commuter rail employees and make them applicable to a successor contractor. The presumed federal certification of railroad transactions between the defendants would indicate protections are in place and the plaintiff has previously referred this Court to agreements between MBCR and the plaintiff's union.[7] This brief presents arguments which give this Honorable Court an opportunity to reconsider judgment. The language in an agreement does not necessarily reflect actual practice. Plaintiff hereby states that discovery and trial will produce evidence of direct day-to-day control over conditions of employment in commuter rail and control over actual performance. Indeed, plaintiff hereby submits that the MBTA had direct involvement in the discipline of plaintiff by Amtrak. It is unfair to use defendant's untimely presentation of evidence as basis for motion for dismiss when plaintiff has not been afforded full discovery.

    The arguments presented here also govern decisions claiming exhaustion of remedies for the *ADA* claims against Amtrak that would apply to MBCR as successor. The *ADA* claims against the defendants in Count X of the complaint should be allowed to stand. It is the same with plaintiff's *CBA* grievances against MBCR. Pursuant to the certification of federal contracts, plaintiff's grievance rights against Amtrak resulting from plaintiff's termination from employment are applicable against MBCR effective July 1, 2003 as the successor carrier. Plaintiff was attempting to process grievances when the defendants intervened and prevented him from doing so. After July 1, 2003, Amtrak was not responsible for the position that plaintiff had a right to fill per seniority rights on Massachusetts commuter rail. On July 1, 2003, MBCR was the proper carrier for the Plaintiff to grieve.

---

[7] See Exhibits, Docket No. 32, re: Opposition to Motion to Dismiss, Docket No. 29.

WHEREFORE, plaintiff hereby requests that this Honorable Court deny Defendant's motions to dismiss and permit plaintiff leave to amend the complaint to clarify *ADA* and *Rehabilitation Act* claims, streamline the complaint, and eliminate state causes of action.

Respectfully submitted,

Date: September 6, 2007

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA  02116-6008
Work:  617/727-2310 ext. 7045

### Certificate of Service

I. Joseph T. Carmack hereby certify that I have on September 6, 2007 served a true copy of the foregoing document by First Class U.S. Mail to Robert K. Blaisdell, Attorney for Massachusetts Bay Commuter Railroad Company ate One Beacon St. Suite 1320 Boston, MA  02103-3113

Date:  September 6, 2007

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA  02116-6008
Work:  617/727-2310 ext. 7045

I. Joseph T. Carmack hereby certify that I have on September 6, 2007 served a true copy of the foregoing document by First Class U.S. Mail to Todd Valicenti, Attorney for Massachusetts Bay Transportation Authority at 10 Park Plaza Room 3910, Boston, MA  02116.

Date: September 6, 2007

*/s/ Joseph T. Carmack*
Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045