UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2008 JAN -7 P 2: 01

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| Joseph T. Carmack <br> Plaintiff, Pro Se <br><br> v. <br><br> Massachusetts Bay Transportation Authority <br><br> and <br><br> Massachusetts Bay Commuter Railroad Co. <br><br> Defendants | Civil Action No. 05-11430-PBS |

**MEMORANDUM IN SUPPORT OF PLAINTIFF JOSEPH T. CARMACK'S *REVISED* MOTION TO AMEND 1ST AMENDED COMPLAINT BY ALLOWING ALL FACTS AVERRED IN PLAINTIFF'S 2ND AMENDED COMPLAINT WITH PARAGRAPH INSERTIONS**

**I. INTRODUCTION**

Plaintiff Joseph T. Carmack ("plaintiff") hereby submits this memorandum in support of motion to this Honorable Court for an order allowing plaintiff to amend plaintiff's 1st Amended Complaint ("the complaint") by adding paragraphs to be inserted at points of the plaintiff's 2nd Amended Complaint as indicated in the motion. Plaintiff further moves that this Honorable Court allow all facts previously averred in plaintiff's 2nd Amended Complaint with the exception that wherever the word "termination" or the word "terminated" occurs regarding treatment of plaintiff by defendants or other persons,

1

the word "termination" or the word "terminated" will be changed to "dismissal" or "dismissed". As grounds for the amendment plaintiff states that an amended complaint is necessary to clarify triable issues and set forth claims that arose out of conduct, transactions or occurrences set forth or attempted to be set forth in plaintiff's 1st Amended Complaint. The amendments herein detailed are necessary to resolve failures to state claims identified by this Honorable Court in grants of defendants' (Massachusetts Bay Transportation Authority,"MBTA", and Massachusetts Bay Commuter Rail, "MBCR") Motions to Dismiss and denial of plaintiff's previous Motion to Amend Plaintiff's 1st Amended Complaint.

## II. BACKGROUND

The instant case was filed in June 2005 and the Complaint was first amended in December 2005. In response, the Defendants filed Motions to Dismiss (Docket Nos. 15 and 18). Defendant Massachusetts Bay Transportation Authority, ("MBTA") did not move to dismiss count one of the 1st Amended Complaint and this Honorable Court allowed the MBTA's Motion to Dismiss counts II-XV (*Report and Recommendation on MBTA's Motion to Dismiss, "MBTA-R&R"*Docket 37). Defendant Massachusetts Bay Commuter Railroad Co. ("MBCR") moved to dismiss the entire complaint. This Honorable Court also allowed MBCR's Motion to Dismiss in part, but denied MBCR's motion to dismiss counts I and X with the exception that the Motion to Dismiss claims pursuant to the Railway Labor Act *45 U.S.C. 45 s. 151 et seq.*("*RLA*") incorporated into Count I of the 1st Amended Complaint against MBCR was allowed (*Report and Recommendation on MBCR's Motion to Dismiss, "MBCR-R&R"*Docket 38).

In December of 2006 plaintiff filed a 2nd Amended Complaint filed with Plaintiff's MOTION TO AMEND PLAINTIFF'S 1ST AMENDED COMPLAINT (Docket No. 49) which was intended to resolve failures to state claims identified by this Honorable Court in the grants of Defendants' Motions to Dismiss (Dockets 15 and 18). Simultaneously, Defendant MBTA filed *Motion to Dismiss the Railway Labor Act Claim asserted in Count I of Plaintiff's First Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6)* (Docket No. 45) and MBCR filed *Motion to Dismiss Count X of Plaintiff's First Amended Complaint* (Docket No. 48). This Honorable Court allowed dismissal of the *RLA* claim against MBTA, but otherwise allowed plaintiff's motion to amend, in part, and allowed MBCR's motion to dismiss in part wherein the plaintiff was given leave to further amend the complaint "in order to allege facts in support of [plaintiff's] Rehabilitation Act claim in Count X against MBCR", *Report and Recommendation on Defendants' Motions to Dismiss and Order on Plaintiff's Motion to Amend First Amended Complaint* ("R&O"), Page 4. However, in the Court's order as part of the *R&O*, the *R&O* was not adopted "with respect to the issue of whether the MBTA is a joint employer or whether MBCR was its agent".[1] Nonetheless, with this amendment, plaintiff seeks to satisfy deficiencies found in previous amendments as reported in the *R&O* regarding the issue of joint employment and, therefore, joint and successor liability in order to allow claims pursuant to the RLA, ADA and the *Rehabilitation Act* to go forward with uninhibited discussion and discovery. Furthermore, the current motion to amend assets that MBTA and MBCR receive federal funding.

## II. APPLICABLE LEGAL STANDARD

### A. Motion to Amend

---

[1] See Docket Text of Electronic ORDER dated 11/27/2007.

Pursuant to *Rule 15* of the *Federal Rules of Civil Procedure ("F.R.C.P.")*, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

### B. 42 U.S.C. s. 1983

As has been previously demonstrated by this Court, *Section 1983* "provides a method for vindicating rights elsewhere conferred" Graham v. Connor, *490 U.S. 386, 393-94, 109 S.Ct. 1865, 1870, 104 L.Ed 2d 443 (1989).* (Quoted from MBCR-R&R)  *Section 1983* states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...*42 U.S.C. s. 1983.*

In the instant case, the "rights, privileges, or immunities secured by the Constitution and laws" of the United States includes Plaintiff's rights pursuant to the *RLA*.

### C. Interstate Commerce Act: Rail Certifications

In addition to civil right protections, railroad employee rights and privileges are also subject to protective arrangements against a worsening of employees' positions related to employment which might otherwise result from a variety of transactions involving rail carriers including consolidations, mergers and acquisitions of control. Pursuant to the requirements of the *Interstate Commerce Act ("ICA")*, transactions affecting rail transportation in the United States are regulated by the Surface Transportation Board ("STB"). Requirements for rail certification are codified at *49 U.S.C. 101, et. Seq.*

4

The *Interstate Commerce Act* uses, in part, the following definitions at the specified paragraphs at *49 U.S.C. s. 10102*:

(1) "Board" means the Surface Transportation Board;
(5) "rail carrier" means a person providing common carrier railroad transportation for compensation;

(6) "railroad" includes…(B) the road used by a rail carrier and owned by it or operated under an agreement;

The transactions overseen by the STB are specifically defined by the *ICA*:

(a) The following transactions involving rail carriers providing transportation subject to the jurisdiction of the Board under this part may be carried out only with the approval and authorization of the Board:
…
(2) A purchase, lease, or contract to operate property of another rail carrier by any number of rail carriers.
…
(5) Acquisition of control of a rail carrier by a person that is not a rail carrier but that controls any number of rail carriers.
(6) Acquisition by a rail carrier of trackage rights over, or joint ownership in or joint use of, a railroad line (and terminals incidental to it) owned or operated by another rail carrier.

(*Ibid, ss. 11323*)

Prior to engaging in these transactions, rail carriers apply to the STB: "The board may begin a proceeding to approve and authorize a transaction referred to in section 11323 of [Title 49 U.S.C.] on application of the person seeking that authority", *Id. s. 11324*. In order for an application to be approved, the transactions must include protective arrangements for employees:

(a) Except as otherwise provided in this section, when approval is sought for a transaction under sections 11324 and 11325 of this title, the Board shall require the rail carrier to provide a fair arrangement at least as protective of the interests of employees who are affected by the transaction as the terms imposed under section 5(2)(f) of the Interstate Commerce Act before February 5, 1976, and the terms established under section 24706(c) (!1) of this title. Notwithstanding this part. The arrangement may be made by the rail carrier and the authorized representative of its employees. The arrangement and the order approving the transaction must

5

require that the employees of the affected rail carrier will not be in a worse position related to their employment as a result of the transaction during the 4 years following the effective date of the final action of the Board (or if an employee was employed for a lesser period of time by the rail carrier before the action became effective, for that lesser period).

*Id. s. 11326*

Enforcement of these provisions is also codified by the act:

> (a) General, - (1) Except as provided in paragraph (2) of this subsection, only the Attorney General may bring a civil action for equitable relief in a district court of the United States when Amtrak or a rail carrier –
> (A) engages in or adheres to an action, practice, or policy inconsistent with this part;
> (B) obstructs or interferes with an activity authorized under this part;
> (C) refuses, fails, or neglects to discharge its duties and responsibilities under this part; or
> (D) threatens –
> (i) to engage in or adhere to an action, practice, or policy inconsistent with this part;
> (ii) to obstruct or interfere with an activity authorized by this part; or
> (iii) to refuse, fail, or neglect to discharge its duties and responsibilities under this part.
>
> (2) An employee affected by any conduct or threat referred to in paragraph (1) of this subsection, or an authorized employee representative, may bring the civil action if the conduct or threat involves a labor agreement.
> ...
> (b) Venue. – Except as otherwise prohibited by law, a civil action under this section may be brought in the judicial district in which Amtrak or the rail carrier resides or is found.

*Id. ss. 24103.*

### D. Federal Transit Act Employee Protections

When rail carrier transactions include federal funds to a public agency, employee protections outlined in the *Federal Transit Act* ("*FTA*"), apply:

> It shall be a condition of any assistance under section 3 of this Act that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of

6

> rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of employment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which shall in no event provide benefits less than those established pursuant to section 5(2)(f) of the Act of February 4, 1887 (24 Stat. 379), as amended. The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements.
>
> *49 U.S.C. s. 5333(b)*

Although federal assistance is applied to public transportation systems, federal finances may be used to compensate private firms:

> A plan or program required…by this title shall encourage to the maximum extent feasible the participation of private enterprise. (*Ibid s. 5306*).

In such cases, private firms are considered "designated recipients" of federal funds. (*Id. s. 5307*). Private firms are responsible for requirements of *s. 5333(b)*.

### E. Railway Labor Act

In addition to employee protections from adverse effects of mergers and acquisitions of control, employees of rail carriers enjoy a specific right of independent self-organization. The *RLA* forbids any limitation upon the freedom of association among employees of rail carriers. It is a specific purpose of the *RLA* "to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization". *45 U.S.C. s. 151a(2)* Another stated purpose of the *RLA* is "to provide for the complete

7

independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter". *Ibid, paragraph (3)*

Definitions codified by the *RLA* include:

First. The term "carrier" includes any railroad subject to the jurisdiction of the Surface Transportation Board…and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service…in connection with the transportation…and handling of property transported by railroad.

and

Fifth. The term "employee" as used herein includes every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee…in the orders of the Surface Transportation Board…

### F. Rehabilitation Act

Employees who are also qualified individuals with a disability also enjoy rights, privileges and immunities pursuant to the *Rehabilitation Act*, ("*RA*") if they are employed by federally funded carriers:

No otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…

*29 U.S.C. 794(a)*

…the term "program or activity" means all of the operations of –
    (a)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or
    (B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government; or
    …
    (3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship –
        (i) if assistance is extended to such corporation, partnership, private

organization, or sole proprietorship as a whole;...

*29 U.S.C. s. 749(b)*

### III. ARGUMENT

#### A. Motion to Amend

The current motion to amend is necessary to correct defects in the 1st Amended Complaint ("1st Am. Compl.") revealed in Defendant's Motions to Dismiss. The 2nd Amended Complaint ("2nd Am. Compl.") clarifies the triable issues and remedies the defects in Plaintiff's 1st Am. Compl. that are articulated in this Honorable Court's *REPORT AND RECOMMENDATIONS ON MBTA'S MOTION TO DISMISS* and *REPORT AND RECOMMENDATIONS ON MBCR'S MOTION TO DISMISS* and the *R&O*. Therefore justice requires this Honorable Court to issue an order allowing Plaintiff's Motion to Amend Plaintiff's 1st Amended Complaint as represented in the Plaintiff's 2nd Amended Complaint as amended with insertions. Whereas disagreements over the significance of previous orders on motions to dismiss have inhibited the progress of the discovery process, a more detailed outline of the relevant historical facts will alleviate potential roadblocks by clarifying what is to be discovered.

The current motion seeks, in part, to permit unfettered discovery of facts relevant to outstanding *RLA* and *CBA* claims against Amtrak. Prior to its partial adoption of the *R&O*, this Honorable Court has been unable to recognize that the plaintiff is an 'employee' as defined by the *RLA* or for the purpose of establishing Joint and Successor liability claims against the defendants. As a result, this Honorable Court has resisted plaintiff's attempts to directly apply *RLA* and federal employment law claims against the defendants. Nonetheless, this Honorable Court has allowed *RLA* and federal employment

9

law claims to stand against Amtrak in case 03-12488. Although this Honorable Court has entered judgment against the plaintiff for inability to prove case 03-12488 by a preponderance of evidence, said failure is due, in part, to preemption of charges in case 03-12488 by the *RLA*. To the degree that charges against Amtrak in case 03-12488 are preempted by the *RLA*, the charges were not subject to this Honorable Courts jurisdiction in that case and escape judgment. To the extent that charges averred in the Amtrak case are subject to the grievance machinery of the *RLA* against Amtrak, however, the facts are relevant to the Civil Rights claim in the instant case wherein the plaintiff asserts that the defendants obstructed a redress of grievances against Amtrak. *RLA* and *CBA* claims against Amtrak stand as Civil Rights claims against the defendants.

### B. Civil Rights

In the MBCR-R&R this Honorable Court has allowed the Plaintiff to present claims against the MBCR as a state actor wherein the Plaintiff has maintained that the 1st Amended Complaint is a civil rights claim pursuant to *42 U.S.C. s. 1983 ("Section 1983")*. This Honorable Court has heretofore entertained numerous arguments pertaining to the *Section 1983* elements of this case. The previous discussion has resulted in the allowance of some civil rights claims from the 1st Amended Complaint. For purposes of this motion, the Plaintiff does not revisit those claims which were allowed. However, it is nonetheless necessary to review *Section 1983* arguments in the light of revisions to previously dismissed federal claims as articulated in Plaintiff's 2nd Am. Compl. as amended.

As has been previously demonstrated by this Court, *Section 1983* "provides a method for vindicating rights elsewhere conferred" *Graham v. Connor,* 490 U.S. 386,

*393-94, 109 S.Ct. 1865, 1870, 104 L.Ed 2d 443 (1989).* (Quoted from MBCR-R&R)

*Section 1983* states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …

*42 U.S.C. s. 1983.* In dismissing Plaintiff actions against the Defendant MBTA, the Court has stated that it has dismissed *RLA* claims and other federal employment claims because "even the most liberal reading of the complaint compels the conclusion that no MBTA personnel were in any way involved in the conduct which forms the basis of counts II-XV of the First Amended Complaint." MBTA-R&R at 9. Nonetheless, *RLA* claims stand against the defendants for damages as Civil Rights claims wherein the defendants acted under the color of state law to deprive the plaintiff of the right to pursue *RLA* claims against the applicable carrier.

### C. Carriers, Employers and Employee

Although previous decisions on Motions to Dismiss have denied plaintiff's status as an employee of the defendants, the plaintiff's status as employee remains an open question. This Honorable Court has not adopted the *R&O* "with respect to the issue of whether the MBTA is a joint employer or whether MBCR was its agent". The current amendments to the complaint are intended to frame issues that resolve that question.

#### 1. MBCR and Amtrak viewed as 'State actors' and agents of MBTA

11

In denying MBCR's motion to dismiss Plaintiff's civil rights claims, this Honorable Court has viewed defendant MBCR as a 'State actor' acting under color of State Law and evaluated Plaintiff's 1st Am. Compl. using a 'Perkins' analysis of Plaintiff's claims against the MBCR.[2] In addition to viewing the actions of MBCR in light of Perkins, the Plaintiff prays that this Honorable Court, for purposes of this motion, will also view the actions of Amtrak under the color of state law. Such a view will allow the court to perceive Amtrak as a State actor whose employees are also State actors.

### 2. "Under color of Law"

The 2nd Am. Compl. Presents the conduct of Amtrak as the conduct of a state actor according to the Perkins standard as articulated by the Court:

> Courts conventionally have traveled a trio of analytic avenues, deeming a private entity to have become a state actor if (1) it assumes a traditional public function when it undertakes to perform the challenged conduct, or (2) an elaborate financial or regulatory nexus ties the challenged conduct to the State, *or* (3) a symbiotic relationship exists between the private entity and the State.

Perkins v. Londonderry Basketball Club, 196 f.3d 13, 18 (1st Cir. 1999) (quoted from MBCR-R&R.

The 2nd Am. Compl. Presents actions of Amtrak as an agent of the MBTA acting under color of State Law and infers that Plaintiff is an Employee of the MBTA. The applicable State Law is *Massachusetts General Law c. 161A ("161A)*. Defendant MBTA recognizes that its status is defined by *Section 2 of 161A*.[3] Also relevant to the instant case, the purpose of the MBTA is further

---

[2] Perkins v. Londonderry Basketball Club, 196 F.3d 13, 18 (1st Cir. 1999). (see MBCR-R&R Page 11).

[3] Answer and Jury Demand of Defendant Massachusetts Bay Transportation Authority Docket No. 5 at Paragraph 3.

defined in *161A section 3 Para. (i)* as being "to provide mass transportation service, whether directly, jointly or under contract on an *exclusive basis*, in the area constituting the authority ... with respect to operations of the authority *with equipment owned and operated by the Authority*" and also, in *161A section 3 paragraph (j)*: to operate Mass Transportation facilities and equipment directly or under contract in areas outside the area constituting the Authority".[4] (Emphasis added). Both the 2nd Am. Complaint and MBTA's Answer comport with the purpose of MBTA's contracts with Amtrak and MBCR as pursuant to State Law.[5] Without State Law *161A* empowering the MBTA "to provide mass transportation service", the Plaintiff's positions of employment with Amtrak and, subsequently, MBCR would not exist. In other words, Plaintiff's position of employment was established to provide public transportation mandates of State Law with State and federal funding.[6] This Honorable Court has already established that these and other facts support the claim that "MBCR was a state actor based on the traditional public function and symbiotic relationship Theories." MBCR-R&R at page 14. Plaintiff hereby asserts that the same analysis applies to the actions of Amtrak as presented in the 2nd Am. Complaint and, by extension; the analysis establishes the Plaintiff as an employee of the MBTA.

### 3. The Court's 'public function' analysis

---

[4] The MBTA also operates trains according to MBTA schedules on territory owned by Guilford Transportation Co. and Amtrak.

[5] Answer and Jury Demand of Defendant Massachusetts Bay Transportation Authority Docket No. 5 at Paragraphs 4 and 10.

[6] Massachusetts commuter rail is financed, in part, through formula grants pursuant to *The Urban Mass Transportation Act of 1964* also known as *The Federal Transit Act, 49 U.S.C. s. 5301 et seq.*

In order to allow this Honorable Court to accept the 2nd Amended Complaint as actionable for purposes of this motion, the Plaintiff hereby submits that Amtrak employed the Plaintiff for a public function "exclusively reserved for the state" pursuant to *161A*. As stated above, pursuant to *161A, section 3 Para. (i)*, like MBCR, Amtrak was contracted "to provide mass transportation service ... *on an exclusive basis* in the area constituting the authority ... *with respect only to the operation of the Authority with equipment owned and operated by the Authority*. (Emphasis added). In applying the Perkins 'public function' analysis this Honorable Court requires that "a plaintiff must show more than the mere performance of a public function by a private entity; [he} must show that the function is one exclusively reserved for the state" Perkins, 196 f. 3d at 19. (Quoted from MBCR-R&R). This Honorable Court has implied that the operation of passenger trains does not comport with Perkins as an activity "within the states exclusive preserve Id. However, wherein the Plaintiff was employed by Amtrak pursuant to *161A* "*on an exclusive basis ... with respect only to the operation of the authority with equipment owned and operated by the Authority*, the Plaintiff was employed in an activity exclusively reserved by State Law for the State. Plaintiff was employed to operate MBTA trains owned by the commonwealth of Massachusetts and operated under the exclusive reserve of the MBTA. If the contractor's serve the MBTA to 'provide' a service, Plaintiff was employed to serve a public function exclusively reserved for the state. The facts alleged in the 2nd Am. Compl. support this 'public function' analysis.

### 4. Symbiotic Relationship Analysis

The conduct of Amtrak alleged in the 2nd Amended Complaint also supports a Symbiotic relationship analysis as does the conduct of the MBTA in accordance with the

MBCR-R&R. This Honorable Court has recognized that allegations against MBCR in Count 1 of the 1st Am. Compl. as the conduct of a State Actor where "the Government has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity." Perkins 196 F.3d at 21 (quoting Burton v. Wilmington Parking Auth. 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L. Ed. 2d 45 (1961). (Alteration in original) (Quoted from MBCR-R&R at 17). This relationship between MBTA and Amtrak is established by *161A* in the same way that 'public function' is established. Amtrak is contracted to perform a function exclusively reserved for the MBTA by *161A section 3* and, by extension, the Plaintiff served the same function as an employee of the MBTA wherein the purpose of the Plaintiff's position with Amtrak comports with MBTA function as prescribed by State Law. In this instance, the symbiotic relationship analysis overlaps the "public function" analysis and serves to "flush out a State's attempt to evade its responsibilities by delegating them to private entities." Perkins, 196 F.3d at 18-19, (Quoted from MBCR-R&R at page 14). At all times relevant to the complaint against Amtrak, Amtrak employed the Plaintiff: under the direction of the MBTA; as an agent of the MBTA; and standing in for the MBTA to employ the Plaintiff to serve an MBTA function. As much as the Plaintiff was an employee of Amtrak, the Plaintiff was an employee of the MBTA.

In fact, the amended 2nd Amended Complaint describes the MBTA as direct employer of the plaintiff, independent of Amtrak's relationship with MBTA as a contractor. The 2nd amended complaint describes a historical relationship between MBTA and employees of Massachusetts commuter rail commencing at the moment when Massachusetts purchased commuter rail services from private entities: "Prior to acquiring

commuter rail lines, MBTA entered into collective bargaining agreements with commuter rail unions, including the Brotherhood of Locomotive engineers, representing commuter rail employees". (2nd Amended Complaint at paragraph 8B: Motion to Amend at page 2). At the same time, MBTA contracted with an established rail carrier to manage the employees. (Id at 80). MBTA states that the role of such a contractor is to "provide as opposed to operate" commuter rail services. Under this scenario, contractors, in essence, merely manage and compensate MBTA's commuter rail employees with state and federal funds. The MBTA retains the responsibility to 'operate' commuter rail service with MBTA engineers who operate MBTA trains pursuant to *M.G.L. c. 161A, section 3* "with equipment owned and operated by the authority".

### 5. MBTA as Carrier

It is in respect to its contracts with rail carriers that MBTA itself becomes a rail carrier as defined by the *RLA* and the *ICA*:

> The term "carrier" includes any railroad subject to the jurisdiction of the Surface Transportation Board...*45 U.S.C. s. 151a*

And, pursuant to the *ICA*, the term:

> "railroad" includes...the road used by a rail carrier and owned by it or operated under an agreement. *49 U.S.C. s. 11323*

Under these terms, the plaintiff is also defined as an employee of both MBTA and Amtrak. When an engineer operates a train over a railroad owned and operated by the MBTA:

> The term "employee"...includes every person in the service of a carrier...

16

To the extent that an employee of a contractor of the MBTA is subject to that contractor's "continuing authority to supervise and direct the manner of rendition of his service". That contractor's continuing authority is combined with and subordinate to the authority of the carrier MBTA to direct the manner of rendition of the employee's service. Ultimately, MBTA is the carrier with controlling authority. Pursuant to *M.G.L. c. 161A, section* 3, the railroad "subject to the jurisdiction of the Surface Transportation Board" is "owned and operated" by the MBTA.

### D. The Interstate Commerce Act, Federal Funding and the Rehabilitation Act

Wherein the current motion proposes to permit facts asserted in the 2nd Amended complaint, the current motion comports with the *R&O* because "it is sufficient to cure the deficiency identified by MBCR in its motion to dismiss Mr. Carmack's claim under the Rehabilitation Act". (*R&O*, page 25). The plaintiff hereby submits that allowing the plaintiff's current motion to amend will also cure deficiencies identified by MBTA under the Rehabilitation act. To the degree that the plaintiff was jointly employed by Amtrak and the MBTA, the MBTA is also responsible for actions of MBCR as a potential employer in receipt of federal funding.

But whether this Honorable Court allows plaintiff's *Rehabilitation Act* claims against the defendants as recipients of federal funding, this Honorable Court must allow plaintiff's *Rehabilitation Act* claims to stand pursuant to the plaintiff's rights pursuant to the *Interstate Commerce Act*. There is no dispute that the plaintiff enjoyed rights pursuant to the *Rehabilitation Act* as an employee of Amtrak. Pursuant to the provisions of the *ICA* and the *Transit Act*, the plaintiff was protected from loss of rights and

17

privileges pursuant to the *Rehabilitation Act* resulting from a change in contractors. To the degree that the change in contractors results in a loss of privileges pursuant to the *Rehabilitation Act*, any order of the Surface Transportation Board approving the change in contractors would require that rights and privileges pursuant to the *Rehabilitation Act* would continue: "…when approval is sought for a transaction under sections 11324 and 11325 of this title, the Board shall require the rail carrier to provide a fair arrangement at least as protective of the interests of employees who are affected by the transaction…".

Wherefore, plaintiff respectfully prays that this Honorable Court allow plaintiff's motion to amend and enter an order permitting charges of Unfair Labor Practice and discrimination to stand against both defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Plaintiff certifies that parties have
Conferred and complied with Local Rule 7.2
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Respectfully submitted,**

Date: January 7, 2008

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA  02116-6008
Work:  617/727-2310 ext. 7045

## Certificate of Service

I, Joseph T. Carmack hereby certify that I have on January 7, 2008 served a true copy of the foregoing document by First Class U.S. Mail to Robert K. Blaisdell, Attorney for Massachusetts Bay Commuter Railroad Company ate One Beacon St. Suite 1320 Boston, MA 02108-3113

Date: January 7, 2008

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045

I, Joseph T. Carmack hereby certify that I have on January 7, 2008 served a true copy of the foregoing document by First Class U.S. Mail to Todd Valicenti, Attorney for Massachusetts Bay Transportation Authority at 10 Park Plaza Room 3910, Boston, MA 02116.

Date: January 7, 2008

Joseph T. Carmack
Plaintiff, Pro Se
398 Columbus Ave PMB 130
Boston, MA 02116-6008
Work: 617/727-2310 ext. 7045