**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| _____ ) | |
| JOSEPH T. CARMACK,               ) | |
|      Plaintiff,            ) | |
|                 ) | |
| v.                               ) | Civil Action No. 05-11430-PBS |
|                 ) | |
| MASSACHUSETTS BAY               ) | |
| TRANSPORTATION AUTHORITY and    ) | |
| MASSACHUSETTS BAY COMMUTER      ) | |
| RAILROAD COMPANY,               ) | |
|      Defendants           ) | |
| _____ ) | |

**MBTA'S OPPOSITION TO PLAINTIFF'S _REVISED_ MOTION
TO AMEND THE FIRST AMENDED COMPLAINT
BY ALLOWING ALL FACTS AVERRED IN PLAINTIFF'S SECOND
AMENDED COMPLAINT WITH PARAGRAPH INSERTIONS**

Defendant Massachusetts Bay Transportation Authority (MBTA) opposes the

Plaintiff's "_Revised_ Motion To Amend The First Amended Complaint By Allowing All

Facts Averred in Plaintiff's Second Amended Complaint With Paragraph Insertions."

**Statement of the Case**

**Introduction**

Plaintiff has sought at various times in this case to assert three analytically distinct

sets of claims against the MBTA:  (1) claims arising from _Amtrak_'s personnel actions

affecting the Plaintiff, including Amtrak's termination of Plaintiff's employment on May

13, 2002; (2) claims based upon _MBCR_'s failure to hire the Plaintiff in June 2003; and (3)

claims based upon events that occurred at North Station on July 1, 2003.

The _Amtrak_-based claims (Counts II-XV of the First Amended Complaint) against

the MBTA were dismissed in 2006 because the alleged wrongdoing was committed by

Amtrak and not by the MBTA.  Plaintiff then filed a motion to revive and reinstate those claims by adding allegations that, under 42 U.S.C. § 1983 and federal transportation statutes, Amtrak's employees somehow were *also* employees of the MBTA and that the MBTA was vicariously responsible for Amtrak's alleged misconduct.  Last spring, however, after full briefing, Plaintiff abandoned that effort.  Thus, as matters now stand, his Amtrak-based claims are no longer in this case.

Also last spring, in a related case in which Mr. Carmack had made virtually identical claims directly against the alleged wrongdoer, Amtrak, this Court adjudged that Amtrak had committed no actionable misconduct against him.  *See Carmack v. National Railroad Passenger Corporation,* 486 F. Supp. 2d 58 (D. Mass. 2007) (the *Amtrak* case).

Undaunted, Mr. Carmack again seeks to revive and reinstate his Amtrak-based claims against the MBTA on the (same) theory that the MBTA was, by virtue of federal law, legally responsible for Amtrak's employment actions affecting him.  The MBTA vigorously disputes that premise, but his argument is now futile for the additional reason that this Court's Judgment in the *Amtrak* case – that Amtrak committed no actionable misconduct against Mr. Carmack – precludes him from relitigating those claims here.

The *Revised* Motion should also be denied to the extent that it seeks to revive or reinstate claims against the MBTA in Counts X and I (the second and third set of claims categorized above) that the Court has dismissed and/or previously denied leave to add to this case because they failed to state a claim upon which relief may be granted.  The only claims currently remaining against the MBTA are the federal and state civil rights claims in Count I, which the MBTA has answered, and which are not involved in this motion.

**Prior Proceedings**

The complex history and status of the various claims in this case were accurately

summarized in the Joint Statement of the Parties on November 19, 2007:

> On December 9, 2005, The Massachusetts Bay Transportation Authority ("MBTA") filed a motion to dismiss the claims asserted against it in Counts II-XV of the Plaintiff's 15 count First Amended Complaint. Magistrate Judge Dein issued a Report and Recommendation on September 1, 2006 ("MBTA R&R") in which she recommended that the MBTA's motion to dismiss be allowed. This Court adopted the MBTA R&R on September 22, 2006.
>
> On December 9, 2005, the Massachusetts Bay Commuter Railroad Company ("MBCR") filed a motion to dismiss all of the claims asserted against it in the Plaintiff's First Amended Complaint. Magistrate Judge Dein issued a Report and Recommendation on September 22, 2006 ("MBCR R&R") in which she recommended that MBCR's motion be allowed in part and denied in part. Magistrate Judge Dein recommended that the Railway Labor Act ("RLA") claim asserted in Count I and the claims asserted in Counts II-IX and XI-XV be dismissed and that the remaining claims asserted against MBCR in Counts I and X be permitted to stand. This Court adopted the MBCR R&R on October 10, 2006.
>
> On December 15, 2006, the MBTA filed a motion to dismiss the RLA claim asserted against it in Count I of the Plaintiff's First Amended Complaint and MBCR filed a motion to dismiss Count X of said complaint against it. Magistrate Judge Dein issued a Report and Recommendation on August 14, 2007 ("August 2007 R&R") in which she recommended that both the MBTA's and MBCR's second motions to dismiss be allowed.
>
> On December 18, 2006, the Plaintiff filed a motion to amend his amended complaint, "seeking to amend his complaint in order to remedy any deficiencies in his claims and to reassert all fifteen counts against each of the defendants." August 2007 R&R at 4. At oral argument on April 5, 2007, the Plaintiff withdrew Counts II-IX and XI-XV of his proposed amended complaint. Id. at 4. The remaining issue raised by the Plaintiff's motion to amend his amended complaint was whether he should be allowed to amend his complaint in order to maintain claims against the defendants under the RLA, the Americans with Disabilities Act ("ADA") and the Rehabilitation Act, which were asserted in Count X of his proposed amended complaint. Magistrate Judge Dein, as noted in the August 2007 R&R, allowed said motion in part and denied said motion in part. Magistrate Judge Dein allowed the Plaintiff to amend his complaint

in order to allege facts in support of his Rehabilitation Act claim against MBCR. The court found that, even as amended, the Plaintiff "is unable to state a claim against either defendant under the RLA or the ADA, or against [the] MBTA under the Rehabilitation Act." Id. at 4-5.

The only claims that remain pending against the MBTA are claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11 ("MCRA") asserted in Count I.

The only claims that remain pending against MBCR are the Section 1983 and MCRA claims asserted in Count I.

Joint Statement of the Parties [Dkt # 63] at 1-2.

Judge Saris held a Scheduling Conference on November 26, 2007. The Clerk's Notes entered later that day stated: "Court adopts Magistrate Judge Dein's Report and Recommendation. Court allows motions to amend."[1] On December 7, 2007, however, an apparently superseding, and certainly controlling, Electronic Order was entered on the docket (as of November 26, 2007), which reads: "I adopt the report and recommendation except with respect to the issue of whether the MBTA is a joint employer or whether MBCR was its agent."[2]

---

[1] The notation, "*Court allows motions to amend,*" is perplexing, not only because there was only one motion to amend, but especially because allowing that motion would have been inconsistent with the Court's simultaneous adoption of the recommendation to dismiss the RLA and ADA claims for reasons that were not curable by amendment. Moreover, the Magistrate Judge's ruling on the motion to amend was an Order, in contrast to her Recommendation on the motions to dismiss. It seems reasonable to posit that there may have been an error in the transcription and that the entry was intended to reflect the Court's allowance, *not* of the *motion to amend,* but of the *motions to dismiss.*

[2] This Order conspicuously leaves intact the Magistrate Judge's Order [Dkt # 58] that denied the Plaintiff's Motion to Amend the First Amended Complaint except in one narrow respect (the addition of an allegation that MBCR is a recipient of federal financial assistance). Nowhere does it state that the Magistrate Judge's Order is erroneous or is reversed. It states only that the District Judge has not adopted the reasoning in the Report and Recommendation as to whether the MBTA is a joint employer or MBCR was its agent. At most, this indicates that the District Court has reserved judgment on that issue.

The import of these entries is a matter of dispute between the parties.  Plaintiff's position apparently is that the Court has opened the door for him to reinstate all of his claims that the Court earlier dismissed.  The MBTA disagrees with that position.  None of the matters that the Court decided on November 26, 2007, concerned whether the MBTA (or MBCR) could be held liable for the actions of Amtrak personnel.  The Court's only action on that date was to allow the motions to dismiss based upon reasons that did not depend upon whether the MBTA was a joint employer or MBCR was its agent.

Nevertheless, in his "*Revised* Motion To Amend First Amended Complaint By Allowing All Facts Averred in Plaintiff's Second Amended Complaint With Paragraph Insertions," Mr. Carmack now moves to reinstate all the claims previously asserted against the MBTA in his First Amended Complaint (which this Court dismissed in 2006), as amended only by: (1) substituting "dismissed" for "terminated," and "dismissal" for "termination;" (2) adding all the factual averments in his proposed (but not allowed) Second Amended Complaint; and (3) adding the specific paragraph insertions set forth in the body of the *Revised* Motion.  In support, he argues (again) that Amtrak was acting under color of state law when it terminated his employment on May 13, 2002; that, under 42 U.S.C. § 1983 and federal transportation statutes, Amtrak's employees somehow were *also* employees of the MBTA; and that the MBTA accordingly is vicariously responsible for Amtrak's alleged misconduct.  Allowance of the *Revised* Motion, according to Mr. Carmack, would thus lead to "unfettered discovery of facts relevant to outstanding *RLA* and *CBA* claims against Amtrak" in this case, Pl. Mem. at 9-10 (underlining added), and to "permitting charges of Unfair Labor Practices and discrimination [by Amtrak] to stand against both defendants [MBCR and MBTA]." *Id.* at 18.

## ARGUMENT

### I.  THE MOTION SHOULD BE DENIED TO THE EXTENT THAT IT SEEKS TO REINSTATE CLAIMS AGAINST MBTA BASED UPON AMTRAK'S ACTIONS

#### A.     Plaintiff's Claims Against The MBTA Based Upon Amtrak's Personnel Activities Involving The Plaintiff (Counts II-XV) Have Already Properly Been Eliminated From This Case

In Counts II-XV of his First Amended Complaint, Mr. Carmack set forth claims

against the MBTA of defamation, invasion of privacy, disability discrimination, civil

rights violations, unfair labor practices, religious discrimination, personal injury, Federal

Employees Liability Act and Railway Labor Act violations, intentional infliction of

emotional distress, and wrongful discharge in violation of public policy, all based upon

the actions of *Amtrak* personnel leading up to and including *Amtrak*'s termination of Mr.

Carmack's employment on May 13, 2002.  The MBTA moved to dismiss those claims

because the First Amended Complaint made clear that the individuals of whose conduct

he complained were employees of Amtrak and not of the MBTA.  *See* Memorandum in

Support of MBTA's Motion to Dismiss Counts II-XV [Dkt # 19] (collecting the relevant

allegations).  Following briefing and argument, the Magistrate Judge recommended that

the MBTA's motion to dismiss be allowed [Dkt # 37], and this Court dismissed those

claims as against the MBTA, without objection, on September 22, 2006.[3]  That ruling

appropriately reflected the reality that it was Amtrak, not the MBTA, that discharged the

Plaintiff and that the MBTA had nothing to do with the actions that he seeks to challenge.

---

[3]  The Court also properly considered that Amtrak's contract with the MBTA for the provision of commuter rail services expressly provided that Amtrak was an independent contractor and not the MBTA's agent.  MBTA R&R [Dkt # 37], at 9 and n.3.

The Plaintiff then filed his (first) Motion to Amend the First Amended Complaint [Dkt #49], which sought to reinstate those claims through adding the assertion that, as a matter of law under 42 U.S.C. § 1983 and federal transportation statutes, all of Amtrak's employees involved in those events, including the Plaintiff himself, were somehow also employees of the MBTA, such that the MBTA was legally responsible for Amtrak's alleged misconduct.  However, at the hearing on that motion on April 5, 2007, Mr. Carmack withdrew his effort to reinstate his Amtrak-based claims against the MBTA, and the Magistrate Judge ultimately rejected his § 1983 and Federal Transit Act arguments.  *See* August 14, 2007 Report and Recommendation and Order [Dkt # 58] at 4, 18-22, 26; Joint Statement of the Parties [Dkt # 63] at 2.  The Plaintiff objected to other parts of the Magistrate Judge's decision, but expressly not to this aspect of it.  *See* Plaintiff's Opposition to Report and Recommendation, *etc.* [Dkt # 59] at 2.  At its core, the pending motion, in this respect, is no different than the Plaintiff's first motion to amend, and there is no good reason to reconsider it.

> **B.     Plaintiff's Argument That, Under § 1983 And Federal Transportation Statutes, Amtrak Was A "State Actor" And The MBTA Somehow Was A "Joint Employer" Of Amtrak's Employees, Legally Responsible For Amtrak's Personnel Actions, Is Without Merit**

In any event, there is no merit to Plaintiff's arguments that the MBTA is responsible, as a matter of federal law, for the individual employment decisions of Amtrak affecting the Plaintiff.  Amtrak was not acting under color of state law when it terminated Plaintiff's employment; it was acting simply as a private contractor providing a commuter rail service.  *See* MBTA's Opposition to Motion to Amend [Dkt # 54] at 5-10 (presenting a detailed § 1983 analysis which is incorporated herein by reference).

Moreover, any § 1983 claims in this case based upon Amtrak's actions vis-à-vis the

Plaintiff would be barred by the three-year statute of limitations applicable to § 1983

claims in Massachusetts. *See* MBTA Opp. [Dkt # 54] at 5. Nor has Plaintiff stated a

claim against the MBTA under the Federal Transit Act. *Id.* at 11-12.[4] This Court has

already carefully considered and properly rejected the Plaintiff's same arguments in the

context of his first motion to amend. *See* August 14, 2007 Order [Dkt # 58] at 18-22.

    **C.    Plaintiff's Claims Against The MBTA Based Upon The Actions Of Amtrak's Employees Are Precluded By The Judgment Against Mr. Carmack And In Favor Of Amtrak On His Virtually Identical Claims Against Amtrak Based Upon The Same Actions and Events**

In addition, Mr. Carmack brought a companion case directly against Amtrak,

*Carmack v. National Railroad Passenger Corporation,* U.S.D.C. (D. Mass.), Civil Action

No. 03-12488-PBS, and this Court entered Judgment against him in that case last spring.

*See Carmack v. National Railroad Passenger Corporation,* 486 F. Supp. 2d 58 (D. Mass.

2007). Simple logic and fundamental principles of law require the conclusion that, since

Mr. Carmack has no viable case against Amtrak, he cannot recover, based upon the same

events, against the MBTA, where the only basis upon which he maintains that the MBTA

may be liable is his argument that the MBTA is *jointly responsible with Amtrak* for

Amtrak's actions (or, as Plaintiff put the point earlier: "Defendants [MBTA and MBCR]

---

[4] With respect to Mr. Carmack's suggestion that there are "outstanding *RLA* and *CBA* claims against Amtrak" that allowance of the *Revised* Motion would open for "unfettered discovery" and resolution in this case, Pl. Mem. at 9-10, the Court may also take judicial notice that Mr. Carmack's union, the Brotherhood of Locomotive Engineers, pursued a grievance on his behalf and, following the denial of that grievance, prosecuted an appeal under the Railway Labor Act to arbitration before the National Mediation Board, which found that Amtrak was justified in terminating his employment. *See* Docket # 1-16 in *Carmack v. National Mediation Board,* U.S.D.C. (D. Mass.), Civil Action No. 05-10185-PBS (which this Court dismissed for lack of prosecution last spring).

are mutually bound to causes for action with Defendant National Railroad Passenger

Corporation in case filed in this Honorable Court as 0312488-PBS." Plaintiff's

Opposition to Defendants' Motions to Dismiss, [Dkt # 24] at 4. Put another way, the

MBTA cannot be *more* responsible for Amtrak's actions than Amtrak is.[5]

Under federal principles of *res judicata*, "a final judgment on the merits of an

action precludes the parties or their privies from relitigating issues that were or could

have been raised in that action." *Manego v. Orleans Board of Trade*, 773 F.2d 1, 5 (1st

Cir. 1985) (*quoting Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Massachusetts School of

Law at Andover, Inc. v. American Bar Association*, 142 F.3d 26, 38 (1st Cir. 1998);

*Hughes v. McMenamon*, 379 F. Supp. 2d 75, 78 (D. Mass. 2005).[6] *Res judicata* applies

whenever three conditions are met: (1) sufficient identity between the claims asserted in

the earlier and later suits; (2) a final judgment on the merits in the earlier action; and (3)

sufficient identity between the parties in the two suits. *See, e.g., Porn v. Nat'l Grange

Mutual Ins. Co.,* 93 F.3d 31, 34 (1st Cir. 1996). Here, all three conditions are met.

> 1.    There is Sufficient Identity Between the Claims Asserted in the
>       *Amtrak* Case and Those in the Plaintiff's Proposed Expanded First
>       Amended Complaint

The First Circuit has adopted a transactional approach to determine whether

claims are sufficiently related to support a *res judicata* defense. *Massachusetts School of

Law*, 142 F.3d at 38; *Porn*, 93 F.3d at 34. Under this approach, courts "analyze whether

---

[5]  As stated above, the MBTA disagrees that it is responsible for Amtrak's personnel actions affecting the Plaintiff. The *Amtrak* Judgment makes that question moot, however, as it establishes that Amtrak itself has not committed any actionable misconduct in that regard, so there is no underlying liability for which the MBTA can be legally responsible.

[6]  Federal preclusion principles apply because the judgment in the first case was rendered by a federal court. *Porn v. Nat'l Grange Mutual Ins. Co.,* 93 F.3d 31, 34 (1st Cir. 1996).

both sets of claims 'derive from a common nucleus of operative facts.'" *Hughes*, 379 F.

Supp. 2d at 79 (*quoting Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 755 (1ˢᵗ Cir. 1994)).

Courts determine the factual groupings that constitute transactions "pragmatically, giving

weight to such factors as 'whether the facts are related in time, space origin, or

motivation, whether they form a convenient trial unit, and whether their treatment as a

unit conforms to the parties' expectations.'" *Porn*, 93 F.3d at 34 (*quoting* Restatement

(Second) of Judgments § 24 (1982)).  Even if a plaintiff offers different legal theories for

a subsequent cause of action, if the former and latter causes of action are based upon the

same occurrence, there will be sufficient identity between them.  *Id.*

The events giving rise to the Plaintiff's proposed claims here are the same events

upon which he based his claims in the *Amtrak* case.  All of the Plaintiff's allegations and

claims in both suits are based upon one core series of events leading up to and

surrounding his discharge from employment as an Amtrak engineer on May 13, 2002.

*Compare Carmack v. National Railroad Passenger Corporation,* 486 F. Supp. 2d 58 (D.

Mass. 2007),[7] *with* Mr. Carmack's Amtrak-based claims against the MBTA in Counts II-

---

[7] A very brief summary:  On April 10, 2001, Mr. Carmack's supervisor at Amtrak, Gerard DeModena, found a group of documents on his office desk entitled "Letters from Hell."  Mr. Carmack had prepared those documents in connection with a conflict that he was having with his union representative, Michael O'Bryan, regarding Mr. O'Bryan's handling of a dispute between Mr. Carmack and Amtrak management.  Among the materials was a document signed "Lucifer Prince of Darkness."  Also included was a two-page document based on Shakespeare's *Hamlet*, in which Mr. Carmack cast himself as Hamlet and cast Mr. DeModena and Mr. O'Bryan as the characters Rosencrantz and Guildenstern, who, in Shakespeare's play, are executed at Hamlet's request.  Mr. DeModena was disturbed by the "Letters from Hell" and believed that they contained a potential threat of harm against him.  He spoke with his supervisor, Mr. O'Malley, who advised him to notify Amtrak's Threat Assessment Response Team ("TART") that was charged with evaluating workplace violence complaints.  He also spoke with Lou DePhillips, Amtrak's Director of Labor Relations and a member of TART, who also found the "Letters from Hell" disturbing.  Mr. DeModena's actions were consistent with

XV of the First Amended Complaint, *e.g.,* ¶¶ 51-54, 66, 76-77, 89-94, and 101-116

(alleging those same events as forming the basis for his complaints in this case).

Similarly, his legal claims against Amtrak[8] and his proposed Amtrak-based claims

against the MBTA[9] are of a piece.

---

Amtrak's workplace violence policy, which allowed zero tolerance of threats and violence. Amtrak's Medical Director, Dr. Pinsky, reviewed selected portions of the "Letters from Hell" and made a determination to medically disqualify Mr. Carmack pending a psychiatric fitness for duty examination. Mr. Carmack, however, refused to submit to a psychiatric fitness for duty examination. Mr. O'Malley initiated formal proceedings against Mr. Carmack as a result of his refusal, and an investigative hearing took place over the course of four separate days in the spring of 2002. It was presided over by an independent hearing officer, and Mr. Carmack was represented by his union throughout. On May 13, 2002, the hearing officer issued a Decision Letter in which she found that Amtrak had proved the charges against Mr. Carmack for insubordination. Later that day, Amtrak terminated its employment of Mr. Carmack. 486 F. Supp. 2d at 68-73.

[8] In the *Amtrak* case, Plaintiff asserted that because of the actions of Mr. DeModena and others in disseminating information portraying him as dangerous and mentally unstable, Amtrak's attempts to perform psychiatric evaluations and psychological testing without any accommodation, and Amtrak's decision to discharge him for insubordination, he was entitled to damages for defamation (Count I), invasion of privacy (Count II), disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. and Mass. Gen. Laws ch. 151B by discriminating against him on the basis of a real or perceived disability, by denying his request for a reasonable accommodation and by retaliating against him (Count III), violation of his civil rights under the Massachusetts Civil Rights Act (Count IV), violation of the Railway Labor Act, (Count V), discrimination based on the basis of religion (Count VI), personal injury under Federal Employers' Liability Act, and intentional infliction of emotional distress (Count VII), and wrongful discharge in violation of public policy (Count VIII).

[9] In the instant case, based upon the same core series of events, Plaintiff seeks to similarly claim that he is entitled to damages for defamation because employees of Amtrak falsely portrayed him as a violent, dangerous and mentally unstable person (Count II), invasion of privacy (Count III), disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. and Mass. Gen. Laws ch. 151B by discriminating against him on the basis of a real or perceived disability, by denying his request for a reasonable accommodation and by retaliating against him (Count IV), disability discrimination in violation of the ADA for utilizing standards that perpetuate discrimination (Count V),

In short, the factual allegations and causes of action contained in the *Amtrak* case and in this case are virtually identical. The only difference is that here, Plaintiff is seeking to name the MBTA as vicariously responsible for Amtrak's actions. Plaintiff's allegations in both suits clearly derive from the same common nucleus of operative facts, and therefore, *res judicata* bars those claims that were raised, or could have been raised, and dismissed by, or merged in, the *Amtrak* Judgment that are now being alleged against the MBTA in Plaintiff's proposed expanded First Amended Complaint.

2.  There was a Final Judgment on the Merits in the *Amtrak* case

The second requirement for application of *res judicata*, that there be a final judgment, is also met. Plaintiff's entire complaint against Amtrak was dismissed, with prejudice, on May 21, 2007, after Amtrak was awarded summary judgment. Summary judgment constitutes final judgment on the merits for purposes of *res judicata*. *See Caballero-Rivera v. Chase Manhattan Bank, N.A.*, 276 F.3d 85, 87 (1st Cir. 2002) (summary judgment is a final judgment on the merits for *res judicata* purposes); *Andrews-Clarke v. Lucent Techs, Inc.,* 157 F. Supp.2d 93, 99-100 (D. Mass 2001) (dismissal for failure to state a claim final judgment for *res judicata* purposes).

---

disability discrimination in violation of the ADA for limiting or classifying him as disabled (Count VI), disability discrimination in violation of the ADA for requiring him to undergo a psychiatric evaluation (Count VII), harassment (Count VIII), retaliation (Count IX), wrongful interference with union activities and safety campaigns (Count XI), unfair labor practices (Count XII), discrimination on the basis of religion (Count XIII), intentional infliction of emotional distress (Count XIV), and wrongful discharge in violation of public policy (Count XV).

3.    There is Sufficient Identity Between the Parties in the *Amtrak*
Case and the Instant Case

Finally, there is sufficient identity between the parties.  Joseph T. Carmack is the

plaintiff in both the *Amtrak* case and the instant case.  Although the defendants in the two

cases are not the same, a different defendant in a subsequent case can assert *res judicata*

in circumstances, such as here, where the Plaintiff is seeking to hold the second defendant

vicariously liable for the actions of the defendant in whose favor judgment on the merits

has become final in the first case.  The Restatement (Second) Judgments § 51 (1982)

states this principle as follows:

> If two persons have a relationship such that one of them is
> vicariously responsible for the conduct of the other, and an action is
> brought by the injured person against one of them, the judgment in the
> action has the following preclusive effects against the injured person in a
> subsequent action against the other.
>
> (1) A judgment against the injured person that bars him from
> reasserting his claim against the defendant in the first action extinguishes
> any claim he has against the other person responsible for the conduct
> unless:
>
> (a) The claim asserted in the second action is based upon grounds
> that could not have been asserted against the defendant in the first action;
> or
>
> (b) The judgment in the first action was based on a defense that
> was personal to the defendant in the first action.

Here, this Court's Judgment against Mr. Carmack in *Amtrak* clearly would preclude him

from bringing a new case against Amtrak based upon the same events; the claims he

seeks to assert against the MBTA were or could have been brought against Amtrak in the

*Amtrak* case; and the Judgment against Amtrak was not based upon a defense applicable

only to Amtrak and not to the MBTA.  Plaintiff is thus precluded from bringing any

claims against the MBTA on his theory that the MBTA is vicariously liable for Amtrak's

personnel-related conduct. This Court's Judgment in *Amtrak* establishes that Amtrak committed no actionable misconduct against the Plaintiff, and that Judgment precludes him from maintaining that the MBTA is liable to him for the same actions of Amtrak for which Amtrak itself is not liable to him.

Plaintiff is seeking to establish that Amtrak was an agent of the MBTA acting under color of State law. *See* Pl. Mem. at 12. Assuming *arguendo* that this was the case, courts have found that previous judgments in favor of either a principal or an agent have a preclusive effect in a suit against the other. In *Spector v. El Ranco, Inc.,* 263 F.2d 143, 145 (9th Cir. 1959), the Ninth Circuit held:

> Where . . . the relations between the two parties are analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, is to be accepted as conclusive against the plaintiff's right of action against the other.

*See also Pelletier v. Zweifel*, 921 F.2d 1465, 1502 (11th Cir.) (finding privity for purposes of *res judicata* between principal and agent), *cert. denied*, 502 U.S. 855 (1991); *Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir.1983) (finding privity for *res judicata* purposes between corporation and its officers and directors); *see also Cahill v. Arthur Andersen & Co.*, 659 F. Supp. 1115, 1122 (S.D.N.Y.), *aff'd*, 822 F.2d 14 (1987); *Michelson v. Exxon Research and Engineering Co.*, 629 F. Supp. 418, 423 (W.D. Pa. 1986), *aff'd*, 808 F.2d 105 (1987) (finding sufficient identity of parties between employer and employee because "[a]ny judgment involving an employee for these acts would apply to the employer, and vice versa" and "both are bound by a judgment involving either of them").

14

In *Fiumara v. Fireman's Fund Ins. Co.,* 746 F.2d 87 (1ˢᵗ Cir.1984), the plaintiff

sued insurers, insurance investigators, and a testing laboratory, alleging that they

intentionally inflicted emotional distress upon him by their attempt to show that he had

deliberately set a fire.  The First Circuit held that an earlier judgment in a suit filed

against the insurers alone barred plaintiff's claims against the insurance investigators and

the testing laboratory:

> The appellant is similarly foreclosed from raising his claims against the
> investigators and the testing laboratory. . . . [G]iven the allegations of the
> federal complaint that [defendants-appellees] were each and all acting as
> agents of the insurers when they committed the putative misdeeds for
> which they have now been sued, they clearly qualify as persons in privity
> with [the original defendants]. Thus, the res judicata defense is
> unmistakably available to them.

*Id.* at 92 (citations omitted).  The same would be true here.

In making this argument, the MBTA does not retreat from its position that it is not

responsible for Amtrak's personnel actions affecting the Plaintiff.  The MBTA vigorously

maintains that position.  But if Mr. Carmack's arguments that the MBTA was a joint

employer and that Amtrak was its agent are correct (and without those allegations he

clearly states no claim against the MBTA in this respect), that would establish whatever

close and significant relationship between Amtrak and the MBTA may be necessary for

*res judicata* to apply.  *See Andrews-Clark*, 157 F. Supp. 2d at 100-101; *In re El San Juan

Hotel Corp.*, 81 F.2d 6, 10 (1ˢᵗ Cir. 1998) (claim preclusion is appropriate if the new

defendants have a close and significant relationship with the original defendants);

*Gonzalez v. Banco Central Corp.*, 27 F.3d 751, 757 (1ˢᵗ Cir. 1994).  Thus, the Plaintiff's

joint employer argument only strengthens the applicability of *res judicata* principles to

preclude him from relitigating his Amtrak-based claims in this case.

## II.  THE *REVISED* MOTION TO AMEND SHOULD BE DENIED TO THE EXTENT THAT IT SEEKS TO REVIVE OR REINSTATE CLAIMS AGAINST THE MBTA IN COUNTS I AND X

This Court has already dismissed the Railway Labor Act claims against the MBTA in Counts I and X and has denied Plaintiff's motion for leave to add claims under the Americans with Disabilities Act and the Rehabilitation Act against the MBTA in Count X.  There is no reason to revisit those decisions.

The basis for this Court's dismissal of the Railway Labor Act claims was that Amtrak terminated Mr. Carmack's employment on May 13, 2002 and that as a result he was not an "employee" (of *any* of the various defendants, directly *or* vicariously) within the RLA at the time of the events of which he complains (June 2003 as to Count X; July 1, 2003 in Count I).  *See* August 14, 2007 R&R [Dkt # 58] at 11-15.  Accordingly, regardless of whether or not the MBTA was a joint employer or whether MBCR was its agent, Mr. Carmack cannot state a Railway Labor Act claim based upon those events, because he was not an employee covered by the RLA at those times.

The basis for this Court's dismissal of the Americans with Disabilities Act claim in Count X was that Mr. Carmack had not exhausted his administrative remedies as the ADA requires.  *See* August 14, 2007 R&R [Dkt # 58]. At 15-17.  Mr. Carmack has not alleged that he ever filed a charge of discrimination with the MCAD or the EEOC against MBCR (or the MBTA) regarding the alleged failure to hire him in the spring of 2003.[10]

---

[10]  Mr. Carmack did file one claim of discrimination with the Massachusetts Commission Against Discrimination, but that claim did not relate to the events upon which Count X is based:  it was filed against Amtrak in February 2002 and was resolved later that year, long before the events that give rise to Count X took place.  *Amtrak* R&R at 50-51.

Accordingly, he cannot state a claim under the ADA upon which relief can be granted (against either MBCR or the MBTA) based upon the events that gave rise to Count X.

Finally, the Magistrate Judge in her Order of August 14, 2007 held that adding a Rehabilitation Act claim against the MBTA in Count X would be futile.  August 14, 2007 Order [Dkt # 58] at 18-22.  To the extent that the Plaintiff now seeks to add a claim of vicarious liability against the MBTA based upon the December 7, 2007 docket entry, he has, as noted on pp. 4-5, above, read too much into that entry, which at most does nothing more than make clear that the point has not necessarily been finally resolved in this case. Moreover, for the reasons set forth in the MBTA's Opposition to Motion to Amend [Dkt # 54] at 5-12 with respect to Amtrak, MBCR was *not* acting under color of state law in whatever employment-related dealings it may or may not have had with the Plaintiff in June 2003.  *See especially id.* at 6, n.5 (citing the Magistrate Judge's earlier distinction between MBCR's baseline status as a *private* provider of commuter rail services and the potential that it might be found to have acted as a state actor in the unusual context of the events at North Station that form the basis for Count I).

The MBTA thus submits that the Magistrate Judge's earlier analysis and conclusions on these points were correct.  The Plaintiff did not apply to the MBTA or seek employment with the MBTA (nor did the MBTA offer him a position or fail to offer him a position).  The MBTA simply was not involved in the events that form the basis for Count X.  Nor is there is any viable basis for maintaining that the MBTA is vicariously liable for any of those events.  Thus, to the extent that the Plaintiff seeks to add a Rehabilitation Act claim against the MBTA, the motion is futile and should be denied.

## CONCLUSION

The Plaintiff's "*Revised* Motion To Amend The First Amended Complaint By Allowing All Facts Averred in Plaintiff's Second Amended Complaint With Paragraph Insertions" should be denied.

Respectfully submitted,


  /s/ *H. Reed Witherby*
H. Reed Witherby, BBO No. 531600
Smith & Duggan LLP
Two Center Plaza
Boston, Massachusetts 02108
(617) 228-4400


  /s/ *Todd M. Valicenti*
Todd M. Valicenti, BBO No. 632800
Assistant General Counsel
MBTA Legal Department
Ten Park Plaza, Suite 7760
Boston, Massachusetts 02116
(617) 222-4579

February 1, 2008

---

CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system, to be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and that I have caused a copy to be sent by first class mail, postage prepaid, to Joseph Carmack, Plaintiff, Pro Se, 398 Columbus Avenue, PMB 130, Boston, MA 02116-6008, as a non-registered participant on this 1st day of February, 2008.

  /s/ *H. Reed Witherby*
H. Reed Witherby